1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   SHERI FLAME EISNER #162776
2  sheri.eisner@pillsburylaw.com
   DAVID L. STANTON # 208079
3  david.stanton@pillsburylaw.com
   725 South Figueroa Street, Suite 2800
4  Los Angeles, CA  90017-5406
   Telephone: (213) 488-7100
5  Facsimile: (213) 629-1033

6  PILLSBURY WINTHROP SHAW PITTMAN LLP
   JOHN M. GRENFELL #88500
7  john.grenfell@pillsburylaw.com
   50 Fremont Street
8  Post Office Box 7880
   San Francisco, CA  94120-7880
9  Telephone: (415) 983-1000
   Facsimile: (415) 983-1200
10
   Attorneys for Defendant
11 NETWORK SOLUTIONS, LLC

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                       SAN FRANCISCO DIVISION

15

16 DOE, Individually And On Behalf Of All     )    No. C 07-5115 JSW
   Others Similarly Situated,                 )
17                                            )    DEFENDANT NETWORK
                          Plaintiff,          )    SOLUTIONS, LLC'S MOTION TO
18                                            )    DISMISS FOR FAILURE TO STATE A
        vs.                                   )    CLAIM PURSUANT TO FEDERAL
19                                            )    RULE OF CIVIL PROCEDURE
   NETWORK SOLUTIONS, LLC,                    )    12(b)(6)
20                                            )
                          Defendant.          )    Judge:   Hon. Jeffrey S. White
21                                            )    Date:    January 25, 2008
                                              )    Time:    9:00 a.m.
22                                            )    CrtRm:   2

23

24

25

26

27

28

**TABLE OF CONTENTS**

SUMMARY ..................................................................................................................................iv

NOTICE OF MOTION AND MOTION TO DISMISS........................................................................1

POINTS AND AUTHORITIES .............................................................................................................2

I.    Introduction ................................................................................................................................2

II.    Statement of the Case .................................................................................................................3

    A.    Plaintiff's Services Agreement .......................................................................................3

    B.    Plaintiff Allegedly Discovered His Emails on Search Engines.......................................4

    C.    Dispositive Provisions of the Service Agreement ..........................................................5

        1.    The "Governing Law" Provision.........................................................................5

        2.    The Exclusive Remedy and Time Limitation Provision .....................................5

        3.    The Disclaimer of Warranties Provision .............................................................6

        4.    The E-mail Services Schedule .............................................................................6

        5.    The Privacy Policy ...............................................................................................7

III.    Standards Under Federal Rule of Civil Procedure 12(b)(6) ......................................................7

IV.    Plaintiff Fails to State a Claim in Counts I through VI ..............................................................8

    A.    Count I – The Electronic Communications Privacy Act ................................................8

    B.    Count II – The Consumers Legal Remedies Act ..........................................................10

    C.    Count III - the California Unfair Competition Law .....................................................12

    D.    Count IV – The Customer Records Act .......................................................................13

    E.    Count VI - Public Disclosure of Private Facts .............................................................14

    F.    Count V - Unjust Enrichment........................................................................................15

V.    Conclusion ................................................................................................................................15

## TABLE OF AUTHORITIES

Cases

Bell Atlantic v. Twombly,
   127 S.Ct. 1955, 1965-66 (2007) ................................................................ iv, 7, 8, 9

Branch v. Tunnell,
   14 F.3d 499 (9th Cir. 1994) ................................................................................. 4, 8

Briscoe v. Reader's Digest Association, Inc.,
   4 Cal. 3d 529 (1971) ............................................................................................... 15

Clegg v. Cult Awareness Network,
   18 F.3d 752, 754-55 (9th Cir. 1994) ......................................................................... 8

Enesco Corp. v. Price/Costco, Inc.,
   146 F.3d 1083 (9th Cir. 1998) ................................................................................... 8

Freedman v. America Online, Inc.,
   329 F.Supp. 2d 745 (E.D. Va., 2004)
   (citing H.R.Rep. No. 99-647 at 64 (1986) ................................................................ 9

Gill v. Hearst Publ'g Co.,
   40 Cal. 2d 224 (1953) ............................................................................................. 15

In re Stac Electronics Securities Litig.,
   89 F.3d 1399 (9th Cir. 1996) ................................................................................ 4, 8

Kasky v. Nike, Inc.,
   27 Cal. 4th 939 (2002) ............................................................................................. 12

Mack v. South Bay Beer Distributors, Inc.,
   798 F.2d 1279 (9th Cir. 1986) ................................................................................... 8

Moore v. Sun Publishing Corp.,
   881 P.2d 735 (N.M. Ct. App. 1994) ....................................................................... 15

Mullis v. United States Bankr. Ct.,
   828 F2d 1385 (9th Cir. 1987) ................................................................................... 8

Muskovich v. Crowell,
   1996 WL 707008 at *5 (S.D. Iowa) ........................................................................ 10

NL Industries, Inc. v. Kaplan,
   792 F.2d 896 (9th Cir. 1986) ..................................................................................... 8

Parrino v. FHP, Inc.,
   146 F.3d 699 (9th Cir. 1998) ..................................................................................... 8

Rutman Wine Co. v. E. & J. Gallo Winery,
   829 F.2d 729 (9th Cir. 1987) ..................................................................................... 7

Statutes and Codes

California Business & Professions Code §17204 .................................................................. 12

California Business & Professions Code §22575 .................................................................. 13

California Business & Professions Code §22575(a) ............................................................... 7

California Business & Professions Code §22577(a) .............................................................. 13

California Consumers Legal Remedies Act, California Civil Code §1750 ................. iv, 1, 10

California Consumers Legal Remedies Act, California Civil Code §1761(d) ..................... 11

California Consumers Legal Remedies Act, California Civil Code §1770(a) ............... 10, 12

California Customer Records Act §1798.81 ................................................................... 13, 14

California Customer Records Act §1798.81.5 ................................................................ 13, 14

California Customer Records Act, California Civil Code §1798.80 ................................ iv, 1

California Customer Records Act, California Civil Code §1798.81.5(a) ............................ 14

California Customer Records Act, California Civil Code §1798.81.5(b) ............................ 13

California Customer Records Act, California Civil Code §1798.81.5(d) ............................ 14

California Unfair Competition Law, Business & Professions Code §17200 .............. iv, 1, 12

Electronic Communications Privacy Act, 18 U.S.C. §2702 .......................................... iv, 1, 8

Electronic Communications Privacy Act, 18 U.S.C. §2702(a) ............................................. 8

Rules and Regulations

Federal Rule of Civil Procedure 12(b)(1) ........................................................................... 1, 2

Federal Rule of Civil Procedure 12(b)(3) ........................................................................... 1, 5

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... passim

Federal Rule of Civil Procedure 12(f) ..................................................................................... 1

Other Authorities

BAJI, CA Jury Instructions, Civil,
     No. 7.21 (West 2007-08 Ed.) ........................................................................................ 14

1 **SUMMARY**

2     Plaintiff alleges that in May 2007, he discovered emails from his internet-based

3 "webmail" account on various search engines, including Google. His webmail account was

4 hosted by defendant Network Solutions, LLC, and governed by a written Service

5 Agreement, which Plaintiff reaffirmed each year he renewed his account from October

6 2003 until October 2007. Each version of the Service Agreement contains nearly identical

7 liability and damages waivers, which the complaint ignores, although they are dispositive.

8     Plaintiff's complaint is largely based on conclusory language that contradicts the

9 express provisions of the Service Agreement. It fails to "raise a right to relief above the

10 speculative level," and does not "cross the line between possibility and plausibility of

11 entitlement to relief." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965-66 (2007).

12     In particular, Count I, under the Electronic Communications Privacy Act (18 U.S.C.

13 §2702), includes no factual allegations suggesting Network Solutions "knowingly

14 divulged" any information, as that provision requires. Counts II and III, under California's

15 Consumers Legal Remedies Act (Cal. Civ. Code §1750 et seq.) and Unfair Competition

16 Law (Bus & Prof. Code §17200 et seq.), fail to identify any false or misleading

17 representations or advertisements, or any unfair, fraudulent or unlawful business practices.

18 Count IV, under the California Customer Records Act (Cal. Civ. Code §1798.80 et seq.),

19 does not apply because the statute sets requirements for the destruction of data, which is not

20 alleged, and otherwise protects information maintained for a business's own use, whereas

21 the customer emails at issue in this case were stored on Network Solutions' servers as a

22 customer service, and not monitored or used by Network Solutions. Finally, Plaintiff's

23 common law claims for public disclosure of private facts (Count V) and unjust enrichment

24 (Count VI), fail because there are no substantive allegations that show an intentional

25 disclosure, indicating a release of highly personal information, or demonstrating Defendant

26 was unjustly enriched.

27     For the foregoing reasons, as more fully explained below, the entire complaint

28 should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 25, 2008, at 9:00 a.m., before the Honorable Jeffery S. White, in Courtroom 2, 450 Golden Gate Avenue, San Francisco, California, defendant **NETWORK SOLUTIONS, LLC** will move and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint (Dkt. 1) filed anonymously by plaintiff "**DOE**."

This motion is based on this notice of motion, the memorandum that follows, the request for judicial notice filed herewith, Defendant's concurrent motions to dismiss under Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure and its motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure, which are each incorporated herein by reference, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on this motion.

ISSUES TO BE DECIDED

1. Does Count I of the complaint state a claim under the Electronic Communications Privacy Act, 18 U.S.C. §2702?
2. Does Count II of the complaint state a claim under the California Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq.?
3. Does Count III of the complaint state a claim under the California Unfair Competition Law, Bus. & Prof. Code §17200, et seq.?
4. Does Count IV of the complaint state a claim under the California Customer Records Act, Cal. Civ. Code §1798.80 et seq.?
5. Does Count V of the complaint state a claim under the common law of California for public disclosure of private facts?
6. Does Count VI of the complaint state a claim under the common law of California for unjust enrichment?

1      **POINTS AND AUTHORITIES**

2      I.     <u>Introduction</u>

3      The individual who improperly brought this action as a "Doe" plaintiff[1] ("Plaintiff")

4  claims that, in May 2007, he[2] allegedly discovered certain emails from his web-based email

5  account had been accessed by and made available through various internet search engines,

6  including Google.  Plaintiff has not, however, sued the search engines that purportedly

7  obtained and displayed this information.  Instead, he seeks to pursue a class action against

8  Network Solutions, LLC ("Defendant" or "Network Solutions"), the Virginia-based

9  company that supplied his web-based email account services.

10     Plaintiff does not allege the public availability of his emails caused any financial

11 loss or identity theft, or provide any facts showing the emails contained offensive or

12 objectionable private content.  He also does not allege, at least consistently, that the emails

13 remain publicly available.  Moreover, roughly five months after his alleged discovery,

14 Plaintiff renewed his web-based email account with Defendant.  He does not assert that any

15 personal information he provided to Defendant for billing purposes was ever made publicly

16 available.  Furthermore, the Service Agreement that Plaintiff voluntarily and affirmatively

17 agreed to when he established his email account—which he renewed each year, even after

18 allegedly discovering his emails displayed publicly on search engines—limits Defendant's

19 liability, contains an "'AS IS,' AND 'AS AVAILABLE'" provision, and disclaims any

20 warranty that the email services would be "SECURE, OR ERROR FREE."

21     As more fully described below, Plaintiff's Class Action Complaint ("Complaint" or

22 "CAC"), fails to plead around the dispositive provisions of his Service Agreement, and

23 does not satisfy the elements of his particular claims.  Therefore, the Complaint should be

24 dismissed in its entirety pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

25 ───────────────

26 [1] Network Solutions has contemporaneously moved under Rule 12(b)(1) to dismiss this complaint on the ground that the "Doe" filing was improper.

27 [2] The Complaint repeatedly refers to Plaintiff using masculine singular pronouns.  <u>See</u>, e.g., CAC, page 1, line 1 ("Plaintiff Doe, on behalf of <u>himself</u>….) (Emphasis added.)

28

1  II.     Statement of the Case

2  A.      Plaintiff's Services Agreement

3  Network Solutions is in the business of registering domain names (e.g., "janesbagels.com") and providing web-related services through its website and servers located in Virginia.[3]  CAC ¶ 5-6.  Among other things, Defendant provides, for a fee, web-based email accounts (called "webmail" accounts) associated with customers' domain names (e.g., "jane@janesbagles.com").  CAC ¶ 6.  In order to obtain or renew a domain name or webmail account, each Network Solutions customer must affirmatively agree to the terms of a written Service Agreement.  See CAC ¶ 9 ("[A]ll Defendant's customers enter into a written agreement with Defendant….").

In October 2003, Plaintiff voluntarily and affirmatively entered into a Service Agreement, whereby he originally registered a domain name and established a webmail account.  CAC ¶ 4; see also Request for Judicial Notice ("RFJN") Exh. 1 at RFJN 0007 ("By applying for a Network Solutions service … or by using the service(s) provided … under this Agreement, you acknowledge that you have read and agree to be bound by all terms and conditions of this Agreement and documents incorporated by reference.")  Each year through 2007 (including October 2007), Plaintiff renewed and reaffirmed his agreement.  CAC ¶ 4; RFJN Exhs. 2-5.  He paid annual fees of $34.99 for his domain name registration (CAC ¶ 6), and $20.00 for his webmail account (CAC ¶ 4).

Plaintiff does not attach to the Complaint his Service Agreements with Network Solutions, but he selectively quotes identical language found in each version from 2003 to 2007.  Compare CAC ¶ 9, with RFJN Exhs. 1-5 at RFJN 007, 0055-56, 0091, 0133, 0225.  Thus, the Court may properly take judicial notice of the written contracts that Plaintiff

---

[3] Each computer connected to the Internet has a unique numeric address, known as an Internet Protocol or "IP" address, whereby one computer or network identifies and exchanges information with another.  The Domain Name System ("DNS") was created to allow a more easily remembered word or phrase (also called a "domain name") to be associated with a specific IP address.  The DNS allows the use of easily-remembered domain names (e.g., "janesbagels.com") rather than numerical IP addresses.

formed when establishing and renewing his relationship with Network Solutions. <u>Branch v. Tunnell</u>, 14 F.3d 499, 454 (9th Cir. 1994); <u>In re Stac Electronics Securities Litig</u>., 89 F.3d 1399, 1405, fn. 4 (9th Cir. 1996).

  B. <u>Plaintiff Allegedly Discovered His Emails on Search Engines</u>

Plaintiff alleges that in May 2007, several months before renewing his webmail account, he discovered certain of his emails "on Internet search engines, including Google." CAC ¶ 4. He does not claim that Network Solutions is a search engine, or that he discovered these emails on any medium controlled by Network Solutions, or that any search results linked him to a website affiliated with Network Solutions. Instead, Plaintiff claims:

> Defendant knowingly published to, and/or made the contents of these email accounts, including the text of emails and the inboxes of the email accounts, publicly available to search engines and other persons on the internet. Defendant knowingly failed to install industry-standard hardware and/or software that would have prevented the release of this information. As such the contents of these email account [sic] were and <u>may still be</u> available on search engines such as Google or on internet archives or caches.

CAC ¶ 10 (emphasis added).

According to this allegation, Plaintiff currently <u>does not know</u> if any of his emails remain available on any search engines. Yet, just two paragraphs later, he contradicts this admission, stating: "This information . . . has now become a permanent, public record on the Internet, free to be saved, manipulated, used and exposed by anyone who has access to the Information." CAC ¶ 13. Plaintiff provides no basis for his conclusion of permanency, and offers no example of an email that remains publicly available online.

Plaintiff asserts the emails he found on various search engines included "information such as Plaintiff's email address, physical address, telephone number(s), passwords, usernames and other personal information about Plaintiff's personal and professional life." <u>Id.</u> He does not attach any of these alleged emails to the Complaint, and he provides no other specifics regarding the information they purportedly revealed. He does not allege any damages directly arising from the alleged (and temporary) publication of his emails on search engines, and he does not assert that any internet search engines revealed his social security number, driver's license number, medical information or

financial information, such as credit card, ATM or bank account numbers.[4]

### C. Dispositive Provisions of the Service Agreement

The Service Agreements contain several provisions that are dispositive in this case[5]:

#### 1. The "Governing Law" Provision

The Service Agreement contains a "Governing Law" provision requiring any disputes over Defendant's email services to be resolved in Virginia subject to Virginia law, and waiving the right to a jury trial. RFJN Exh. 4 at RFJN 0133. As discussed in Defendant's concurrent motion to dismiss under FRCP 12(b)(3) and motion to strike, this provision requires dismissal of this California action, and justifies striking the jury demand.

#### 2. The Exclusive Remedy and Time Limitation Provision

The Service Agreement contains the following express limitations of liability:

**EXCLUSIVE REMEDY; TIME LIMITATION ON FILING ANY CLAIM.** YOU AGREE THAT OUR ENTIRE LIABILITY, AND YOUR EXCLUSIVE REMEDY, IN LAW, IN EQUITY, OR OTHERWISE, WITH RESPECT TO ANY NETWORK SOLUTIONS SERVICE(S) PROVIDED UNDER THIS AGREEMENT AND/OR FOR ANY BREACH OF THIS AGREEMENT IS SOLELY LIMITED TO THE AMOUNT YOU PAID FOR SUCH SERVICE(S) DURING THE TERM OF THIS AGREEMENT. IN NO EVENT SHALL NETWORK SOLUTIONS … BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES EVEN IF NETWORK SOLUTIONS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. TO THE EXTENT THAT A STATE DOES NOT PERMIT THE EXCLUSION OR LIMITATION OF LIABILITY AS SET FORTH HEREIN NETWORK SOLUTIONS' LIABILITY IS LIMITED TO THE EXTENT PERMITTED BY LAW IN SUCH STATES. Network Solutions and its licensors and contractors disclaim any and all loss or liability result from, but not limited to:…. (2) loss or liability resulting from data non-delivery or data mis-delivery;…. (4) loss or liability resulting from the unauthorized use or misuse of your account number, password or security authentication option; (5) loss or liability resulting from errors, omissions, or misstatements in any and all information or service(s) provided under this agreement…. YOU AGREE THAT REGARDLESS OF ANY STATUTE OF LAW TO THE CONTRARY, ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF OR RELATED TO THIS

---

[4] Plaintiff vaguely claims that such information was revealed from other customers' emails, but he provides no examples and no factual basis for this conjecture. See CAC ¶ 11.

[5] For the convenience of the Court, Defendant sets forth in its Request for Judicial Notice a table cross-referencing the dispositive provisions in each version of the Service Agreement in effect from 2003 to 2007. See RFJN, p. 3. Defendant incorporates this table by reference into this motion. For the sake of simplicity, Defendant may only quote herein from one version of the Service Agreement, but all five versions (RFJN Exhs. 1-5) contain almost the exact same dispositive language.

> AGREEMENT OR ANY OF OUR SERVICES MUST BE FILED WITHIN ONE (1) YEAR AFTER SUCH CLAIM OR CAUSE OF ACTION AROSE OR SUCH CLAIMS SHALL BE FOREVER BARRED.

RFJN Exhs. 1-5 at RFJN 003-04, 0052-53, 0091, 0133 and 0225.[6]

    3.    <u>The Disclaimer of Warranties Provision</u>

The Service Agreement contains the following express warranty disclaimers:

> **DISCLAIMER OF WARRANTIES.** YOU AGREE THAT YOUR USE OF OUR SERVICE(S) OR OUR LICENSORS' SERVICES IS SOLELY AT YOUR OWN RISK. YOU AGREE THAT ALL OF SUCH SERVICES ARE PROVIDED ON AN "<u>AS IS</u>," AND "<u>AS AVAILABLE</u>" BASIS, EXCEPT AS OTHERWISE NOTED IN THIS AGREEMENT. WE AND OUR LICENSORS EXPRESSLY DISCLAIM ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED…. NEITHER NETWORK SOLUTIONS NOR OUR LICENSOR MAKE ANY WARRANTY THAT SERVICES LICENSED HEREUNDER WILL MEET YOUR REQUIREMENTS, OR THAT THE SERVICE(S) WILL BE UNINTERRUPTED, TIMELY, <u>SECURE, OR ERROR FREE</u>

RFJN Exhs. 1-5 at RFJN 0004, 0053, 0089, 0128-29 and 0222-23 (emphasis added).

    4.    <u>The E-mail Services Schedule</u>

Schedule L to the Service Agreement (the "Email Services Schedule") specifically addresses the webmail services received by Network Solutions customers. It states:

> Network Solutions will not monitor, edit or disclose the contents of your private communications with third parties unless required to do so by law or in the good faith believe that such action is necessary to: (a) conform to the law or comply with legal process served on Network Solutions; (b) protect and defend the rights or property of Network Solutions; (c) act under exigent circumstances to protect the personal safety of our customers or the public. You acknowledge and agree that Network Solutions nether endorses the content of any of your communications nor assumes responsibility for such content…. You acknowledge and agree that certain technical processing of e-mail messages is required to: (a) send and receive messages; (b) conform to connecting network's technical requirements; (c) conform to the limitations of the e-mail service: or (d) conform to other similar requirements.

RFJN Exhs. 1-5 at RFJN 0025, 0075, 0109, 0178, 0243-44.[7] <u>See also</u> CAC ¶ 9.

---

[6] The last sentence of this provision is only found in the Service Agreements in effect from 2005-2007. <u>Compare</u> RFJN Exhs. 1-2 at RFJN 003-04 and RFJN 0052-53, <u>with</u> Exhs. 3-5 at 0091, 0133 and 0225.

[7] For the 2003 Service Agreement, this language is contained in Schedule B, rather than Schedule L. See RFJN Exh. 1 at RFJN 0025.

1   5.   The Privacy Policy

2   The Complaint mislabels the above section of the E-Mail Services Schedule as

3   Network Solutions' "Privacy Policy." CAC ¶ 9. This is an error, and directly contradicted

4   by the Service Agreement, which expressly incorporates by reference Network Solutions'

5   actual Privacy Policy. See RFJN Exhs. 1-5 at RFJN 0003, 0051-52, 0088, 0126-27, 0221-

6   22. As the California Online Privacy Act and other laws require, the Privacy Policy informs

7   customers what kind of information Defendant collects about them for its own use, how it is

8   collected and for what purpose, the types of organizations to which Network Solutions

9   discloses the information, and how customers may limit its use and disclosure. See Id.; Cal.

10  Bus. & Prof. Code §22575(a). The Privacy Policy covers information that Network

11  Solutions collects "about" customers; not information stored as a service for customers. Id.

12  Pursuant to the Email Services Schedule, quoted above, Network Solutions does not

13  "monitor" or use the information stored in webmail accounts. See, e.g., RFJN Exh. 1 at

14  RFJN 0025. The content of customer emails is distinct from data that Defendant collects for

15  billing purposes and its own use. The former is the subject of the Complaint. The latter is

16  the subject of the Privacy Policy, and Plaintiff's Complaint does not allege it was breached.

17  III.   Standards Under Federal Rule of Civil Procedure 12(b)(6)

18  A complaint should be dismissed if the factual and legal allegations fail to state a

19  claim upon which relief can be granted. This is particularly appropriate where no factual

20  allegations support an essential element of a claim. See Rutman Wine Co. v. E. & J. Gallo

21  Winery, 829 F.2d 729, 732 (9th Cir. 1987). As the Supreme Court recently said, "a

22  plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

23  than labels and conclusions, and a formulaic recitation of the elements of a cause of action

24  will not do." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations

25  omitted). "Factual allegations must be enough to raise a right to relief above the

26  speculative level." Id. at 1965. A complaint must cross "the line between possibility and

27  plausibility of entitlement to relief." Id. at 1966.

28  On 12(b)(6) motions, a court's analysis is generally limited to the contents of the

1  complaint.  See Enesco Corp. v. Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir. 1998).
2  But the Court may consider (i) unattached documents of unquestioned authenticity that are
3  alleged in the complaint (Branch v. Tunnell, 14 F.3d at 454); (ii) unattached documents of
4  unquestioned authenticity upon which the complaint necessarily relies (Parrino v. FHP,
5  Inc., 146 F.3d 699, 706 (9th Cir. 1998)); and (iii) the full text of documents that a complaint
6  quotes only in part (In re Stac Electronics Securities Litig., 89 F.3d at 1405, fn. 4).  The
7  Court also may consider matters subject to judicial notice.  See Mack v. South Bay Beer
8  Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).
9        When deciding Rule 12(b)(6) motions, courts must accept material allegations as
10 true, construing them in the most favorable light.  NL Industries, Inc. v. Kaplan, 792 F.2d
11 896, 898 (9th Cir. 1986).  Courts need not accept as true, however, allegations that
12 contradict matters subject to judicial notice.  Mullis v. United States Bankr. Ct., 828 F2d
13 1385, 1388 (9th Cir. 1987).  Nor are courts required to accept as true conclusory
14 allegations, unwarranted deductions of fact, or unreasonable inferences.  See Twombly, 127
15 S. Ct. at 1965; Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).
16     IV.    Plaintiff Fails to State a Claim in Counts I through VI
17     A.    Count I – The Electronic Communications Privacy Act
18       The Electronic Communications Privacy Act ("ECPA"), with certain exceptions,
19 makes it unlawful for an entity providing electronic communication services to "knowingly
20 divulge" the contents of electronic communications, records or other information pertaining
21 to subscribers or customers.  18 U.S.C. §2702(a).  Section 2702 is entitled "Voluntary
22 Disclosure of Customer Communications or Records."  Id. (emphasis added).  It creates no
23 liability for an accidental or passive release of information, or where, as in this case, a third-
24 party search engine has accessed and displayed information in an unauthorized manner.
25       The "knowingly" standard is rigorous, and requires a showing "that the defendant
26 was [(i)] aware of the nature of the conduct, [(ii)] aware of or possessing a firm belief in the
27 existence of the requisite circumstances and [(iii)] an awareness [sic] of or a firm belief
28 about the substantial certainty of the result."  Freedman v. America Online, Inc., 329

1 F.Supp. 2d 745, 748-749 (E.D. Va., 2004) (citing H.R.Rep. No. 99-647 at 64 (1986)).  The

2 first prong of this test requires the defendant to be "aware of the act of disclosure," and the

3 third requires a showing that the defendant was "aware, or possessed a firm belief that, his

4 act would result in the disclosure of the subscriber information to another person."  Id. at

5 748.  Plaintiff alleges no facts supporting these two elements, and merely recites that

6 Network Solutions "knowingly divulged" information.  See CAC ¶ ¶ 26-28.  This

7 conclusory allegation, apparently crafted to meet a statutory requirement, cannot establish a

8 "plausibility of entitlement to relief."  Twombly, 127 S. Ct. at 1966.  Indeed, it would be

9 incongruous for Plaintiff to renew services with a company he claims "knowingly

10 divulged" his emails.

11      The only relevant substantive allegations are that Network Solutions "published

12 and/or made these contents of these email accounts … publicly available to search

13 engines," and "failed to install industry-standard hardware and/or software that would have

14 prevented the release of this information." CAC at ¶ 10.  At most, these assertions reflect

15 passive conduct; they do not demonstrate that Network Solutions "knowingly divulged"

16 anything.  The Complaint alleges that web-based email contents were accessed by

17 aggressive search engines and then made available on their respective websites.  Such third-

18 party activity cannot give rise to ECPA liability against Network Solutions.[8]

19      Plaintiff asserts that Network Solutions took inadequate precautions to prevent

20 search engines from gaining access to customer communications.  Yet, as one district court

21 has held, the "[a]wareness of a 'possibility' [of disclosure] does not rise to the level of

22 awareness of a 'substantial certainty' required for liability under the ECPA."  Muskovich v.

---

[8] The American Heritage Dictionary (4th Ed 2006), defines "search engine" as:
    (1) A software program that searches a database and gathers and reports information that contains or is related to specified terms.
    (2) A website whose primary function is providing a search engine for gathering and reporting information available on the Internet or a portion of the Internet.

See RFJN Exh 6.  Plaintiff's assertion that Defendant "published" information to search engines is inconsistent with their well-known function.  See, e.g., www.google.com; www.altavista.com; www.ask.com; www.yahoo.com (viewed November 26, 2007).

1  Crowell, 1996 WL 707008 at *5 (S.D. Iowa) (denying claim based on assertion that
2  defendant "knew or should have known" its failure to safeguard against unauthorized
3  access would lead to information being divulged).  Plaintiff does not, and could not
4  truthfully, allege that Network Solutions was "substantially certain" that these search
5  engines would access its customers' emails.  For all of these reasons, the ECPA claim fails.

      B.    Count II – The Consumers Legal Remedies Act

7       The California Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq.
8  ("CLRA") targets "unfair methods of competition and unfair or deceptive acts or practices
9  undertaken by any person in a transaction intended to result or which results in the sale or
10 lease of goods or services to any consumer."  Cal. Civ. Code §1770(a)(emphasis added).
11 Plaintiff, however, alleges no conduct preceding the opening of his webmail account, and,
12 even if he had, he agreed that "ANY CLAIM …MUST BE FILED WITHIN ONE (1)
13 YEAR …OR SUCH CLAIM SHALL BE FOREVER BARRED."  See, e.g., RFJN Exh. 4
14 at RFJN 0127-28.  Thus, he has contractually waived CLRA claims arising before October
15 4, 2006, and, likewise, waived any such claims by conduct when he renewed his webmail
16 account despite the alleged May 2007 release of his emails. CAC ¶ 4.
17      Plaintiff cannot allege facts demonstrating liability under any of the five individual
18 CLRA provisions upon which he relies.  See CAC ¶¶ 36-40 (alleging claims under Cal.
19 Civ. Code §1770(a) (5, 7, 9, 14 and 16).  Under each, liability requires a false or misleading
20 "representation" or an "advertisement" that "resulted in the sale… of… services."  Id.
21 Plaintiff specifies no individual misstatements in his CLRA claim, and instead broadly
22 asserts the purported violations are based on "the actions, representations and conduct set
23 forth in this … Complaint."  CAC ¶ 36.  Paragraphs 1 through 30 of the Complaint,
24 incorporated by reference into Count II, also fail to demonstrate liability.  CAC ¶ 31.  There
25 are no alleged advertisements, and the only actual representation is quoted is from the
26 Email Services Schedule.  See CAC ¶ 9 ("Defendant 'will not monitor, edit or disclose the
27 contents of your private communications with third parties….").  Plaintiff does not claim
28 this statement was untrue, or that Defendant affirmatively "monitored," "edited" or

1  "disclosed" any private communications. Instead, he bases his claims on access and
2  publication by third-party search engines. See CAC ¶ 10. The Complaint similarly fails to
3  allege this language "result[ed] in the sale…of…services." Plaintiff renewed his account
4  after the alleged email release, so it apparently had no impact on his purchasing decision.
5      The Complaint also states that (i) "[i]n order to access these email accounts,
6  Defendants' customers are required to login with a username … and password [therefore]
7  customers are led to believe that their emails and email accounts will be both secure and
8  private" (CAC ¶ 8); and (ii) "[Defendant] claims to be expert at search engine optimization,
9  security and privacy" (CAC ¶ 14). Contrary to these vague assertions, however, the Service
10 Agreement states expressly that use of the webmail services would be "SOLELY AT
11 YOUR OWN RISK," that they were "PROVIDED ON AN 'AS IS,' AND 'AS
12 AVAILABLE' BASIS," and it disclaims any warranty "THAT THE SERVICE(S) WILL
13 BE … SECURE, OR ERROR FREE." See, e.g., RFJN Exh. 4 at 0128-29. Likewise, the
14 agreement disclaims any loss or liability resulting from "data non-delivery or data mis-
15 delivery," "the unauthorized use or misuse of your account number, password or security
16 authentication option," or any "errors, omissions, or misstatements." See, e.g., RFJN Exh.
17 4 at RFJN 0133. Thus, no consumer opening a webmail account was led to believe that
18 Network Solutions guaranteed his emails would be 100% secure from the advancing
19 technologies employed by search engines, hackers or others.
20     Moreover, the CLRA only permits claims by a "consumer," defined as an
21 "individual who seeks or acquires, by purchase or lease, any goods or services for personal
22 family or household purposes." Cal. Civ. Code §1761(d). It is not clear that Plaintiff
23 acquired his webmail account for "personal, family or household purposes," therefore, he
24 fails to allege standing to pursue claims under the CLRA.[9]

---

[9] Plaintiff summarily alleges that he "and other Class Members are 'consumers' as that term is defined by the CLRA in California Civil Code § 1761(d)." CAC ¶ 34. But this is contradicted by his description of the putative class, which includes "All persons…." Id. at ¶ 15.

1    Accordingly, the Complaint fails to allege "unfair [or] deceptive business practices"
2    or any basis for relief under Cal. Civ. Code §§1770(a)(5),(7),(9),(14) or (16).
3        C.    Count III - the California Unfair Competition Law
4    The California Unfair Competition Law ("UCL") prohibits unfair competition,
5    defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.
6    Code §17200, et seq. It protects consumers by promoting fair competition in commercial
7    markets for goods and services. Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002).
8        Plaintiff asserts two grounds for his UCL claim: (i) "releasing, publishing, allowing
9    to be published, not protecting or keeping private and secure, private information, including
10   emails and email accounts, belonging to Plaintiff…." (CAC ¶ 46); and "represent[ing] as
11   private and/or secure customers email and email accounts when in fact they were neither
12   secure nor protected…. in violation of [Bus. & Prof. Code] §22576***" (CAC ¶ 47).
13   Neither assertion demonstrates that Plaintiff has standing or grounds to recover under the
14   UCL.
15       To allege standing under the UCL, Plaintiff must show that he "suffered an 'injury
16   in fact,' and 'lost money or property as a result of [the alleged] unfair competition." Cal.
17   Bus. & Prof. Code §17204. But his Service Agreement provides the services were to be
18   used as Plaintiff's "OWN RISK," disclaims any warranty they will be "SECURE, OR
19   ERROR FREE." and states they are provided "'AS IS,' AND 'AS AVAILABLE'." RFJN
20   Exh. 4 at RFJN 0128-29. It also expressly disclaims liability for "mis-delivery,"
21   "unauthorized use," and any "errors, omissions, or misstatements." See, e.g., RFJN Exh. 4
22   at RFJN 0133. Plaintiff points to no statements inconsistent with these express warnings
23   and representations in the Service Agreements. Further, since 2003, Network Solutions has
24   simply supplied Plaintiff webmail account services in return for a "yearly payment of
25   approximately $20." Id. The Complaint alleges no loss resulting from this arrangement.
26   Instead, Plaintiff admits he was satisfied enough to renew his account even after allegedly
27   learning his emails had been accessed and published by search engines. CAC ¶ 4. He also
28   alleges no loss resulted from the (temporarily) availability of his emails online.

1    Likewise, Plaintiff points to no injury in fact that he suffered from any purported

2    breach of the California Online Privacy Act of 2003, Bus. & Prof. Code §22575, et seq.,

3    See CAC ¶ 47.  This statute requires online businesses to post a privacy policy, and governs

4    the handling by online operators of "personally identifiable information," defined as

5    "individually identifiable information about an individual consumer <u>collected online by the</u>

6    <u>operator</u> from that individual and <u>maintained by the operator in an accessible form</u>."  Cal.

7    Bus. & Prof. Code §22577(a) (emphasis added).  In other words, the Online Privacy Act

8    concerns the types of personally identifiable information business collect from customers

9    for payment processing, marketing and other uses.  This information is subject to Network

10   Solutions' Privacy Policy, described above.  On the other hand, customer emails in webmail

11   accounts, are not used by Network Solutions, or "maintained … in an accessible form."

12   and Network Solutions does not "monitor, edit or disclose the contents of [its customers']

13   private communications with third parties."  CAC ¶ 9; <u>see</u>, <u>e.g.</u>, RFJN Exh. 4 at RFJN

14   0178. Thus, the Online Privacy Act does not apply to emails stored by Network Solutions.

15       For all of these reasons, Plaintiff has not alleged any "unfair," "fraudulent," or

16   "unlawful" act giving rise to standing or liability under the UCL.

17       D.    <u>Count IV – The Customer Records Act</u>

18       Section 1798.81 of the California Customer Records Act ("CCRA") requires a

19   business to take reasonable steps to destroy or arrange for the destruction "personal

20   information" within its "custody or control," once that information "is no longer to be

21   retained."  Cal. Civ. Code §1798.81.  Plaintiff alleges no facts suggesting that any emails

22   referenced in the complaint were "no longer to be retained" by Network Solutions, or that

23   Network Solutions failed to reasonably "destroy" emails.  Therefore, section 1798.81 does

24   not apply to the facts of the Complaint.

25       Section 1798.81.5 of the CCRA provides: "A business that owns or licenses

26   personal information about a California resident shall implement and maintain reasonable

27   security procedures and practices appropriate to the nature of the information…."  Cal. Civ.

28   Code §1798.81.5(b).  "Owns or licenses" is defined to include "personal information that a

1   business retains as part of the business's internal customer account or for the purpose of

2   using that information in transactions with the person to whom the information relates."

3   Cal. Civ. Code §1798.81.5(a).  Plaintiff does not allege that any information Network

4   Solutions "owns or licenses" (i.e. account or payment information) was either disclosed by

5   Network Solutions or found on any search engines.  Moreover, "personal information" for

6   purposes of Section 1798.81.5 as a person's name <u>in combination with</u> any one or more of

7   the following:  (a) social security number; (b) driver's license number or California

8   identification card number; (c) account, credit, or debit card number together with any

9   required code to be able to access the financial account; or (d) medical information.  Cal.

10  Civ. Code §1798.81.5(d).  Plaintiff does not allege that such information about him was

11  ever made publicly available online.

12  Thus, Plaintiff does not allege liability under CCRA section 1798.81 or 1798.81.5.

13      E.    <u>Count VI - Public Disclosure of Private Facts</u>

14  There are six essential elements for a claim for public disclosure of private facts

15  ("PDPF") under California law[10]: (i) the defendant made a public disclosure about the

16  plaintiff; (ii) before this disclosure the fact or matter was private, that is, not known to the

17  public; (iii) <u>the fact or matter made known to the public would be highly offensive to a</u>

18  <u>reasonable person of ordinary sensibilities</u>; (iv) the defendant disclosed the fact or matter

19  <u>with knowledge that it was highly offensive or with reckless disregard of whether it was</u>

20  <u>highly offensive or not</u>; (v) the fact or matter made known was not newsworthy; and (vi)

21  the public disclosure of this fact or matter caused plaintiff to sustain injury, damage, loss or

22  harm.  <u>BAJI, CA Jury Instructions, Civil</u>, No. 7.21 (West 2007-08 Ed.) (Emphasis added).

23  PDPF is an intentional tort, requiring affirmative disclosure of facts with "a reckless

24  disregard for its offensiveness."  <u>Briscoe v. Reader's Digest Association, Inc.</u>, 4 Cal. 3d

---

[10] Pursuant to the Governing Law provision of the Service Agreement, this matter should properly be heard in Virginia subject to Virginia law.  <u>See</u>, <u>e.g.</u>, RFJN Exh. 4 at RFJN 0133.  Network Solutions, however, addresses in this motion the common law claims under California law in the event this Count declines to grant Defendant's concurrent Motion to Dismiss under FRCP Rule 12(b)(3).

1  529, 543 (1971). Here, the Complaint does not allege intentional or reckless disclosure.
2  Network Solutions was contractually obligated not to "monitor" customer emails, and the
3  Plaintiff does not allege it knew the contents of customer emails. Further, the tort requires
4  "the publication of true but intimate or private facts about the plaintiff, such as matters
5  concerning the plaintiff's sexual life or health." Moore v. Sun Publishing Corp., 881 P.2d
6  735, 743 (N.M. Ct. App. 1994). If there is nothing uncomplimentary or discreditable in the
7  disclosure, no cause of action will lie. Gill v. Hearst Publ'g Co., 40 Cal. 2d 224, 230-231
8  (1953). Plaintiff alleges no intimate, offensive or objectionable facts.
9  Therefore the PDPF claim fails and should be dismissed.
10     F.    Count V - Unjust Enrichment
11 Plaintiff's unjust enrichment claim rests on the allegation that "Defendant benefited
12 from the unlawful acts set forth in this Class Action Complaint through the receipts of
13 payments for Internet services, including web based email accounts, from Plaintiff and
14 those similarly situated." As set forth above, however, the Complaint fails to adequately
15 allege any violations of law, and, therefore, the claim for unjust enrichment should be
16 dismissed.
17     V.    Conclusion
18 For all of the reasons forth above, Plaintiff's Complaint should be dismissed in its
19 entirety pursuant to FRCP 12(b)(6).
20 Dated: November 28, 2007

PILLSBURY WINTHROP SHAW PITTMAN LLP
SHERI FLAME EISNER
JOHN M. GRENFELL
DAVID L. STANTON

By   /s/
    Sheri Flame Eisner
    Attorneys for Defendant
    NETWORK SOLUTIONS, LLC