1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   SHERI FLAME EISNER #162776
2  sheri.eisner@pillsburylaw.com
   DAVID L. STANTON #208079
3  david.stanton@pillsburylaw.com
   725 South Figueroa Street, Suite 2800
4  Los Angeles, CA  90017-5406
   Telephone: (213) 488-7100
5  Facsimile: (213) 629-1033

6  PILLSBURY WINTHROP SHAW PITTMAN LLP
   JOHN M. GRENFELL #88500
7  john.grenfell@pillsburylaw.com
   50 Fremont Street
8  Post Office Box 7880
   San Francisco, CA  94120-7880
9  Telephone: (415) 983-1000
   Facsimile: (415) 983-1200
10
   Attorneys for Defendant
11 NETWORK SOLUTIONS, LLC

12                     UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                         SAN FRANCISCO DIVISION

15

16 DOE, Individually And On Behalf Of All )   No. C 07-5115 JSW
   Others Similarly Situated,             )
17                                        )   DEFENDANT NETWORK
                            Plaintiff,    )   SOLUTIONS, LLC'S MOTION TO
18                                        )   STRIKE PURSUANT TO FEDERAL
       vs.                                )   RULE OF CIVIL PROCEDURE 12(f)
19                                        )
   NETWORK SOLUTIONS, LLC,                )   Judge:  Hon. Jeffrey S. White
20                                        )   Date:   January 25, 2008
                            Defendant.    )   Time:   9:00 a.m.
21                                        )   CrtRm:  2

1 **NOTICE OF MOTION AND MOTION TO STRIKE**

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3  PLEASE TAKE NOTICE that on Friday, January 25, 2008, at 9:00 a.m., before the

4  Honorable Jeffery S. White, in Courtroom 2, 450 Golden Gate Avenue, San Francisco,

5  California, defendant **NETWORK SOLUTIONS, LLC** will move and hereby does move,

6  pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike portions of the

7  complaint (Dkt. 1) filed anonymously by plaintiff "**DOE**."

8  This motion is made on the grounds that the certain language of the complaint is

9  directly contradicted by the written agreement quoted therein, of which the Court may

10  properly take judicial notice, or by an applicable statute.  This motion is based on this

11  notice of motion, the memorandum that follows, the request for judicial notice filed

12  herewith, Defendant's concurrent motions to dismiss under Rules 12(b)(1), 12(b)(3) and

13  12(b)(6) of the Federal Rules of Civil Procedure, which are incorporated herein by

14  reference, all pleadings and records on file in this action, and any other arguments and

15  evidence presented to this Court at or before the hearing on this motion.

16  **ISSUE TO BE DECIDED**

17  Should the Court strike provisions of the complaint (Dkt. 1) that are inconsistent

18  with the parties' written agreement and inconsistent with applicable law?

19  **POINTS AND AUTHORITIES**

20  I.  Introduction

21  The Class Action Complaint ("Complaint" or "CAC") improperly filed

22  anonymously by plaintiff "Doe" ("Plaintiff") acknowledges that "all Defendant's customers

23  enter into a written agreement with Defendant."  CAC (Dkt 1) ¶9.  Nevertheless, the

24  Complaint (i) demands a jury trial, which is expressly waived under the parties' written

25  agreement; (ii) seeks compensatory, punitive, statutory, and other damages that also have

26  been expressly waived; and (iii) mislabels a selective quotation from the agreement as the

27  operative "Privacy Policy," even though the written agreement expressly incorporates a

28  distinct Privacy Policy that was in effect during the relevant period.  Additionally, one of

Plaintiff's claims is for $3,000 in statutory damages under the California Consumer Records Act (Count IV), but this remedy is not available under the provisions upon which Plaintiff bases this claim.

All the foregoing language raises spurious legal claims and confuses the relevant issues. Therefore, pursuant to Rule 12(f) of the Federal Rule of Civil Procedure ("FRCP"), defendant Network Solutions, LLC ("Network Solutions" or "Defendant") moves the Court to strike this improper language from the Complaint.

II.     <u>Statement of the Case</u>

Network Solutions is in the business of registering domain names (e.g. "janesbagels.com") and providing web-related services through its website and servers located in Virginia.[1] CAC ¶5-6. Among other things, Defendant provides, for a fee, internet-based email accounts (called "webmail" accounts) associated with customers' domain names (e.g., "jane@janesbagles.com"). CAC ¶6.

Plaintiff alleges that in May 2007—months before renewing his Network Solutions webmail account for the fourth time—he discovered certain of his emails "on Internet search engines, including Google." CAC ¶4.[2] Plaintiff, however, does not claim that Network Solutions is a search engine, that he discovered these emails on any medium controlled by Network Solutions, or that any search results linked him to a website affiliated with Network Solutions. Nor does plaintiff clearly allege that his emails remain available online. <u>Compare</u> CAC ¶10 ("may still be available"), <u>with</u> ¶12 ("permanent, public record"). He also does not allege any damages directly arising from the alleged (temporary) publication of his emails on search engines.

---

[1] Each computer connected to the Internet has a unique numeric address, known as an Internet Protocol or "IP" address, whereby one computer or network identifies and exchanges information with another. The Domain Name System ("DNS") was created to allow a more easily remembered word or phrase (also called a "domain name") to be associated with a specific IP address. The DNS allows the use of easily-remembered domain names (e.g. "janesbagels.com") rather than numerical IP addresses.

[2] The Complaint repeatedly refers to Plaintiff using masculine singular pronouns. <u>See e.g.</u> CAC, page 1, line 1 ("Plaintiff Doe, on behalf of <u>himself</u>….) (Emphasis added.)

1     Nevertheless, Plaintiff has sued Network Solutions in connection with the search
2 engines' purported publication of his emails.  He alleges federal and state statutory claims,
3 and claims under California common law.   As set forth separately in Defendant's
4 concurrent motions to dismiss under Rules 12(b)(1), 12(b)(3) and 12(b)(6), this California
5 action is wholly improper and should be dismissed in its entirety.  Alternately, Defendant
6 requests that the Court strike the specific provisions of the Complaint identified below.

7     III.    <u>Standards Under Federal Rule of Civil Procedure 12(f)</u>

8     The purpose of a motion to strike pursuant to Rule 12(f) is to allow the courts to
9 meet the widely recognized public policy goal of effectuating judicial economy by
10 removing matters that are "redundant, immaterial, impertinent, or scandalous matter."
11 FRCP Rule 12; <u>see also</u> <u>Cazares v. Pac. Shore Funding</u>, 2006 U.S. Dist. LEXIS 1081, at *7
12 (C.D. Cal. Jan. 3, 2006).  Whether to grant a Rule 12(f) motion is squarely within the
13 jurisdiction of the District Court.  <u>Federal Sav. & Loan Ins. Corp. v. Gemini Mgmt.</u>, 921
14 F.2d 241, 244 (9th Cir. 1990).  Such motions can in some instances be "viewed with
15 disfavor and are not frequently granted." <u>Cazares</u> at *7.  Nevertheless, where, as here, a
16 motion to strike seeks to omit language from a Complaint that gives rise to spurious legal
17 claims, it is justified.  <u>See e.g.</u>, <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880, 885 (9th
18 Cir.1983) ("[T]he function of a 12(f) motion to strike is to avoid the expenditure of time
19 and money that must arise from litigating spurious issues by dispensing with those issues
20 prior to trial.")

21     IV.    <u>The Court May Properly Take Judicial Notice of Plaintiff's Service</u>
22         <u>Agreement</u>

23     In order to obtain or renew a domain name or webmail account, each Network
24 Solutions customer must affirmatively agree to the terms of a written Service Agreement.
25 <u>See</u> CAC ¶9 ("[A]ll Defendant's customers enter into a written agreement with
26 Defendant…."). In October 2003, Plaintiff voluntarily and affirmatively entered into a
27 Service Agreement, and thereby registered a domain name and established a webmail
28 account.  CAC ¶¶4, 9; <u>see also</u> Defendant's Request for Judicial Notice ("RFJN") Exh. 1 at

1   RFJN 0007("By applying for a Network Solutions service … or by using the service(s)
2   provided … under this Agreement, you acknowledge that you have read and agree to be
3   bound by all terms and conditions of this Agreement and documents incorporated by
4   reference."). Each and every year through 2007 (including October 2007), Plaintiff
5   renewed and reaffirmed his agreement with Network Solutions. CAC ¶4; RFJN Exhs. 2-5
6   at RFJN 0056, 0091-91, 0133, 0225. He paid annual fees of $34.99 for domain name
7   registration (CAC ¶6), and $20.00 for his webmail account (CAC ¶4).
8          Plaintiff does not attach to the Complaint his Service Agreements with Network
9   Solutions, but he selectively quotes identical language found in each of the five agreements
10  that were in effect from 2003 to 2007. Compare CAC ¶9, with RFJN Exhs. 1-5 at RFJN
11  0025, 0075, 0109, 0178, and 0243-44. Thus, the Court may properly take judicial notice of
12  the written contracts that Plaintiff formed when establishing and renewing this arrangement.
13  See Branch v. Tunnell, 14 F.3d 499, 454 (9th Cir. 1994); In re Stac Electronics Securities
14  Litig., 89 F.3d 1399, 1405, fn. 4 (9th Cir. 1996).
15          V.      The Court Is Not Bound By Allegations In the Complaint That Contradict
16                  The Express Terms of the Service Agreements
17          Each version of the Service Agreement in effect from 2003 to 2007 contains several
18  nearly identical provisions that are dispositive in this case.[3] In particular, Plaintiff has
19  voluntarily, affirmatively, and on multiple occasions, waived various remedies the
20  Complaint improperly seeks to recover. It is proper to strike these allegations from the
21  Complaint, because the Court is not required to accept at true allegations that are
22  contradicted by matters, such as the Service Agreements, properly subject to judicial notice.
23  Mullis v. United States Bankr. Ct., 828 F2d 1385, 1388 (9th Cir. 1987). Nor is the Court

---

[3] The five versions of the Service Agreement, which Plaintiff agreed to when he originated his webmail account in October 2003 and when he renewed his account each year thereafter, contain almost the exact same dispositive provisions. See RFJN Exhs. 1 - 5. For the convenience of the Court, Defendant has set forth in its Request for Judicial Notice a table cross-referencing the dispositive provisions from each version of the Service Agreement. See RFJN p. 3. Defendant incorporates this table by reference into this motion, as if set forth in its entirety herein.

1  required to accept as true unwarranted deductions of fact or unreasonable inferences. See

2  <u>Bell Atlantic v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007); <u>Clegg v. Cult Awareness Network</u>,

3  18 F.3d 752, 754-55 (9th Cir. 1994).

      Therefore, to effectuate judicial economy, reduce confusion and eliminate spurious legal claims, Defendant respectfully requests that the Court strike the language of the Complaint more specifically identified below.

      VI.   <u>The Court Should Strike Language Inconsistent with the Governing Law Provision</u>

      The Service Agreement contains a "Governing Law" provision waiving the right to a jury trial and requiring any disputes over Defendant's email services to be resolved in Virginia subject to Virginia law. RFJN Exhs. 1-5 at RFJN 0007, 0055-56, 0091, 0133, 0225. As discussed in Defendant's concurrent motion to dismiss under FRCP 12(b)(3), this provision requires dismissal of this California action.[4] It also justifies striking Plaintiff's jury demand from the Complaint. See, e.g. <u>Lindblom v. Secretary of Army</u>, 2007 WL 1378019 (E.D.Cal.) (Jan. 20, 2007) (striking jury demand and compensatory damages request as not available under plaintiff's Age Discrimination in Employment Act claims); <u>Davison v. Hartford Life and Accident Ins. Co.</u>, 2005 WL 807045 (N.D. Cal.) (April 07, 2005) (striking jury demand pursuant to Rule 12(f)); <u>Packagenet Inc. v. Neopost, Inc.</u>, 2005 WL 146894 (N.D.Cal.) (Jan. 20, 2005) (striking jury demand pursuant to Rule 12(f)).

      Network Solutions, therefore, requests that the Court strike the following:

| Caption: | **"JURY TRIAL DEMANDED"** |
|---|---|
| CAC at 15:24-25: | **"JURY TRIAL DEMANDED"**;<br>"Plaintiff hereby demands a trial by jury." |

---

[4] Pursuant to this Governing Law provision of the Service Agreement(s), this matter should properly be heard in Virginia subject to Virginia law. See, e.g., RFJN Exh. 4 at RFJN 0133. Network Solutions, however, addresses Plaintiff's claims in this motion under California law, in the event that the Count declines to grant Defendant's concurrent Motion to Dismiss under FRCP Rule 12(b)(3).

VII.  The Court Should Strike Language Inconsistent with the Exclusive Remedy and Time Limitation Provisions

The Service Agreement contains the following express waivers of liability:

> **EXCLUSIVE REMEDY; TIME LIMITATION ON FILING ANY CLAIM**.  YOU AGREE THAT OUR ENTIRE LIABILITY, AND YOUR EXCLUSIVE REMEDY, IN LAW, IN EQUITY, OR OTHERWISE, WITH RESPECT TO ANY NETWORK SOLUTIONS SERVICE(S) PROVIDED UNDER THIS AGREEMENT AND/OR FOR ANY BREACH OF THIS AGREEMENT IS SOLELY LIMITED TO THE AMOUNT YOU PAID FOR SUCH SERVICE(S) DURING THE TERM OF THIS AGREEMENT. IN NO EVENT SHALL NETWORK SOLUTIONS … BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES EVEN IF NETWORK SOLUTIONS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  TO THE EXTENT THAT A STATE DOES NOT PERMIT THE EXCLUSION OR LIMITATION OF LIABILITY AS SET FORTH HEREIN NETWORK SOLUTIONS' LIABILITY IS LIMITED TO THE EXTENT PERMITTED BY LAW IN SUCH STATES.  Network Solutions and its licensors and contractors disclaim any and all loss or liability result from, but not limited to:…. (2) loss or liability resulting from data non-delivery or data mis-delivery;…. (4) loss or liability resulting from the unauthorized use or misuse of your account number, password or security authentication option; (5) loss or liability resulting from errors, omissions, or misstatements in any and all information or service(s) provided under this agreement…. YOU AGREE THAT REGARDLESS OF ANY STATUTE OF LAW TO THE CONTRARY, ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OF OUR SERVICES MUST BE FILED WITHIN ONE (1) YEAR AFTER SUCH CLAIM OR CAUSE OF ACTION AROSE OR SUCH CLAIMS SHALL BE FOREVER BARRED.

RFJN Exhs. 1-5 at RFJN 0003-04, 0052-53, 0088-89, 0127-28, and 0222.[5]  In short, this provision waives (i) any remedy except for "the amount [he] paid for [Network Solutions] services" during the term of the operative Service Agreement; (ii) any recovery for "indirect, incidental, special or consequential damages," and (iii) "any claim or cause of action [not] filed within one (1) year after such claim or cause of action arose."

A waiver is an intentional relinquishment or abandonment of a known right. United States v. Olano 507 U.S. 725, 732 (1993); CBS, Inc. v. Merrick, 716 F.2d 1292, 1295 (9th Cir. 1983); Bickel v. City of Piedment, 16 Cal.4th 1040, 1048 (1997).  "California courts

---

[5] The last sentence of this provision is only found in the Service Agreements in effect from 2005-2007.  Compare RFJN Exhs. 1-2 at RFJN 0003-04 and 0052-53, with Exhs. 3-5 at RFJN 0089, 0128, and 0222.

1  will find waiver when a party intentionally relinquishes a right, or when that party's acts are
2  so inconsistent with an intent to enforce the right as to induce a reasonable belief that such
3  right has been relinquished." <u>Intel Corp. v. Hartford Acc. & Indem. Co.</u>, 952 F.2d 1551,
4  1559 (9th Cir. 1991). Here, Plaintiff affirmatively and repeatedly agreed to the Service
5  Agreements containing these express waivers and limitations of liability. CAC ¶9; <u>see, e.g.</u>
6  RFJN Exh. 4 at RFJN 0133 ("By applying for a Network Solutions service … or by using
7  the service(s) provided … under this Agreement, you acknowledge that you have read and
8  agree to be bound by all terms and conditions of this Agreement and documents
9  incorporated by reference.") Further, Plaintiff renewed his account and reaffirmed the
10 Service Agreement <u>after</u> receiving notice of the alleged May 2007 publication of his emails
11 on various search engines. CAC ¶4. These actions demonstrate the intentional
12 relinquishment of a known right.
13       As a general rule, "a party may waive a benefit of a provision of a statute ... enacted
14 ... for his protection." <u>Globe Grain & Milling Co. v. De Tweede Northwestern & Pacific
15 Hypotheekbank</u>, 69 F.2d 418, 422 (9th Cir. 1934). With respect to rights secured by federal
16 statute, "absent some affirmative indication of Congress' intent to preclude waiver, we have
17 presumed that statutory provisions are subject to waiver by voluntary agreement of the
18 parties." <u>United States v. Mezzanatto</u>, 513 U.S. 196, 201 (1995). Likewise, under
19 California law: "The doctrine of waiver is generally applicable to all the rights and
20 privileges to which a person is legally entitled, including those conferred by statute unless
21 otherwise prohibited by specific statutory provisions." <u>Outboard Marine Corp. v. Superior
22 Court</u>, 52 Cal.App.3d 30, 41 (1975). The California Civil Code states: "Anyone may waive
23 the advantage of a law intended solely for his benefit. But a law established for a public
24 reason cannot be contravened by a private agreement." Cal. Civ. Code § 3513. The
25 California Supreme Court has explained that this provision is not to be construed literally,
26 as "it is difficult to conceive of a statutory right enacted <u>solely</u> for the benefit of private
27 individuals that does not also have an incidental public benefit." <u>Bickel v. City of
28 Piedmont</u>, 16 Cal.4th at 1049, fn. 4. Thus, parties may waive any statutory right where its

1  "public benefit ... is merely incidental to [its] primary purpose," but waiver is unenforceable
2  where it would "seriously compromise any public purpose that [the statute was] intended to
3  serve." DeBerard Properties, Ltd. v. Lim, 20 Cal.4th 659, 668-669 (1999).
4       For the foregoing reasons, Defendant respectfully requests that the Court strike the
5  following: language that is inconsistent with Plaintiff's express waivers:

| | |
|---|---|
| CAC ¶8:26-9-4 | "Pursuant to 18 U.S.C. § 2707, which provides for a civil action for any persons aggrieved by a knowing or intentional violation of 18 U.S.C. § 2702, Plaintiff, and those similarly situated, seeks [sic] preliminary and permanent injunction, declaratory and equitable relief statutory damages, actual damages, and disgorgement of any profits made by Defendant as a result of the violation set forth herein but no less than $1,000 for Plaintiff, and each of those similarly situated; punitive damages and [sic] Court considers just; and reasonable attorneys fees" |
| CAC ¶10:22-26. | "Pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and similarly situated Class Members, seeks compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices."<br><br>"Plaintiff also requests that this Court award him his costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d)." |
| CAC ¶13:15-17 | "including statutory damages of $3,000 per violation suffered by himself or those similarly situated" |
| CAC ¶14:1-2 | "Plaintiff and those similarly situated are entitled to actual and punitive damages and injunctive relief for the above-mentioned tortuous act of Defendant." |
| CAC ¶15:6-7 | "Awarding Plaintiff and those similarly situated statutory and actual damages of no less than $1,000 per class member;" |
| CAC ¶15:8-10 | "Awarding Plaintiff and those similarly situated statutory and actual damages of no less than $1,000 per California Subclass member for Defendant's violation of Cal. Civ. Code § 1770, *et seq*;" |
| CAC ¶15:11-13 | "statutory" … "of no less than $3,000 per California Subclass member" |
| CAC ¶15:14-16 | "Awarding compensatory damages in favor of Plaintiff and the Class members against Defendant, for all damages sustained as a result of Defendant's violations of the laws set forth above, in an amount to be proven at trial, including interest thereon;" |

| | |
|---|---|
| CAC ¶15:17 | "Awarding statutory penalties;" |
| CAC ¶ 15:18-19 | "Ordering Defendant to disgorge revenues and profits wrongfully obtained" |
| CAC ¶15:20 | "Awarding Plaintiff and those similarly situated punitive damages;" |
| CAC ¶15:21-22 | "Awarding Plaintiff and those similarly situated their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;" |

Defendant further requests that the Court limit Plaintiff's claims to the period commencing one year before the filing of the complaint (i.e. October 4, 2006), as claims prior to that date are also barred by the Exclusive Remedy / Time Limitation provision.

Additionally, an independent reason for striking any reference to the $3,000 statutory damages that Plaintiff seeks under the California Consumer Records Act (Count IV) is that statutory damages are not authorized by the provisions under which Plaintiff has brought his claim. See CAC ¶¶15:11-13; 13:15-17. In particular, the Complaint alleges violations of Cal. Civ. Code sections 1798.81 and 1798.81.5. CAC ¶¶56-57. The only remedies available by statute under these provisions are civil "damages." Cal. Civ. Code §1798.84(b). On claims under Section 1798.83, which Plaintiff does not allege was violated, support the $3,000 statutory remedy. Cal. Civ. Code §1798.84(c).

VIII.   The Court Should Strike the Incorrect "Privacy Policy" Label

The Complaint mislabels a selective quotation from the Services Agreements as Network Solutions' "Privacy Policy." CAC ¶9. This is contrary to the express language of the Service Agreements, which incorporate by reference a distinct Privacy Policy available on the Network Solutions Website. See Exhs. 1-5 at RFJN 0003, 0051-52, 0088, 0126-27, and 0221-22. This incorrect label confuses the legal issues in the Complaint, because Bus. & Prof. Code §22576, upon which Plaintiff grounds a portion of his Unfair Competition Law claim (Count III), establishes requirements for Network Solutions' <u>actual</u> Privacy Policy, not the selective quote Plaintiff misconstrues. Moreover, the actual Privacy Policy

1  covers only the information that Network Solutions collects from its customers for billing
2  purposes, which is distinct from the webmail contents that it stores as a customer service.
3  Plaintiff's Complaint does not allege that any billing information was released, or that the
4  actual Privacy Policy has been breached.
5      Thus, the improper "Privacy Policy" label confuses the issues in this case and
6  should be stricken. In particular, Defendant respectfully requests that the Court strike the
7  following language from the Complaint:

| CAC at 3:5 | "that incorporates and includes a Privacy Policy" |

## IX.  Conclusion

For all of the reasons set forth above, Plaintiff respectfully requests that the court strike provisions of the Complaint inconsistent with the Service Agreements or substantive law, pursuant to Federal Rule of Civil Procedure §12(f).

Date:  November 28, 2007

PILLSBURY WINTHROP SHAW PITTMAN LLP
SHERI FLAME EISNER
JOHN M. GRENFELL
DAVID L. STANTON


By   /s/
       Sheri Flame Eisner
    Attorneys for Defendant
    NETWORK SOLUTIONS, LLC
