1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    SHERI FLAME EISNER #162776
2   sheri.eisner@pillsburylaw.com
    DAVID L. STANTON #208079
3   david.stanton@pillsburylaw.com
    725 South Figueroa Street, Suite 2800
4   Los Angeles, CA  90017-5406
    Telephone: (213) 488-7100
5   Facsimile: (213) 629-1033

6   PILLSBURY WINTHROP SHAW PITTMAN LLP
    JOHN M. GRENFELL #88500
7   john.grenfell@pillsburylaw.com
    50 Fremont Street
8   Post Office Box 7880
    San Francisco, CA  94120-7880
9   Telephone: (415) 983-1000
    Facsimile: (415) 983-1200
10
    Attorneys for Defendant
11  NETWORK SOLUTIONS, LLC

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                SAN FRANCISCO DIVISION

15  _____
                                        )
16  DOE, Individually And On Behalf Of All  )        No. C 07-5115 JSW
    Others Similarly Situated,              )
17                                      )
                         Plaintiff,     )        DEFENDANT NETWORK
18                                      )        SOLUTIONS, LLC'S MOTION TO
         vs.                            )        DISMISS PURSUANT TO FEDERAL
19                                      )        RULE OF CIVIL PROCEDURE
    NETWORK SOLUTIONS, LLC,             )        12(b)(3), OR IN THE ALTERNATIVE
20                                      )        TO TRANSFER PURSUANT TO
                         Defendant.     )        28 U.S.C. § 1406(a), FOR IMPROPER
21                                      )        VENUE
                                        )
22                                      )        Judge:   Hon. Jeffrey S. White
                                        )        Date:    January 25, 2008
23                                      )        Time:    9:00 a.m.
    _____)        CrtRm:   2
24

25

26

27

28

# TABLE OF CONTENTS

SUMMARY ........................................................................................................................v

NOTICE OF MOTION AND MOTION..................................................................................1

POINTS AND AUTHORITIES ...........................................................................................2

I.    Introduction ..........................................................................................................2

II.   Statement of the Case ...........................................................................................2

    A.    Defendant's Services .................................................................................3

    B.    Plaintiff's Service Agreements..................................................................4

    C.    The Forum Selection Clause .....................................................................4

    D.    Plaintiff's Alleged Discovery of Emails on Search Engines.....................6

    E.    Plaintiff's Claims......................................................................................6

    F.    The Closely Related Virginia Declaratory Relief Action..........................6

III.  Plaintiff's Claims Should Be Dismissed Because Venue Is Improper.....................7

    A.    Standards for 12(b)(3) Motions Based on Forum Selection Clauses ..................7

    B.    Plaintiff's Artful Pleading Cannot Avoid Enforcement of the Forum
          Selection Clause .......................................................................................7

    C.    Forum Selection Clauses Are Presumptively Enforceable and Plaintiff
          Cannot Meet the Heavy Burden of Showing that an Exception Applies ............9

          1.    Enforcement of the Forum Selection Clause Is Reasonable and Just ..........10

          2.    The Forum Selection Clause Was Not Obtained by Fraud, Undue
              Influence or Overwhelming Bargaining Power.............................................11

          3.    Enforcing the Forum Selection Clause Will Not Deprive Plaintiff of
              His Day in Court.........................................................................................12

    D.    In the Alternative, This Court Should Transfer This Action to Virginia ..........13

IV.   CONCLUSION. ...................................................................................................15

1

# **TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

Argueta v. Banco Mexicano,
    87 F. 3d 320 (9th Cir. 1996) ............................................................................ 7, 9

4

Bader v. International Vacations Ltd.,
    No. CV 05-6958 SVW (RCx), Order Granting Motion to Dismiss
    (C.D. Cal. Sept. 14, 2006) ............................................................................ 5, 8, 9

5

6

Barnett v. Network Solutions, Inc.,
    38 S.W.3d 200 (Tex. App. 2001) ........................................................................ 5

7

8

Bohara v. Backus Hospital Medical Benefit Plan,
    390 F. Supp. 2d 957 (C.D. Cal. 2005).................................................................. 7

9

Carnival Cruise Line, Inc. v. Shute,
    499 U.S. 585 (1991) .................................................................................... 10, 11

10

11

Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc.,
    No. C-01-4203 MMC, 2002 U.S. Dist. LEXIS 4406 (N.D. Cal.
    Mar. 12, 2002) ...................................................................................................... 8

12

13

Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,
    709 F.2d 190 (3d Cir. 1983) ................................................................................ 8

14

E. & J. Gallo Winery v. Andina Licores S.A.,
    440 F. Supp. 2d 1115 (D. Cal. 2006)............................................................ 13, 14

15

16

Flake v. Medline Industries Inc.,
    822 F. Supp. 947 (E.D. Cal. 1995) .................................................................... 14

17

Graves v. Pikulski,
    115 F. Supp. 2d 931 (D. Ill. 2000)....................................................................... 5

18

19

Hugel v. Corp. of Lloyd's,
    999 F.2d 206 (7th Cir. 1993) ............................................................................... 8

20

Hunt Wesson Foods, Inc. v. Supreme Oil Co.,
    817 F.2d 75 (9th Cir. 1987) ................................................................................. 7

21

22

Kilgallen v. Network Solutions, Inc.,
    99 F. Supp. 2d 125 (D. Mass. 2000).............................................................. 5, 12

23

Lancaster v. VeriSign, Inc.,
    No. BC 321199, Order Granting Motion to Dismiss
    (Los Angeles Super. Ct. Dec. 15, 2004).............................................................. 5

24

25

M/S Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972) ....................................................................................... passim

26

Manetti-Farrow, Inc. v. Gucci America, Inc.,
    858 F.2d 509 (9th Cir. 1988) ....................................................................... passim

27

28

1

Medimatch, Inc. v. Lucent Technologies, Inc.,
        120 F. Supp. 2d 842 (D. Cal. 2000) ..................................................................... 13

2

Murphy v. Schneider National, Inc.,
        362 F. 3d 1133 (9th Cir. 2004) ........................................................................ 3, 7

3

Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc.,
        795 F.2d 1501 (9th Cir. 1986) ............................................................................ 11

Optima Technology Corp. v. Network Solutions, Inc.,
        No. 03CC10743, Order Granting Motion to Dismiss
        (Los Angeles Super. Ct. Dec. 15, 2004) ............................................................... 5

Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,
        741 F.2d 273 (9th Cir. 1984) ................................................................................ 7

Piedmont Label Co. v. Sun Garden Packing Co.,
        598 F. 2d 491 (9th Cir. 1979) ............................................................................... 7

Shute v. Carnival Cruise Lines,
        897 F.2d 377 (9th Cir. 1990) .............................................................................. 14

TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.,
        915 F.2d 1351 (9th Cir. 1990) .............................................................................. 7

Tokio Marine & Fire Insurance Co. v. Nippon Express U.S.A., Inc.,
        118 F. Supp. 2d 997 (D. Cal. 2000) .................................................................... 14

Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,
        515 U.S. 528 (1995) ............................................................................................ 12

Volpe v. Henry Sun,
        No. 2838/2005, Short Form Order
        (NY Sup. Ct., Queens County Jan. 13, 2006) ....................................................... 5

Weber v. National Football League,
        No. 3:99CV7790, Order
        (N.D. OH July 11, 2000) ....................................................................................... 5

Weingrad v. Telepathy, Inc.,
        No. 04 CV 2024 (MBM), 2005
        U.S. Dist. LEXIS 26952 (S.D.N.Y. Nov. 7, 2005) ..................................... 5, 8, 9, 11

Statutes and Codes

California Business & Professional Code,
        Section 17200 ........................................................................................................ 6

California Business & Professional Code,
        Section 22575 ........................................................................................................ 6

California Civil Code,
        Section 1740 .......................................................................................................... 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

California Civil Code,
    Section 1798.80 ................................................................................................ 6

United States Code,
    Title 18, Section 2702 ...................................................................................... 6

United States Code,
    Title 28, Section 1406(a) ......................................................................... v, 1, 14, 15

Rules and Regulations

Federal Rules of Civil Procedure,
    Rule 12(b)(3) ................................................................................................ passim

1

## SUMMARY

2   Defendant Network Solutions LLC is a domain name registrar that has been <u>sued in</u>

3   <u>the wrong forum</u> by one of its alleged customers.  He has brought this action anonymously

4   as plaintiff "Doe" ("Plaintiff"), and alleges various state and federal claims arising from the

5   alleged unauthorized capture, publication and caching by third-party search engines of the

6   emails he stored with Network Solutions in an internet based email account.  Yet, when

7   contracting for the "webmail" account services that Plaintiff received from Network

8   Solutions, Plaintiff repeatedly, affirmatively and voluntarily agreed to a Service Agreement

9   containing a clear and unambiguous forum selection clause designating Virginia as the

10   "exclusive" venue for any disputes between the parties.  Despite agreeing to litigate in

11   Virginia, and despite quoting other language from the Service Agreement in his complaint,

12   Plaintiff ignored the forum selection clause when he filed this action in the Northern

13   District of California.  Because it was, therefore, brought in an improper forum, it should be

14   dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative,

15   transferred to the proper forum, Virginia, pursuant to 28 U.S.C. § 1406(a).

16   A forum selection clause is presumptively valid and should not be set aside unless

17   the party challenging the clause "could clearly show that enforcement would be

18   unreasonable and unjust, or that the clause was invalid for such reasons as fraud or

19   overreaching." <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15 (1972); <u>see also</u>

20   <u>Manetti-Farrow, Inc. v. Gucci America, Inc.</u>, 858 F.2d 509, 512 (9th Cir. 1988).  A party

21   opposing enforcement has the burden to prove that trial in the contractual forum would be

22   so gravely difficult and inconvenient that he would for all practical purposes be deprived of

23   his day in court.  <u>M/S Bremen</u>, 407 U.S. at 18; <u>Manetti-Farrow</u>, 858 F.2d at 515.  Here, the

24   forum selection clause is reasonable and just, and Plaintiff cannot demonstrate any

25   exception applies to invalidate it.  To the contrary, courts throughout the country have

26   continually held that the forum selection clauses in identical Service Agreements are

27   enforceable and warrant dismissal of actions filed in improper venues.  Likewise, this Court

28   should dismiss this action for improper forum, or in the alternative, transfer it to Virginia.

## NOTICE OF MOTION AND MOTION

1

2    PLEASE TAKE NOTICE that on January 25, 2008, at 9:00 a.m., or as soon

3    thereafter as the matter can be heard in Courtroom 2 of the United States District Court,

4    Northern District of California, located at 450 Golden Gate Ave, San Francisco, CA 94102-

5    3483, Defendant Network Solutions LLC will move the Court to dismiss this action

6    pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative to transfer it

7    pursuant to 28 U.S.C. § 1406(a).

8    This motion is made on the ground that the claims anonymously and improperly

9    asserted in the Complaint by plaintiff "Doe" were filed in the wrong venue in contravention

10    of repeatedly agreed-upon forum selection clauses in the parties' agreements.

11    This motion is based on this Notice, the Memorandum of Points and Authorities, the

12    Declarations of Natalie Sterling and Sheri Flame Eisner and Defendant's Request For

13    Judicial Notice, filed concurrently herewith, the concurrent motions to dismiss and motion

14    to strike filed by Network Solutions pursuant to Rule 12(b)(1), 12(b)(3) and 12(f) of the

15    Federal Rules of Civil Procedure, which are incorporated herein by reference, the papers

16    and records on file herein, and on such oral and documentary evidence as may be presented

17    at hearing on this motion.

18    ## ISSUE TO BE DECIDED

19    Should this case be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3),

20    or in the alternative transferred pursuant to 28 U.S.C. § 1406(a), because it was filed in the

21    wrong venue in contravention of a repeatedly agreed-upon forum selection clause?

22

23

24

25

26

27

28

1                      **POINTS AND AUTHORITIES**

2      I.        <u>Introduction</u>

3           Defendant Network Solutions LLC ("Network Solutions" or "Defendant") is a

4  domain name registrar that has been sued anonymously by one of its customers

5  ("Plaintiff").  This person alleges in a Class Action Complaint ("Complaint" or "CAC")

6  that the emails he[1] stored in an internet based email account (called a "webmail" account)

7  on Defendant's servers were captured, published and cached by third party search engines.

8  Regardless of who he is, Plaintiff "Doe" has sued Network Solutions in the wrong forum.

9           The Complaint admits that all of Defendant's domain name registration and

10  webmail customers are parties to a Service Agreement.  <u>See</u> CAC ¶ 9.  What Plaintiff fails

11  to allege is that each Service Agreement contains an express "Governing Law" provision

12  providing "exclusive" subject matter jurisdiction, personal jurisdiction and venue in

13  Virginia—Defendant's principal place of business and the location where its services are

14  performed.  Plaintiff admits the Service Agreement, he even quotes from it, and his claims

15  are all premised on the contractual relationship created under it.  But he disregarded the

16  unambiguous forum selection clause by filing suit in the Northern District of California.

17           The forum selection clause in the Service Agreement is both reasonable and just,

18  and no applicable exception overcomes the strong legal presumption that it is valid and

19  should be enforced.  Therefore, this action should be dismissed because it was filed in an

20  improper venue.  In the alternative, this matter should be transferred to its proper venue,

21  Virginia, where a closely related declaratory relief action against the person, Brett Gottlieb,

22  who anonymously brought the instant action, is already pending.[2]

23      II.       <u>Statement of the Case</u>

24           When determining whether to enforce a venue selection clause and dismiss an

25  _____

26  [1] The Complaint repeatedly refers to Plaintiff using masculine singular pronouns.  <u>See</u>, <u>e.g.</u>, Complaint at 1:1 ("Plaintiff Doe, on behalf of <u>himself</u>….") (emphasis added).

27  [2] Other than filing as a "Doe," Plaintiff has made no effort to conceal his identity in this case or in the pending action in Virginia.  <u>See</u> Eisner Decl. ¶¶ 4, 7.

28

1    action pursuant to Federal Rule of Civil Procedure 12(b)(3), the court is allowed "to

2    consider facts outside the pleadings."  Murphy v. Schneider Nat'l, Inc., 362 F. 3d 1133,

3    1137 (9th Cir. 2004).  Accordingly, the following summary incorporates the allegations of

4    the Complaint[3],  the declarations of Sheri Eisner ("Eisner Decl.") and Natalie Sterling

5    ("Sterling Decl.") filed in support of this motion, the exhibits thereto, and the Request for

6    Judicial Notice ("RFJN") and attached exhibits, filed concurrently with this motion.

7        A.    Defendant's Services

8        In order for the Internet to function, each computer connected to it must have a

9    unique numeric address, known as an Internet Protocol or "IP" address.  Sterling Decl. ¶ 3.

10   The use of IP addresses is the method by which one computer or network connected to the

11   Internet can identify and exchange information with another.  Id.  Because IP numbers can

12   be difficult to remember, the Domain Name System ("DNS") was created to allow a more

13   easily remembered word or phrase (also called a "domain name") to be associated with a

14   specific IP address.  Id. at ¶ 4. In other words, the DNS provides the ability for Internet

15   users to utilize easily-remembered domain names (e.g., "janesbagels.com") rather than

16   trying to remember the numerically-based IP addresses.  Id.  Without such a system, quick

17   and easy Internet navigation would be nearly impossible.  Id.  Domain name registration

18   services are therefore one of the most important tasks to facilitate Internet usage.  Id.

19       Defendant is in the business of providing domain name registration and related

20   services, including web site hosting and web-based email accounts (or "webmail"

21   accounts).  CAC ¶ 6.  Defendant provides these services through its web site and servers

22   located in Virginia.  It is one of approximately eight hundred ninety-four (894) domain

23   name registrars providing such services.  Sterling Decl. ¶ 8.  Defendant provides webmail

24   accounts for a fee, and they are associated with customers' registered domain names (e.g.,

25   "jane@janesbagles.com").  Id. at ¶ 11.

26   _____

27   [3]  Insofar as Defendant summarizes the allegations of the Complaint, it does so only for
         purposes of this Motion.

28

1    B.    Plaintiff's Service Agreements

2        In order to obtain a domain name or webmail account from Defendant, each

3    customer must affirmatively agree to the terms of a written Service Agreement.  See CAC

4    ¶ 9 ("[A]ll Defendant's customers enter into a written agreement with Defendant….");

5    Sterling Decl. ¶ 13; RFJN Exs. 1-5 at RFJN 7, 56, 91-92, 133, 225 ("By applying for a

6    Network Solutions service … or by using the service(s) provided … under this Agreement,

7    you acknowledge that you have read and agree to be bound by all terms and conditions of

8    this Agreement and documents incorporated by reference.")

9        Further, to obtain any services from Network Solutions, customers must

10   affirmatively "check" a box on the Network Solutions web site immediately adjacent to the

11   following text, which is hyperlinked to the Service Agreement: "I have read the Network

12   Solutions Service Agreement and agree to its terms."  The customer must check this box or

13   she is not permitted to purchase or renew any services.  Sterling Decl. ¶ 13 and Ex. A.  If a

14   customer does not agree to the Service Agreement, Network Solutions will not provide any

15   services to that customer, knowing full well that the customer may select another service

16   provider from among Network Solutions' many competitors.  Sterling Decl. ¶ 13.

17       In October 2003, Plaintiff entered into a Service Agreement with Network Solutions

18   whereby he registered a domain name and established a webmail account.  CAC ¶ 4;

19   Sterling Decl. ¶ 16; RFJN Exs. 1-5 at RFJN 7, 56, 91-92, 133, 225.  Each October from

20   2004 through 2007, he renewed this registration, each time once again affirmatively and

21   voluntarily agreeing to the Service Agreement.  CAC ¶ 4; Sterling Decl. ¶ 17.  Plaintiff paid

22   annual fees of $34.99 for his domain name registration (CAC ¶ 6), and $20.00 for his

23   webmail account (CAC ¶ 4).

24    C.    The Forum Selection Clause

25       The Service Agreements between Plaintiff and Defendant (RFJN Exs. 1-5) each

26   contain "Governing Law" provisions requiring any disputes between the parties to be

27   resolved in the courts of Virginia subject to Virginia law.  Specifically, the Service

28   Agreements state:

1    **GOVERNING LAW**

2    (a)  You and Network Solutions agree that this Agreement and any disputes
     hereunder shall be governed in all respects by and construed in accordance
3    with the laws of the Commonwealth of Virginia, United States of America,
     excluding its conflict of laws rules.  <u>You and we each agree to submit to</u>
4    <u>exclusive subject matter jurisdiction, personal jurisdiction and venue of the</u>
     <u>United States District Court for the Eastern District Court of Virginia,</u>
5    <u>Alexandria Division for any disputes between you and Network Solutions</u>
     <u>under, arising out of, or related in any way to this Agreement</u> (whether or not
6    such disputes also involve other parties in addition to you and Network
     Solutions).  If there is no jurisdiction in the United States District Court for
7    the Eastern District of Virginia, Alexandria Division, for any such disputes,
     you and we agree that exclusive jurisdiction and venue shall be in the courts
8    of Fairfax County, Fairfax Virginia.

9    RFJN Ex. 1-4 at RFJN 7, 55-56, 91, 133, 225 (emphasis added).[4]

10       As further discussed below, language similar or identical this "Governing Law"

11   provisions in Network Solutions' Service Agreement has been upheld by courts across the

12   country.  <u>See</u> RFJN Exs. 10-18 (<u>Barnett v. Network Solutions, Inc.</u>, 38 S.W.3d 200, 203-04

13   (Tex. App. 2001); <u>Kilgallen v. Network Solutions, Inc.</u>, 99 F. Supp. 2d 125, 129 (D. Mass.

14   2000); <u>Graves v. Pikulski</u>, 115 F. Supp. 2d 931, 934-935 (D. Ill. 2000); <u>Weingrad v.</u>

15   <u>Telepathy, Inc.</u>, No. 04 CV 2024 (MBM), 2005 U.S. Dist. LEXIS 26952 (S.D.N.Y. Nov. 7,

16   2005); <u>Bader v. Int'l Vacations Ltd.</u>, No. CV 05-6958 SVW (RCx), Order Granting Mot. to

17   Dismiss (C.D. Cal. Sept. 14, 2006); <u>Weber v. Nat'l Football League</u>, No. 3:99CV7790,

18   Order (N.D. OH July 11, 2000); <u>Volpe v. Henry Sun</u>, No. 2838/2005, Short Form Order

19   (NY Sup. Ct., Queens County Jan. 13, 2006); <u>Lancaster v. VeriSign, Inc.</u>, No. BC 321199,

20   Order Granting Mot. to Dismiss (Los Angeles Super. Ct. Dec. 15, 2004); <u>Optima Tech.</u>

21   <u>Corp. v. Network Solutions, Inc.</u>, No. 03CC10743, Order Granting Mot. to Dismiss (Los

22   Angeles Super. Ct. Dec. 15, 2004).

23

24   _____

25   [4]  Defendant quotes herein from the version of the Service Agreement that would have been
     in effect in May 2007, when Defendant allegedly discovered his emails on various search
26   engines. RFJN Exh. 4. Defendant also sets forth in its Request for Judicial Notice a table
     cross-referencing the substantially identical provisions in each relevant Service
     Agreement from 2003 to 2007.  See RFJN, p. 3.  Defendant incorporates this table into
27   this motion.   For the sake of simplicity, Defendant only quotes one Service Agreement,
     but all five (RFJN Exs. 1-5) contain nearly identical dispositive language.

28

1      D.      Plaintiff's Alleged Discovery of Emails on Search Engines

2          Plaintiff alleges that in May 2007, he discovered certain emails from his webmail

3   account "on Internet search engines, including Google." CAC ¶ 4. Plaintiff does not assert

4   that Network Solutions is a search engine, or that he discovered these emails on any

5   medium owned or controlled by Defendant, or that the search engine results linked him to a

6   web site or domain name affiliated with Defendant. Nor does Plaintiff clearly allege that

7   his emails remain publicly available online. Compare CAC ¶10 ("may still be available"),

8   with ¶12 ("permanent, public record"). He also does not allege any damages directly

9   arising from the alleged (temporary) publication of his emails on these search engines.

10     E.      Plaintiff's Claims

11         Based on the alleged display of his emails on various search engines, Plaintiff has

12  filed a putative class action against Network Solutions asserting six causes of action: (i)

13  Electronic Communications Privacy Act, 18 U.S.C. § 2702; (ii) California Consumers

14  Legal Remedies Act, Cal. Civ. Code § 1740, et seq.; (iii) California Customer Records Act,

15  Cal. Civ. Code § 1798.80, et seq.; (iv) California Unfair Competition Law, Cal. Bus. &

16  Prof. Code § 17200, et seq. ("UCL"); (v) unjust enrichment; and (vi) private disclosure of

17  public facts. Plaintiff also asserts, as a predicate to his UCL claim, a violation of the

18  California Online Privacy Act of 2003, Cal. Bus. & Prof. Code § 22575, et seq.

19     F.      The Closely Related Virginia Declaratory Relief Action

20         On September 21, 2007, approximately two weeks before this action was filed,

21  Network Solutions sued its customer Nexus Holdings, and its account representative Brett

22  Gottlieb[5] (collectively referred to as "Gottlieb") in the Circuit Court of Fairfax County,

23  Virginia (the "Virginia Action"). Eisner Decl. ¶ 3; Sterling Decl. ¶ 26. As demonstrated

24  below and in the accompanying declarations, this is the anonymous Plaintiff in this case.

25  Evidence presented herewith demonstrates Gottlieb affirmatively agreed to the forum

26  ─────────────────

27  [5] Gottlieb registered the account at issue in this case on behalf of his company, Nexus
    Holdings, and not as a consumer "for family or household purposes," as required under
28  Cal. Civ. Code §1761(d). But see CAC ¶ 34 ("Plaintiff [is a] 'consumer'").

1  selection clause when he originally registered with Network Solutions on October 31, 2003,

2  and each year thereafter, up to his recent renewal on October 4, 2007, the same day Plaintiff

3  filed his Complaint. See Sterling Decl. ¶¶ 26-27.

4      III.    Plaintiff's Claims Should Be Dismissed Because Venue Is Improper

5      A.    Standards for 12(b)(3) Motions Based on Forum Selection Clauses

6      It is well established that "[f]ederal law governs the validity of a forum selection

7  clause" for purposes of Rule 12(b)(3) motions. Argueta v. Banco Mexicano, 87 F. 3d 320,

8  324 (9th Cir. 1996). As part of the venue analysis, the Court is allowed "to consider facts

9  outside the pleadings" (Murphy, 362 F.3d at 1137) and need not accept the pleadings as

10  true. Argueta, 87 F.3d at 324. The Court must draw reasonable inferences in favor of the

11  non-moving party, but such inferences must be "overcome the strong presumption in favor

12  of enforcing forum selection clauses." Murphy v. Schneider Nat'l, Inc., 362 F. 3d 1133,

13  1138-41 (9th Cir. 2004). In addition, once a defendant objects to venue, "the plaintiff has

14  the burden of showing that venue is proper." Bohara v. Backus Hosp. Med. Benefit Plan,

15  390 F. Supp. 2d 957, 960 (C.D. Cal. 2005) (citing Piedmont Label Co. v. Sun Garden

16  Packing Co., 598 F. 2d 491, 496 (9th Cir. 1979)). This Plaintiff cannot meet his burden.

17      When parties to a contract designate a forum in which to litigate disputes, any

18  litigation commenced elsewhere may be subject to dismissal. See, e.g., TAAG Linhas

19  Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1353 (9th Cir. 1990).

20  Where, as here, the parties agree to "exclusive jurisdiction," other forums lack jurisdiction

21  over the actions between them. Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,

22  741 F.2d 273, 275 (9th Cir. 1984); see also Hunt Wesson Foods, Inc. v. Supreme Oil Co.,

23  817 F.2d 75, 77 (9th Cir. 1987). In particular, when an action has been filed in a venue

24  other than the one designated in a forum selection clause, the case should be dismissed

25  pursuant to Federal Rule of Civil Procedure 12(b)(3). Argueta, 87 F.3d at 324.

26      B.    Plaintiff's Artful Pleading Cannot Avoid Enforcement of the Forum

27      Selection Clause

28      Plaintiff does not assert a claim for breach of contract, but his artful pleading cannot

1   defeat enforcement of the "Governing Law" provision in the Service Agreements.  Such

2   forum selection clauses also apply to tort claims related to the contracts.  Manetti-Farrow,

3   Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988) (holding that a clause

4   specifying the forum for any controversy "regarding interpretation or fulfillment" of the

5   contract also applied to tort claims for breach of the covenant of good faith and fair dealing,

6   and for interference with economic advantage).  "[W]here the relationship between the

7   parties is contractual, the pleading of alternative non-contractual theories of liability should

8   not prevent enforcement" of a forum selection clause.  Coastal Steel Corp. v. Tilghman

9   Wheelabrator, Ltd., 709 F.2d 190, 203 (3d Cir. 1983) (holding "claims such as negligent

10  design, breach of implied warranty, or misrepresentation" were subject to dismissal based

11  on forum selection clause even absent a breach of contract claim); see also Hugel v. Corp.

12  of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993); Chateau Des Charmes Wines Ltd. v. Sabate

13  USA, Inc., No. C-01-4203 MMC, 2002 U.S. Dist. LEXIS 4406, at *14-15 (N.D. Cal.

14  Mar. 12, 2002) rev'd on other grounds, 328 F.3d 528 (9th Cir. 2003).

15      Recently, in Bader v. International Vacations, Ltd., Case No. CV 05-6958 SVW

16  (RCx), the Central District of California enforced the exact same forum selection at issue in

17  this dispute in a case between Network Solutions and another customer, who also attempted

18  to avoid it through artful pleading.  RFJN Ex. 14 at RFJN 307-10 (Order Granting Def.

19  Network Solutions' Mot. to Dismiss for Improper Venue, entered September 18, 2006).

20  The Bader plaintiffs alleged negligence, conversion and a civil RICO fraud claim, without

21  asserting breach of contract.  Id. at RFJN 308.  The court held they could only assert claims

22  related to their domain name because "their right to own the domain name flows directly

23  from the Network Solutions Service Agreement."  Id.  Thus, all disputes relating to

24  Network Solutions services were governed by same forum selection clause at issue in this

25  case, and the Bader action was dismissed as filed in an improper venue.  Id. at RFJN 309.

26      Likewise, the Southern District of New York has enforced Network Solutions'

27  forum selection clause where a plaintiff did not allege breach of contract.  RFJN Ex. 13

28  (Weingrad v. Telepathy, Inc., 2005 U.S. Dist. LEXIS 26952 (S.D.N.Y. Nov. 7, 2005)).  The

1    Weingrad plaintiff alleged multiple claims based on the alleged failure to transfer a domain

2    name. Id. at *12-15 (RFJN Ex. 13 at RFJN 301-302).  The court held such claims arose

3    from the parties' agreements, the forum selection clause controlled, and "the claims must be

4    dismissed under Fed. R. Civ. P. 12(b)(3)." Id. at *15 (RFJN Ex. 13 at RFJN 302).

5         In the present case, the Service Agreement governing the registration of Plaintiff's

6    domain name and webmail account contains an unambiguous "Governing Law" provision,

7    which states that any claims "under, arising out of, or related in any way to" the Service

8    Agreement must be exclusively brought in Virginia.  See RFJN Exs. 1-5 at RFJN 7, 55-56,

9    91, 133, 225.  Plaintiff acknowledges the existence of the Service Agreement, and even

10   quotes from it.  CAC ¶ 9.  But he ignores having repeatedly agreed to litigate in Virginia.

11        In an attempt to plead around the agreed-upon forum selection clause, Plaintiff

12   alleges only statutory and common law theories, and omits the obvious breach of contract

13   claim.  Such artful pleading does not prevent enforcement of the forum selection clause.  As

14   in Bader and Weingrad, the relationship between Plaintiff and Defendant is wholly

15   contractual.  Plaintiff's claims are premised on that contractual relationship.  No matter how

16   they are pled, Plaintiff's action against Network Solutions flows directly from the

17   relationship created under the Service Agreement.  Therefore, the "Governing Law"

18   provision, applies, and this California action must be dismissed.

19        C.     Forum Selection Clauses Are Presumptively Enforceable and Plaintiff

20               Cannot Meet the Heavy Burden of Showing that an Exception Applies

21        A forum selection clause is presumptively valid and should not be set aside unless

22   the party challenging the clause "could clearly show that enforcement would be

23   unreasonable and unjust, or that the clause was invalid for such reasons as fraud or

24   overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972);[6] see also

25   _____

26   [6] Although M/S Bremen was an admiralty case, the Ninth Circuit has extended its holding
     to diversity and other non-admiralty cases. See, e.g., Argueta v. Banco Mexicano, S.A.,
27   87 F.3d 320, 325 (9th Cir. 1996) ("Although Bremen is an admiralty case, its standard has
     been widely applied to forum selection clauses in general.").

28

1   Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 512 (9th Cir. 1988). The party

2   opposing enforcement of a forum selection clause has the burden "to show that trial in the

3   contractual forum would be so gravely difficult and inconvenient that he will for all

4   practical purposes be deprived of his day in court." M/S Bremen, 407 U.S. at 18; Manetti-

5   Farrow, 858 F.2d at 515. Here, Plaintiff cannot show any exception applies to invalidate

6   the "Governing Law" provision he repeatedly agreed to when he created and renewed

7   Network Solutions webmail account. Courts have upheld this same clause as enforceable

8   through a motion to dismiss. See e.g., RFJN Exs. 10-18. This Could should do the same.

9        1.    Enforcement of the Forum Selection Clause Is Reasonable and Just

10          In cases factually similar to the instant action, courts have found forum selection

11   clauses are reasonable and just. A party, like Network Solutions, which services clients in

12   many locales "has a special interest in limiting the fora in which it potentially could be

13   subject to suit." Carnival Cruise Line, Inc. v. Shute, 499 U.S. 585, 593 (1991). Customers

14   purchasing services under a contract with a forum selection clause directly benefit from

15   reduced fees resulting from the resources saved by limiting the fora in which the vendor

16   may be sued. Id. at 594. Forum selection clauses also conserve judicial resources by

17   avoiding the need for pretrial motions to determine the correct forum. Id. at 593-94.

18          In Barnett v. Network Solutions, Inc., 38 S.W.3d 200 (Tex. App. 2001), the court

19   enforced a forum selection clause in a Network Solutions contract. See RFJN Ex. 10. The

20   Barnett court acknowledged that Network Solutions, Inc. "received more than 6,000,000

21   registration applications from throughout the world," and had a legitimate reason to employ

22   a forum selection clause in its agreements, otherwise, it "could be sued in forums

23   throughout the world" Id. at 204 (RFJN Ex. 10 at RFJN 289).[7] Furthermore, the company

24   "charged only $35 per registration [and] the forum selection clause was a reasonable way to

25   keep the price of the service low and to eliminate uncertainties." Id.

26   _____

27   [7] The Barnett court refers to Network Solutions, Inc. ("NSI"), Defendant's predecessor.
     Pursuant to a November 2003 sale by Verisign of its registrar assets (including NSI's
28   assets), all Service Agreements were transferred to Network Solutions.

1    Currently, Network Solutions services more than <u>two million</u> customers throughout

2    the world.  Sterling Decl. ¶ 15.  These customers have a direct financial interest in limiting

3    the fora in which it can be sued, because enforceable forum selection clauses permit

4    Defendant to offer its services at lower prices.  <u>Id.</u> at ¶ 24.  As Plaintiff admits, Defendant

5    registers domain names for just $34.99 annually, plus $20.00 per year for a webmail

6    account.  CAC ¶ 6.  Defendant's forum selection clause also is calculated to avoid wasting

7    judicial and party resources on motion practice to establish proper venue.  <u>Id.</u> at ¶ 25.

8    These provisions serve a legitimate purpose, conserve judicial resources, and benefit

9    Defendant's customers by keeping prices low.  Therefore, Plaintiff cannot meet his burden

10    of invalidating the forum selection clause, and it should be enforced.

11    2.    <u>The Forum Selection Clause Was Not Obtained by Fraud, Undue Influence</u>

12          <u>or Overwhelming Bargaining Power</u>.

13    Plaintiff also cannot meet the burden of proving the forum selection clause was

14    obtained as a result of fraud, undue influence, or overwhelming bargaining power.  <u>M/S</u>

15    <u>Bremen</u>, 407 U.S. at 15; <u>Manetti-Farrow</u>, 858 F.2d at 512.  In a situation nearly identical to

16    the present action, where the plaintiff voluntarily agreed to an online contract with Network

17    Solutions, the court found none of these factors were present.  RFJN Ex. 13 at RFJN 301

18    (<u>Weingrad</u>, 2005 U.S. Dist LEXIS 26952, at * 11).  The <u>Weingrad</u> court noted that the

19    plaintiff chose to register a domain name with Network Solutions and voluntarily agreed to

20    several contracts, including the Service Agreement.  <u>Id.</u>  It held that the plaintiff was

21    "bound by the terms of the forum selection clause even if he did not take the time to read it

22    because 'a signatory to a contract is presumed to have read, understood and agreed to be

23    bound by all terms including forum selection clauses, in the documents he or she signed.'"

24    <u>Id.</u>; <u>see</u> <u>also</u> <u>Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc.</u>, 795 F.2d 1501,

25    1505 (9th Cir. 1986) ("A party who signs a contract is bound by its terms regardless of

26    whether he reads it or considers the legal consequences of signing it.").  Further, it is well

27    established that "a non-negotiated forum selection clause included in a form contract may

28    be enforced even if it was not the subject of bargaining."  <u>Carnival Cruise Lines, Inc. v.</u>

1    <u>Shute</u>, 499 U.S. at 593-95 (enforcing clause on cruise ticket not negotiated by the parties).

2        In the present case, Plaintiff <u>voluntarily</u> and <u>repeatedly</u> agreed to the Service

3    Agreement.  He did so when he initially registered with Network Solutions, and each year

4    thereafter—including on October 4, 2007, <u>after</u> he had learned of the alleged May 2007

5    release of his emails, and even <u>after</u> a declaratory relief had been filed against him to

6    enforce the forum selection clause.  CAC ¶ 4; Sterling Decl. ¶¶16-23, 26-27; Eisner Decl.

7    ¶¶ 2-5.  As a consequence of such voluntary, knowing, and intentional consent to the

8    Service Agreement, he is bound by the "Governing Law" provision, even if he chose not to

9    read it.  Moreover, insofar as the claims in Plaintiff's Complaint are based upon language

10   quoted from the Service Agreement, he presumably did read it.  <u>See</u>, CAC at ¶ 9.

11       Further, Plaintiff could have selected any one of the hundreds of other service

12   providers in the industry, and the fact that he did not negotiate the forum selection clause is

13   no reason to deem it unenforceable.  His promise to bring any claims in Virginia induced

14   Network Solutions to provide him the requested services.  Having received those services,

15   he should not be permitted to renege on his agreement or avoid its impact.

16       3.    <u>Enforcing the Forum Selection Clause Will Not Deprive Plaintiff of His Day</u>

17             <u>in Court</u>.

18       Plaintiff also cannot overcome the presumption that the "Governing Law" provision

19   is valid by proving the selected forum is so "gravely difficult and inconvenient that the

20   complaining party will for all practical purposes be deprived of [his] day in court." <u>M/S</u>

21   <u>Bremen</u>, 407 U.S. at 18; <u>Manetti-Farrow</u>, 858 F.2d at 515.  Increased cost and

22   inconvenience are <u>insufficient</u> reasons to invalidate forum selection clauses.  <u>Vimar</u>

23   <u>Seguros y Reaseguros, S.A. v. M/V Sky Reefer</u>, 515 U.S. 528, 535-36 (1995) (holding a

24   forum selection clause designating Japan to be enforceable despite the increased cost of

25   litigating in a distant forum).  Additionally, economic hardship caused by having to appear

26   in another forum does not invalidate a forum selection clause.  In <u>Kilgallen v. Network</u>

27   <u>Solutions</u>, No. 00-10334-PBS, a case in the District Court of Massachusetts that upheld

28   Network Solutions' forum selection clause, the plaintiff contended "that enforcement of the

1     forum selection clause would be unreasonable because he is a sole proprietor and his

2     business would be adversely affected by his absence if he must litigate the claim in

3     Virginia."  See RFJN Ex. 11 at RFJN 294.  The Kilgallen court found that such hardship

4     did not meet the burden of showing enforcement was unreasonable.  Id.

5         Further, "the fact that the forum or choice of law specified by a contract affords

6     remedies that are different or less favorable to the laws of the forum preferred by a plaintiff

7     is not alone a valid basis to deny enforcement of the forum selection and choice of law

8     provisions." E. & J. Gallo Winery v. Andina Licores S.A., 440 F. Supp. 2d 1115, 1127

9     (D. Cal. 2006) (holding forum selection clause designating California enforceable where

10    California law provided reasonable recovery of damages, even though the alternate forum

11    provided an abbreviated procedure for recovery); see also Medimatch, Inc. v. Lucent

12    Techs., Inc., 120 F. Supp. 2d 842, 862 (D. Cal. 2000).

13        In the present case, enforcing the forum selection clause will not deny Plaintiff his

14    day in court.  There is no grave difficulty or inconvenience prosecuting cases in Virginia.

15    Plaintiff presumably requires local counsel to do so, and he can certainly find qualified

16    attorneys in Virginia.  The likelihood of added costs or inconvenience are insufficient

17    grounds to disregard his agreement to litigate claims against Defendant in Virginia.

18        Further, Virginia law provides Plaintiff with a forum in which he can obtain a

19    reasonable recovery.  By suing there, he can assert the straightforward breach of contract

20    claim that he eschewed here in his effort to avoid the forum selection clause by which he is

21    bound.  He also can assert statutory and common law claims.  The fact that California law

22    may be different or potentially more favorable does not defeat his prior choice of law.

23        D.     In the Alternative, This Court Should Transfer This Action to Virginia

24        If the Court determines that venue is improper based on the forum selection clause it

25    may either dismiss the action or, if the interests of justice so require, transfer the case to any

26

27

28

1    district in which it could have been originally brought.[8]  28 U.S.C. § 1406(a); <u>Flake v.</u>

2    <u>Medline Indus. Inc.</u>, 822 F. Supp. 947, 949-52 (E.D. Cal. 1995).  Accordingly, if the Court

3    declines to dismiss this action under Rule 12(b)(3), Defendant requests that the Court

4    transfer this action to Virginia under 28 U.S.C. § 1406(a) ("Section 1406(a)").

5        To determine whether to dismiss or transfer an action under Section 1406(a) based

6    on a forum selection clause, courts apply the analysis laid out in <u>M/S Bremen</u>, which is

7    discussed above in sections III.C – III.C.3.  <u>Shute v. Carnival Cruise Lines</u>, 897 F.2d 377,

8    388 n.9 (9th Cir. 1990) <u>rev'd on other grounds</u>, <u>Carnival Cruise Lines v. Shute</u>, 499 U.S.

9    585, 594-95 (1991).  Here, Virginia is the forum designated by the parties' agreement, and,

10    therefore, the only proper venue.

11        Transferring to Virginia is also appropriate because a closely related declaratory

12    relief action is already pending in that jurisdiction.  In the instant case, Plaintiff has

13    attempted to disguise his identity by filing as a "Doe,"[9] but Network Solutions has

14    demonstrated that Plaintiff is Brett Gottlieb ("Gottlieb"), who is already named as a

15    defendant in the pending declaratory relief action in the Circuit Court of Fairfax County,

16    Virginia (the "Virginia Action"). <u>See</u> Sterling Decl. ¶¶ 26-27; Eisner Decl. at ¶¶ 2-7.

17        The Virginia Action is closely related to this action.  It is based on the same set of

18    facts, and seeks a declaratory judgment that (1) the Service Agreement governs any claims

19    brought by Gottlieb or his company, Nexus Holdings, against Network Solutions arising

20    from the services provided under the agreement, including any claims related to the alleged

21    capture, publication and caching of his emails by third-party search engines; and (2) any

22    claims arising from or related to services provided by Network Solutions are governed by

23    _____

24    [8] While it is proper to dismiss a case under Section 1406(a) due to improper venue based on
         a forum selection clause, a plaintiff may choose, as in this case, to move to dismiss the
25       action under Federal Rule of Civil Procedure 12(b)(3).  <u>See</u>, <u>e.g.</u>, <u>E. & J. Gallo Winery</u>,
         388 F. Supp. 2d at 1161; <u>Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A., Inc.</u>,
26       118 F. Supp. 2d 997, 998 (D. Cal. 2000).

27    [9] Defendant is concurrently filing a Motion to Dismiss for Lack of Subject Matter
         Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1) seeking to dismiss the
28       action on the ground that Plaintiff impermissibly filed anonymously as a Doe plaintiff.

1  Virginia law and can be brought only in Virginia.  Eisner Decl. Exh. A.

2      The Virginia Action specifically addresses the forum selection clause.  It was filed

3  on September 21, 2007.  Eisner Decl. ¶ 3.  Plaintiff Gottlieb reaffirmed the Services

4  Agreement by renewing his account on October 4, 2007, <u>after</u> the Virginia Action was

5  filed.  CAC ¶4; Sterling Decl. ¶ 7.  Such conduct constitutes a waiver of his right to assert

6  that he did not intend to submit to Virginia jurisdiction.  <u>See, e.g.</u> <u>Intel Corp. v. Hartford</u>

7  <u>Acc. & Indem. Co.,</u>  952 F.2d 1551, 1559 (9th Cir. 1991) ("California courts will find

8  waiver when the "<u>party's acts are so inconsistent with an intent to enforce the right as to</u>

9  <u>induce a reasonable belief that such right has been relinquished</u>.")(emphasis added).

10      Thus, dismissing or transferring this matter to Virginia is entirely appropriate.

11     IV.    <u>CONCLUSION</u>.

12      Plaintiff <u>repeatedly,</u> <u>affirmatively</u> and <u>voluntarily</u> agreed to a Service Agreement

13  with a forum selection clause that identifies Virginia as the venue for all disputes between

14  the parties.  Without Plaintiff's affirmative consent to this provision, Network Solutions

15  would not have provided him any services.  Plaintiff's alleged claims all arise from the

16  contractual relationship created by this Services Agreement, and they are governed by its

17  "Governing Law" provision.  This clause is enforceable, reasonable and just, and Plaintiff

18  cannot fulfill the heavy burden of proving an exception exists to invalidate it.

19      Therefore, this action should be dismissed pursuant to Federal Rule of Civil

20  Procedure Section 12(b)(3) for improper venue; or, in the alternative, transferred to Virginia

21  pursuant to 28 U.S.C. § 1406(a).

22

23      Dated:  November 28, 2007

24                    PILLSBURY WINTHROP SHAW PITTMAN LLP
                      SHERI FLAME EISNER
25                    JOHN M. GRENFELL
                      DAVID L. STANTON
26
                      By    /s/
27                              Sheri Flame Eisner
                            Attorneys for Defendant
28                          NETWORK SOLUTIONS, LLC