1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    SHERI FLAME EISNER #162776
2   sheri.eisner@pillsburylaw.com
    DAVID L. STANTON # 208079
3   david.stanton@pillsburylaw.com
    725 South Figueroa Street, Suite 2800
4   Los Angeles, CA  90017-5406
    Telephone: (213) 488-7100
5   Facsimile: (213) 629-1033

6   PILLSBURY WINTHROP SHAW PITTMAN LLP
    JOHN M. GRENFELL #88500
7   john.grenfell@pillsburylaw.com
    50 Fremont Street
8   Post Office Box 7880
    San Francisco, CA  94120-7880
9   Telephone: (415) 983-1000
    Facsimile: (415) 983-1200
10

    Attorneys for Defendant
11  NETWORK SOLUTIONS, LLC

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15  _____

16  DOE, Individually And On Behalf Of All        )     No. C 07-5115 JSW
    Others Similarly Situated,                     )
17                                                 )
                            Plaintiff,             )     REQUEST FOR JUDICIAL NOTICE
18                                                 )     IN SUPPORT OF DEFENDANT
         vs.                                       )     NETWORK SOLUTIONS, LLC'S
19                                                 )     MOTIONS TO DISMISS AND
    NETWORK SOLUTIONS, LLC,                        )     MOTION TO STRIKE
20                                                 )
                            Defendant.             )
21                                                 )
                                                   )
22                                                 )     Judge:    Hon. Jeffrey S. White
                                                   )     Date:     January 25, 2008
23                                                 )     Time:     9:00 a.m.
                                                   )     CrtRm:    2
24  _____ )

25

26

27

28

# REQUEST FOR JUDICIAL NOTICE

Pursuant to Rule 201 of the Federal Rules of Evidence and the authorities cited below, defendant Network Solutions, LLC ("Defendant" or "Network Solutions") hereby requests that the Court take judicial notice of the documents attached to this request as Exhibits 1 through 18, which are incorporated herein by reference.  Defendant makes this request in support of its concurrent motions to dismiss the Class Action Complaint ("Complaint" or "CAC") improperly filed by the anonymous plaintiff "Doe" ("Plaintiff") pursuant to Rules 12(b)(1), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), and its motion to strike pursuant to FRCP Rule 12(f).

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1. | Service Agreement, Version 6.7 (2003) (CAC ¶ 9). |
| 2. | Service Agreement, Version 7.1 (Sep. 28, 2004) (CAC ¶ 9). |
| 3. | Service Agreement, Version 7.6 (Aug. 16, 2005) (CAC ¶ 9). |
| 4. | Service Agreement, Version 7.7.1 (2006) (CAC ¶ 9). |
| 5. | Service Agreement, Version 7.8 (2007) (CAC ¶ 9). |
| 6. | Privacy Policy, Version 2.2 (Nov. 2003) (CAC ¶ 9). |
| 7. | Privacy Policy, Version 2.3 (Feb. 2004) (CAC ¶ 9). |
| 8. | Privacy Policy, Version 2.4 (Sep. 2004) (CAC ¶ 9). |
| 9. | Definition of "search engine," American Heritage Dictionary (4th ed. 2006). |
| 10. | Barnett v. Network Solutions, Inc., 38 S.W.3d 200, 203-04 (Tex. App. 2001). |
| 11. | Kilgallen v. Network Solutions, Inc., 99 F. Supp. 2d 125, 129 (D. Mass. 2000). |
| 12. | Graves v. Pikulski, 115 F. Supp. 2d 931, 934-935 (D. Ill. 2000). |
| 13. | Weingrad v. Telepathy, Inc., No. 04 CV 2024 (MBM), 2005 U.S. Dist. LEXIS 26952 (S.D.N.Y. Nov. 7, 2005). |

| | | |
|---|---|---|
| 1<br>2 | 14. | <u>Bader v. International Vacations Ltd.</u>, No. CV 05-6958 SVW (RCx), Order Granting Defendant Network Solutions' Motion to Dismiss for Improper Venue (C.D. Cal. Sept. 14, 2006). |
| 3<br>4 | 15. | <u>Weber v. National Football League</u>, No. 3:99CV7790, Order (N.D. OH July 11, 2000). |
| 5 | 16. | <u>Volpe v. Henry Sun</u>, No. 2838/2005, Short Form Order (NY Sup. Ct., Queens County Jan. 13, 2006). |
| 6<br>7<br>8 | 17. | <u>Lancaster v. VeriSign, Inc.</u>, No. BC 321199, Notice of Order Granting Motion of Defendants VeriSign, Inc. and Network Solutions, Inc. to Dismiss the Action on the Basis of Forum Non Conveniens (Los Angeles Super. Ct. Dec. 15, 2004). |
| 9<br>10<br>11 | 18. | <u>Optima Tech. Corp. v. Network Solutions, Inc.</u>, No. 03CC10743, Notice of Order Granting Defendant Network Solutions, Inc.'s Motion to Dismiss Plaintiff Optima Technology Corporation, Inc.'s Complaint Pursuant to Cal. Civ. Proc. Code §410.30 For *Forum Non Conveniens* (Los Angeles Super. Ct. Dec. 15, 2004). |

12    **GROUNDS FOR REQUESTING JUDICIAL NOTICE**

13    Pursuant to Federal Rule of Evidence 201(b)(2), the Court may take judicial notice

14    of a fact that is "not subject to reasonable dispute in that it is…capable of accurate and

15    ready determination by resort to sources whose accuracy cannot reasonably be questioned."

16    Fed. R. Evid. 201(b)(2).  This is true of Exhibits 1 through 18.

17    I.    <u>The Service Agreements (Exhibits 1 though 5)</u>

18    Plaintiff alleges in his October 4, 2007 Complaint that he "registered a private

19    domain name [with Network Solutions] in October 2003 and renewed the registration each

20    year until this year."  CAC ¶4.  He further alleges that he "also purchased… a single web

21    based email account."  <u>Id.</u>  In order to register or renew a domain name or web based email

22    account (called a "webmail" account), Network Solutions' customers must agree to a

23    written Service Agreement.  Plaintiff admits this, stating that "all Defendant's customers

24    enter into a written agreement with Defendant."  CAC ¶9.  Exhibits 1-5 are the relevant

25    Service Agreements from October 2003 until October 2007.  The Complaint quotes

26    <u>identical</u> language found in each of these agreements.  <u>Compare</u> CAC ¶9, <u>with</u> Exh. 1-5 at

27    RFJN 0025, 0075, 0109, 0178 and 0243-44.

28

1    When ruling on a motion to dismiss, the Court may consider documents "whose

2    contents are alleged in a complaint and whose authenticity no party questions, but which

3    are not physically attached to the [plaintiff's] pleading." Branch v. Tunnell, 14 F.3d 449,

4    454 (9th Cir. 1994). The Court also may consider the full text of a document that a

5    complaint quotes only in part. See In re Stac Electronics Securities Litig., 89 F.3d 1399,

6    1405, fn. 4 (9th Cir. 1996). Plaintiff admits he is a party to the Service Agreements, and he

7    

8    selectively quotes from them in his Complaint, thus judicial notice of Exhibits 1-5 is proper.

9    In its motions to dismiss and motion to strike, Defendant identifies several

10   dispositive provisions of the Service Agreements, which are nearly identical in each

11   version. These are specifically identified in the table below:

12   

|  | Exh. 1 2003 | Exh. 2 2004 | Exh. 3 2005 | Exh. 4 2006 | Exh. 5 2007 |
|---|---|---|---|---|---|
| Agreement to be Bound | RFJN 0007 Sec. 22 | RFJN 0056 Sec. 22 | RFJN 0091-92 Sec. 22 | RFJN 0133 Sec. 22 | RFJN 0225 Sec. 22 |
| Governing Law | RFJN 0007 Sec. 21 | RFJN 0055-56 Sec. 21 | RFJN 0091 Sec. 21 | RFJN 0133 Sec. 21 | RFJN 0225 Sec. 21 |
| Exclusive Remedy and Time Limitation[1] | RFJN 0003-04 Sec. 7 | RFJN 0052-53 Sec. 7 | RFJN 0088-89 Sec. 7 | RFJN 0127-28 Sec. 7 | RFJN 0222 Sec. 7 |
| Disclaimer of Warranties | RFJN 0004 Sec. 8 | RFJN 0053 Sec. 8 | RFJN 0089 Sec. 8 | RFJN 0128-29 Sec. 8 | RFJN 0222-23 Sec. 7 |
| Email Services Schedule | RFJN 0025 Sch. B, §7 | RFJN 0075 Sch. L, §7 | RFJN 0109 Sch. L, §7 | RFJN 0178 Sch. L, §7 | RFJN 0243-44 Sch. L, §7 |
| Incorporation of Privacy Policy | RFJN 0003 Sec. 5 | RFJN 0051-52 Sec. 5 | RFJN 0088 Sec. 5 | RFJN 0126-27 Sec. 5 | RFJN 0221-22 Sec 5 |

[1] The 2003 and 2004 versions of the Service Agreement (Exh. 1-2) do not contain a Time Limitation provision. Otherwise, the substantive language is identical.

1    II.    The Privacy Policies (Exhibits 6 through 8)

2        Plaintiff's alleges, as part of his claim under the California Unfair Competition Law,

3    Cal. Bus. & Prof. Code §17200 (Count III) that Defendant violated Cal. Bus. & Prof. Code

4    §22576. CAC ¶47. That statute establishes liability for online businesses that fail to

5    comply with their posted privacy policies, which must comport with the requirements of

6    Bus. & Prof. Code §22572. See e.g., 22575(a) "("An operator of a commercial Web site or

7    online service that collects personally identifiable information through the Internet about

8    individual  consumers residing in California … shall conspicuously post its privacy policy

9    on its Web site.")

10       Exhibits 6 through 8 are Network Solutions' Privacy Policies in effect from

11   November 2003 to the present. These Privacy Policies are incorporated by reference in

12   Section 5 of each of the respective Service Agreements. See e.g., Exhibits 1-5 at RFJN

13   0003, 0051-52, 0088, 0126-27, and 0221-22. These policies are essential elements of the

14   Service Agreements, and properly the subject of judicial notice for the same reasons set

15   forth above with respect to Exhibits 1-5. Additionally, the Court may take judicial notice of

16   "documents crucial to the plaintiff's claims, but not explicitly incorporated into his

17   complaint." Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Thus, the Court may

18   consider the Privacy Policies, even though they are not explicitly referenced in the

19   Complaint, because it necessarily relies on them, and their authenticity cannot be

20   reasonably contested.

III.    The Definition of "Search Engine" – Exhibit 9

The phrase "search engine" is an English phrase defined in the American Heritage Dictionary as:

(1) A software program that searches a database and gathers and reports information that contains or is related to specified terms.

(2) A website whose primary function is providing a search engine for gathering and reporting information available on the Internet or a portion of the Internet.

American Heritage Dictionary (4th ed. 2006).

Under Fed. R. Evid. 201(d), the Court "shall take judicial notice" of adjudicative facts "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). A judicially noticed fact may be one not subject to reasonable dispute in that it is generally known within the territorial jurisdiction of the trial court. Fed. R. Evid. 201(b). The phrase "search engine" as it is defined in the American Heritage Dictionary is generally known within the territorial jurisdiction of this Court. It is properly the subject of judicial notice.

IV.    Decisions Upholding the Governing Law Provision - Exhibits 10 through 18

Exhibits 10-18 are decisions of state and federal courts upholding and enforcing the Governing Law provision in Network Solution's Service Agreement. See Exhs. 1-5 at RFJN 0007, 0055-56, 0091, 0133 and 0225. Under Fed. R. Evid. 201, the Court may take judicial notice of "matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Court decisions are matters of public record, thus the Court may take judicial notice of them in the context of a motion to dismiss. See Kent v. DaimlerChrysler Corp., 200 F. Supp. 2d 1208 (D. Cal. 2002) (taking judicial notice of two state court decisions and a legal memorandum filed in a state court action on the grounds that they are public documents). Exhibits 10-18 are all court decisions, and therefore, matters of public record properly the subject of judicial notice.

1      V.     <u>Conclusion</u>

2      For the reasons set forth above, Network Solutions respectfully request that the

3  Court take judicial notice of each of the above-referenced exhibits in ruling on Defendant's

4  motions to dismiss and motion to strike.

5      Dated:  November 28, 2007

6

7                               PILLSBURY WINTHROP SHAW PITTMAN LLP
                                SHERI FLAME EISNER
                                JOHN M. GRENFELL

8                               DAVID L. STANTON

9

10                          By      /s/

11                               Sheri Flame Eisner
                                Attorneys for Defendant

12                              NETWORK SOLUTIONS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

a VeriSign® company

**NetworkSolutions®**

HELP   WHOIS   VIEW ORDER |

HOME | DOMAIN NAMES | WEB SITES | E-MAIL | BUSINESS BUILDERS | RENEW SERVICES ˇ | AC

Search for, buy, and transf

Create a Web site for yourse

Get a profess

Use our tools to prom

Renew a

Log in and m

# SERVICE AGREEMENT

**TABLE OF CONTENTS**

General Provisions (Sections 1 - 29)
Domains (Schedules A, D, E, F, G, O, Q, V)
E-mail (Schedule B)
Web Forwarding (Schedule C)
Ecommerce Services (Schedule H, covers the Web Business Packages)
Payment and Certificate Services (Schedules I, K, L, M)
Websites from VeriSign (Schedule J)
SureList Service (Schedule N)
Change of Registrar Service (Schedule R)
SuperStats, Counter, Broadserver, EZpolls and GuestBook Services -- Purchased directly from
VeriSign (Schedule S)
SuperStats, WatchDog, Counter, SubmitWizard, SiteMiner, BroadServer, EZpolls and GuestBook
Services -- Purchased from the MyComputer Storefront (Schedule T)
Registrant Name Change Agreement (Schedule U)

**This is Service Agreement Version Number 6.7.**

**1. INTRODUCTION.** In this Service Agreement ("Agreement"), "you" and "your" refer to each customer ("Customer") and its agents, including each person listed in your account information as being associated with your account, and "we", "us" and "our" refer collectively to VeriSign, Inc. and its wholly owned subsidiaries, including but not limited to Network Solutions, Inc. ("Network Solutions"), (collectively "VeriSign"). All references in this Agreement to Network Solutions shall be deemed to be references to VeriSign. This Agreement explains our obligations to you, and your obligations to us in relation to the VeriSign service(s) you purchase. By purchasing VeriSign service(s) you agree to establish an account with us for such services. When you use your account or permit someone else to use your account to purchase or otherwise acquire access to additional VeriSign service(s) or to modify or cancel your VeriSign service(s) (even if we were not notified of such authorization), this Agreement as amended covers any such service or actions. Additionally, you agree that each person listed in your account information as being associated with your account for any services provided to you (including, but not limited to, domain name registration services) is your agent with full authority to act on your behalf with respect to such services in accordance with the permissions granted, and that the Primary Contact and Account Administrative Contact for your account shall have the authority, without limitation, to terminate, transfer (where transfer is permitted by the Agreement), or modify such services or your account information, or purchase additional services. Any acceptance of your application(s) or requests for our services and the performance of our services will occur at our offices in Herndon, Virginia (in the cases of services governed by Schedules A through H and Schedules J, N, O, Q, R, S, T, U and

RFJN0001

V) or Mountain View, California (in the cases of services governed by Schedules I, K, L, M and P) the locations of our principal places of business.

**2. VARIOUS SERVICES.** Sections 1 through 29 apply to any and all VeriSign services that you purchase. The terms and conditions set forth in Schedules A through V of this Agreement apply only to customers who have purchased the VeriSign services referenced in those Schedules. In the event of any inconsistency between the terms of Sections 1 through 29 and the terms of Schedules A through V, the terms of Schedules A through V shall control with regard to the applicable VeriSign service. IMPORTANT NOTICE CONCERNING BUNDLED SERVICES: If you purchase VeriSign services that are sold together as a "bundled" package (e.g., you select a Web Site package that includes both a domain name and a VeriSign Web Site, as opposed to your purchasing such services separately), termination of any part of the services will result in termination of all VeriSign services provided as part of the bundled package. Please see Section 10.d of this Agreement for more information.

**3. FEES, PAYMENT AND TERM OF SERVICE.** As consideration for the services you purchased, you agree to pay VeriSign the applicable service(s) fees set forth on our Web site at the time of your selection, or, if applicable, upon receipt of your invoice from VeriSign. All fees are due immediately and are non-refundable, except as otherwise expressly noted in one or more of Schedules A through V. If you qualify, we may extend payment terms to you under our Business Account Credit Program. Unless otherwise specified herein or on our Web site, each VeriSign service is for a one-year initial term and renewable thereafter for successive one to ten-year terms, as set forth during the renewal process. Any renewal of your services with us is subject to our then current terms and conditions, including, but not limited to, successful completion of any applicable authentication procedure, and payment of all applicable service fees at the time of renewal and in the case of domain name re-registration, the domain name registry's acceptance of your domain name registration. Except with respect to service to which you subscribe on a monthly basis, we will endeavor to provide you notice prior to the renewal of your services at least fifteen (15) days in advance of the renewal date. Additional payment terms may apply to the VeriSign services you purchase, as set forth in the applicable Schedules to this Agreement. We may provide you with an opportunity to "opt in" to our automatic renewal process in accordance with the instructions (and subject to your agreement to the terms and conditions pertaining to that process) on our Web site. In any event, you are solely responsible for the credit card information you provide to VeriSign and must promptly inform VeriSign of any changes thereto (e.g., change of expiration date or account number). In addition, you are solely responsible for ensuring the services are renewed. VeriSign shall have no liability to you or any third party in connection with the renewal as described herein, including, but not limited to, any failure or errors in renewing the services. You agree to pay all value added, sales and other taxes (other than taxes based on VeriSign's income) related to VeriSign services or payments made by you hereunder. All payments of fees for VeriSign services shall be made in U.S. dollars. Set up fees, if any, will become payable on the applicable effective date for the applicable VeriSign services. All sums due and payable that remain unpaid after any applicable cure period herein will accrue interest as a late charge of 1.5% per month or the maximum amount allowed by law, whichever is less.

**4. ACCURATE INFORMATION.** You agree to: (1) provide certain true, current, complete and accurate information about you as required by the application process; and (2) maintain and update according to our modification procedures the information you provided to us when purchasing our services as needed to keep it current, complete and accurate. We rely on this information to send you important information and notices regarding your account and our services. You agree that VeriSign (itself or through its third party service providers) is authorized, but not obligated, to use Coding Accuracy Support System (CASS) certified software and/or the National Change of Address program (and/or such other systems or programs as may be recognized by the United States Postal Service or other international postal authority for updating and/or standardizing address information) to change any address information associated with your account (e.g., registrant address, billing contact address, etc.), and you agree that VeriSign may use and rely upon any such changed address information for all purposes in connection with your account (including the sending of invoices and other important account information) as though such changes had been made directly by you.

**5. PRIVACY.** Our privacy statement, (a) for Payment Services and Digital Certificates is located on our Web site at http://www.verisign.com/truste and is incorporated herein by reference, as it is applicable to Payment Services and Digital Certificates (relevant extracts from this privacy statement regarding Class 1 Digital IDs are set forth in Schedule K), (b) for Web sites purchased through www.verisignwebsites.com is located on our Web site at http://wsm.ezsitedesigner.com/privacy/PrivacyPolicy.html and is incorporated herein by reference, as it is applicable to such Web site purchases (other services purchased through www.verisignwebsites.com, including, but not limited to, domain name registrations, are covered by the privacy statement set forth on our Web site at http://www.netsol.com/en_US/legal/privacy-policy.jhtml), (c) for VeriSign services purchased through www.mycomputer.com is located on our Web site at http://www.mycomputer.com/agreements/privacy_policy.html?mycSession=hTkzfOk%3DI-5-%2522%2522_&mycSession_sig=2098891861 and is incorporated herein by reference for all such VeriSign services, and (d) for all other VeriSign services is located on our Web site at http://www.netsol.com/en_US/legal/privacy-policy.jhtml and is incorporated herein by reference for all such VeriSign services. The applicable privacy statement sets forth your and our rights and responsibilities with regard to your personal information. You agree that we, in our sole discretion, may modify our privacy statement. We will post such revised statement on our Web site at least thirty (30) calendar days before it becomes effective. You agree that, by using our services after modifications to the privacy statement become effective, you have agreed to these modifications. You acknowledge that if you do not agree to any such modification, you may terminate this Agreement. We will not refund any fees paid by you if you terminate your Agreement with us except as otherwise expressly provided in one or more of the Schedules attached hereto. We will not process the personal data that we collect from you in a way incompatible with the purposes and other limitations described in our privacy statement. You represent and warrant that you have provided notice to, and obtained consent from, any third party individuals whose personal data you supply to us as part of our services with regard to: (i) the purposes for which such third party's personal data has been collected, (ii) the intended recipients or categories of recipients of the third party's personal data, (iii) which parts of the third party's data are obligatory and which parts, if any, are voluntary; and (iv) how the third party can access and, if necessary, rectify the data held about them. You further agree to provide such notice and obtain such consent with regard to any third party personal data you supply to us in the future. We are not responsible for any consequences resulting from your failure to provide notice or receive consent from such individuals nor for your providing outdated, incomplete or inaccurate information.

**6. OWNERSHIP.** Except as otherwise set forth herein, all right, title and interest in and to all, (i) registered and unregistered trademarks, service marks and logos; (ii) patents, patent applications, and patentable ideas, inventions, and/or improvements; (iii) trade secrets, proprietary information, and know-how; (iv) all divisions, continuations, reissues, renewals, and extensions thereof now existing or hereafter filed, issued, or acquired; (v) registered and unregistered copyrights including, without limitation, any forms, images, audiovisual displays, text, software and (vi) all other intellectual property, proprietary rights or other rights related to intangible property which are used, developed, comprising, embodied in, or practiced in connection with any of the VeriSign services identified herein ("VeriSign Intellectual Property Rights") are owned by VeriSign or its licensors, and you agree to make no claim of interest in or ownership of any such VeriSign Intellectual Property Rights. You acknowledge that no title to the VeriSign Intellectual Property Rights is transferred to you, and that you do not obtain any rights, express or implied, in the VeriSign or its licensors' service, other than the rights expressly granted in this Agreement. To the extent that you create any Derivative Work (any work that is based upon one or more preexisting versions of a work provided to you, such as an enhancement or modification, revision, translation, abridgement, condensation, expansion, collection, compilation or any other form in which such preexisting works may be recast, transformed or adapted) such Derivative Work shall be owned by VeriSign and all right, title and interest in and to each such Derivative Work shall automatically vest in VeriSign. VeriSign shall have no obligation to grant you any right in any such Derivative Work.

**7. EXCLUSIVE REMEDY.** You agree that our entire liability, and your exclusive remedy, in law, in equity, or otherwise, with respect to any VeriSign service(s) provided under this Agreement and/or for any breach of this Agreement is solely limited to the amount you paid for such service(s) during the term of this Agreement. In no event shall VeriSign, ITS LICENSORS and contractors (INCLUDING THIRD PARTIES PROVIDING SERVICES AS PART OF THE Subscription

Service FOR WEBSITES FROM VERISIGN) be liable for any indirect, incidental, special or consequential damages EVEN IF VERISIGN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. TO THE EXTENT THAT A state doES not PERMIT the exclusion or limitation of liability AS SET FORTH HEREIN verisign's liability is limited to the extent permitted by law in such states. VeriSign and its licensors and contractors disclaim any and all loss or liability resulting from, but not limited to: (1) loss or liability resulting from access delays or access interruptions; (2) loss or liability resulting from data non-delivery or data mis-delivery; (3) loss or liability resulting from acts of god; (4) loss or liability resulting from the unauthorized use or misuse of your account number, password or security authentication option; (5) loss or liability resulting from errors, omissions, or mistatements in any and all information or service(s) provided under this agreement; (6) loss or liability relating to the deletion of or failure to store e-mail messages; (7) loss or liability resulting from the development or interruption of your web site or your VeriSign web site; (8) loss or liability from your inability to use our e-mail service, web site manager service or any component of the subscription service (for websites from VeriSign); (9) loss or liability that you may incur in connection with our processing of your application for our services, our processing of any authorized modification to your domain name record or your agent's failure to pay any fees, including the initial registration fee or reregistration fee; (10) loss or liability as a result of the application of our dispute policy; or (11) loss or liability relating to limitations, incompatibilities, defects, or other problems inherent in xml, xkms, or any other standard not under VeriSign's sole control, or relating to customer-requested generation and transmission of a subscriber's private key under xkms to the extent VeriSign adheres to the current version of the VeriSign Certification Practice Statement ("CPS") (appearing at http://www.VeriSign.com/cps) as amended from time to time and industry-standard security practices relating to xkms services.

**8. DISCLAIMER OF WARRANTIES.** You agree that your use of our service(s) OR OUR LICENSORS' SERVICES is solely at your own risk. You agree that all of such SERVICES are provided on an "as is," and "as available" basis, EXCEPT AS OTHERWISE NOTED IN THIS AGREEMENT. WE AND OUR LICENSORS EXPRESSLY DISCLAIM ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. NEITHER VERISIGN NOR OUR LICENSORS MAKE ANY WARRANTY THAT SERVICE(S) LICENSED HEREUNDER WILL MEET YOUR REQUIREMENTS, OR THAT THE SERVICE(S) WILL BE UNINTERRUPTED, TIMELY, SECURE, OR ERROR FREE; NOR DO WE OR OUR LICENSORS MAKE ANY WARRANTY AS TO THE RESULTS THAT MAY BE OBTAINED FROM THE USE OF THE SERVICE(S) OR AS TO THE ACCURACY OR RELIABILITY OF ANY INFORMATION OBTAINED THROUGH OUR SERVICES. YOU UNDERSTAND AND AGREE THAT ANY MATERIAL AND/OR DATA DOWNLOADED OR OTHERWISE OBTAINED THROUGH THE USE OF OUR SERVICES IS DONE AT YOUR OWN DISCRETION AND RISK AND THAT YOU WILL BE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR COMPUTER SYSTEM OR LOSS OF DATA THAT RESULTS FROM THE DOWNLOAD OF SUCH MATERIAL AND/OR DATA. WE MAKE NO WARRANTY REGARDING ANY GOODS OR SERVICES PURCHASED OR OBTAINED THROUGH ANY OF OUR SERVICES OR ANY TRANSACTIONS ENTERED INTO THROUGH SUCH SERVICES. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM US OR THROUGH OUR SERVICES SHALL CREATE ANY WARRANTY NOT EXPRESSLY MADE HEREIN, YOU MAY NOT RELY ON ANY SUCH INFORMATION OR ADVICE. TO THE EXTENT JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES, SOME OF THE ABOVE EXCLUSIONS MAY NOT APPLY TO YOU. WE ARE NOT RESPONSIBLE FOR AND SHALL HAVE NO LIABILITY WITH RESPECT TO ANY PRODUCTS AND/OR SERVICES PURCHASED BY YOU FROM A THIRD PARTY.

**9. INDEMNITY.** You agree to release, indemnify, defend and hold harmless VeriSign, (including in our capacities as the registry or a registrar for domain names, and the applicable registry for any top-level domain in which you are applying for services hereunder), and any of our (or their) contractors, subcontractors, members, agents, employees, officers, directors, shareholders, affiliates and assigns from all liabilities, claims, damages, costs and expenses, including reasonable attorneys' fees and expenses, relating to or arising out of (a) this Agreement or the breach of your warranties, representations and obligations under this Agreement, (b) the VeriSign services or your use of such services, including without limitation infringement or dilution by you, or someone else using our service(s) from your computer, (c) any intellectual property or other proprietary right of any person or entity, (d) a violation of any of our operating rules or policies relating to the service(s) provided, (e) any information or data you supplied to VeriSign, including, without limitation, any misrepresentation in your application, if applicable, (f) the inclusion of

meta-tags or other elements in any website created for you or by you via the VeriSign services, or (g) any information, material, or services available on your licensed VeriSign Web Site . When we are threatened with suit or sued by a third party, we may seek written assurances from you concerning your promise to indemnify us; your failure to provide those assurances may be considered by us to be a material breach of this Agreement. We shall have the right to participate in any defense by you of a third-party claim related to your use of any of the VeriSign services, with counsel of our choice at our own expense. We shall reasonably cooperate in the defense at your request and expense. You shall have sole responsibility to defend us against any claim, but you must receive our prior written consent regarding any related settlement. The terms of this paragraph will survive any termination or cancellation of this Agreement.

## 10. TERMINATION.

a. By You. You may terminate this Agreement upon at least thirty (30) days written notice to VeriSign for any reason.

b. By Us. We may terminate this Agreement or any part of the VeriSign services at any time in the event you breach any obligation hereunder, fail to respond within ten (10) calendar days to an inquiry from us concerning the accuracy or completeness of the information referred to in Section 4 of this Agreement, or if we determine in our sole discretion that you have violated the VeriSign Acceptable Use Policy, incorporated herein and made part of this Agreement by reference. The current version of the VeriSign Acceptable Use Policy may be found at our Web Site: http://www.netsol.com/en_US/legal/aup.jhtml.

c. Effect of Termination. VeriSign will cease charging your credit card, if applicable, for any monthly service fees as of the expiration of the monthly billing cycle in which the termination is effective. Unless otherwise specified in writing by VeriSign, you will not receive any refund for payments already made by you as of the date of termination, and, you may incur additional fees (in the case of a monthly or annual subscription being paid over time, as provided in various Schedules below). If termination of this Agreement is due to your default hereunder, you shall bear all costs of such termination, including any reasonable costs VeriSign incurs in closing your account. You agree to pay any and all costs incurred by VeriSign in enforcing your compliance with this Section. Upon termination, you shall destroy any copy of the materials licensed to you hereunder and referenced herein. You agree that upon termination or discontinuance for any reason, we may delete all information related to you on the VeriSign service, if applicable. In addition to the terms set forth herein, certain VeriSign services may have additional terms regarding termination, which are set forth in the applicable Schedule.

d. Effect of Termination of Bundled Services. In addition to the terms set forth in subsection 10(c) above, if you purchase VeriSign services which are sold together as part of a "bundled" package of services, any termination relating to such bundle will terminate all VeriSign services included in such bundle. For instance, any domain name registered with or maintained by VeriSign under this Agreement (but not including any domain names you may have registered, either with VeriSign or a third-party registrar, separately and not as part of a bundled service) will be cancelled and may thereafter be available for registration by another party. Upon the effective date of termination, VeriSign will no longer provide the bundled services to you, any licenses granted you shall immediately terminate, and you shall cease using such services immediately; provided, however, that we may, in our sole discretion and subject to your agreeing to be bound by the applicable agreement(s) and to pay the applicable fees, allow you to convert certain services included in the bundled services to stand alone services.

**11. REPRESENTATIONS AND WARRANTIES.** You agree and warrant that: (i) neither your registration nor use of the any of the VeriSign services nor the manner in which you intend to use such VeriSign services will directly or indirectly infringe the legal rights of a third party, (ii) you have all requisite power and authority to execute this Agreement and to perform your obligations hereunder, (iii) you have selected the necessary security option(s) for your domain name registration record, (iv) you are of legal age to enter into this Agreement (or you are at least 13 years of age and have your parents' permission to apply for services hereunder); and (vi) you

RFJN0005

agree to comply with all applicable laws and regulations.

**12. MODIFICATIONS TO AGREEMENT.** Except as otherwise provided in this Agreement, you agree, during the term of this Agreement, that we may: (1) revise the terms and conditions of this Agreement; and/or (2) change part of the services provided under this Agreement at any time. Any such revision or change will be binding and effective 30 days after posting of the revised Agreement or change to the service(s) on VeriSign's Web sites, or upon notification to you by e-mail or United States mail. You agree to periodically review our Web sites, including the current version of this Agreement available on our Web sites, to be aware of any such revisions. If you do not agree with any revision to the Agreement, you may terminate this Agreement at any time by providing us with notice. Notice of your termination will be effective on receipt and processing by us. Any fees paid by you if you terminate your Agreement with us are nonrefundable, except as noted in one or more of Schedules A through V, but you will not incur any additional fees. By continuing to use VeriSign services after any revision to this Agreement or change in service(s), you agree to abide by and be bound by any such revisions or changes. We are not bound by nor should you rely on any representation by (i) any agent, representative or employee of any third party that you may use to apply for our services; or in (ii) information posted on our Web site of a general informational nature. No employee, contractor, agent or representative of VeriSign is authorized to alter or amend the terms and conditions of this Agreement.

**13. ACCOUNT ACCESS.** To access or use the VeriSign services or to modify your account, you may be required to establish an account and obtain a login name, account number, password and/or passphrase. You authorize us to process any and all account transactions initiated through the use of your password and/or passphrase. You are solely responsible for maintaining the confidentiality of your password and passphrase. You must immediately notify us of any unauthorized use of your password or passphrase, and you are responsible for any unauthorized activities, charges and/or liabilities made through your password or passphrase. In no event will we be liable for the unauthorized use or misuse of your login name, account number, password or passphrase.

**14. AGENTS.** You agree that, if your agent, (e.g., your Primary Contact or Account Administrative Contact, Internet Service Provider, employee) purchased our service(s) on your behalf, you are nonetheless bound as a principal by all terms and conditions herein, including the domain name dispute policy. Your continued use of our services ratifies any unauthorized actions of your agent. By using your login name, account number or password, or otherwise purporting to act on your behalf, your agent certifies that he or she is authorized to apply for our services on your behalf, that he or she is authorized to bind you to the terms and conditions of this Agreement, that he or she has apprised you of the terms and conditions of this Agreement, and that he or she is otherwise authorized to act on your behalf. In addition, you are responsible for any errors made by your agent.

**15. RESERVED**

**16. RIGHT OF REFUSAL.** We, in our sole discretion, reserve the right to refuse to register your chosen domain name, issue you a digital certificate, or register you for other VeriSign service(s), or to delete your chosen domain name within the first thirty (30) calendar days from receipt of your payment for such services. In the event we do not register your chosen domain name, issue you a digital certificate, or register you for other VeriSign service(s), or we delete your chosen domain name or other VeriSign service(s) within such thirty (30) calendar day period, we agree to refund any applicable fee(s) you have paid. You agree that we shall not be liable to you for loss or damages that may result from our refusal to register your chosen domain name, refusal to issue a digital certificate, the deletion of your chosen domain name or refusal to register you for other VeriSign service(s).

**17. NOTICES AND ANNOUNCEMENTS.** (a) Except as expressly provided otherwise herein, all notices to VeriSign shall be in writing and delivered via overnight courier or certified mail, return receipt requested to VeriSign, Inc., Attention: Legal Department, 21355 Ridgetop Circle, Dulles, Virginia 20166. All notices to you shall be delivered to your mailing address or e-mail address as provided in your account information (as updated by you pursuant to this Agreement) . . (b) You authorize us to notify you as our customer of information that we deem is of potential interest to

RFJN0006



you. Notices and announcements may include commercial e-mails, telephone calls and other notices describing changes, upgrades, new products and services or other information pertaining to Internet security or to enhance your identity on the Internet and/or other relevant matters.

**18. SEVERABILITY.** You agree that the terms of this Agreement are severable. If any term or provision is declared invalid or unenforceable, in whole or in part, that term or provision will not affect the remainder of this Agreement; this Agreement will be deemed amended to the extent necessary to make this Agreement enforceable, valid and, to the maximum extent possible consistent with applicable law, consistent with the original intentions of the parties; and the remaining terms and provisions will remain in full force and effect.

**19. ENTIRE AGREEMENT.** You agree that this Agreement, the rules and policies incorporated by reference in this Agreement (including, without limitation, the dispute policy and the privacy statement) are the entire, complete and exclusive agreement between you and us regarding our services and supersede all prior agreements and understandings, whether written or oral, or whether established by custom, practice, policy or precedent, with respect to the subject matter of this Agreement, including, without limitation, any purchase order provided by you for the Services.

**20. ASSIGNMENT AND RESALE.** Except as otherwise set forth herein, your rights under this Agreement are not assignable or transferable. Any attempt by your creditors to obtain an interest in your rights under this Agreement, whether by attachment, levy, garnishment or otherwise, renders this Agreement voidable at our option. You agree not to resell any of the Services without VeriSign's prior express written consent.

**21. GOVERNING LAW.**

a. Except as provided in Section 21(b) below, and as set forth in Schedule A, Paragraph 7, concerning domain name disputes brought by a third party, you and VeriSign agree that this Agreement and any disputes hereunder including disputes related to the services provided under Schedules A through H, J, N, O, Q, R, S, T, U and V shall be governed in all respects by and construed in accordance with the laws of the Commonwealth of Virginia, United States of America, excluding its conflict of laws rules. You and we each agree to submit to exclusive subject matter jurisdiction, personal jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division for any disputes between us under or arising out of this Agreement. If there is no jurisdiction in the United States District Court for the Eastern District of Virginia, Alexandria Division, for any disputes between us under or arising out of this Agreement you and we agree that jurisdiction shall be in the courts of Fairfax County, Fairfax, Virginia.

b. You and VeriSign agree that any disputes related to the services provided under Schedules I, K, L, M and P shall be governed in all respects by and construed in accordance with the laws of the State of California, United States of America, excluding its conflict of laws rules. We each submit to exclusive subject matter jurisdiction, personal jurisdiction and venue of the United States District Court for the Northern District of California. If there is no jurisdiction in the United States District Court for the Northern District of California, then jurisdiction shall be in the courts of Santa Clara County, California.

c. The parties hereby waive any right to jury trial with respect to any action brought in connection with this Agreement.

d. The application of the United Nations Convention of Contracts for the International Sale of Goods is expressly excluded.

**22. AGREEMENT TO BE BOUND.** By applying for a VeriSign service(s) through our online application process or otherwise, or by using the service(s) provided by VeriSign under this Agreement, you acknowledge that you have read and agree to be bound by all terms and conditions of this Agreement and documents incorporated by reference.

**23. INDEPENDENT PARTIES.** Neither party nor their employees, consultants, contractors or

agents are agents, employees or joint ventures of the other party, and they do not have any authority to bind the other party by contract or otherwise to any obligation. Each party shall ensure that the foregoing persons shall not represent to the contrary, either expressly, implicitly, by appearance or otherwise.

24. **WAIVER.** No waiver of any provision of this Agreement shall be effective unless it is in writing and signed by an authorized representative of VeriSign. The remedies of VeriSign under this Agreement shall be cumulative and not alternative, and the election of one remedy for a breach shall not preclude pursuit of other remedies. The failure of a party, at any time or from time to time, to require performance of any obligations of the other party hereunder shall not affect its right to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any prior or subsequent breach.

25. **EXPORT RESTRICTIONS.** You acknowledge and agree that you shall not import, export, or re-export directly or indirectly, any commodity, including your products incorporating or using any VeriSign services in violation of the laws and regulations of any applicable jurisdiction.

26. **U.S. Government Users.** In the event any software is provided by VeriSign to a U.S. Government User, the software and accompanying documentation which are used as part of the VeriSign service are "commercial items," as such terms are defined at 48 C.F.R. 2.101 (Oct 1995), consisting of "commercial computer software" and "commercial computer software documentation," as such terms are used in 48 C.F.R. 12.212 (Sep 1995) and is provided to the U.S. Government only as a commercial end item. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4 (Jun 1995), all U.S. Government entities acquiring the use of the Service and accompanying documentation shall have only those rights set forth herein.

27. **FORCE MAJEURE.** Neither party shall be deemed in default hereunder, nor shall it hold the other party responsible for, any cessation, interruption or delay in the performance of its obligations hereunder due to earthquake, flood, fire, storm, natural disaster, act of God, war, terrorism, armed conflict, labor strike, lockout, or boycott, provided that the party relying upon this section (i) shall have given the other party written notice thereof promptly and, in any event, within five (5) days of discovery thereof and (ii) shall take all steps reasonably necessary under the circumstances to mitigate the effects of the force majeure event upon which such notice is based; provided further, that in the event a force majeure event described in this Section extends for a period in excess of thirty (30) days in the aggregate, VeriSign may immediately terminate this Agreement.

28. **HEADINGS.** The section headings appearing in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or extent of such section or in any way affect such section.

29. **SURVIVAL.** In the event this Agreement terminates as provided herein, Sections 1, 2, 3, 6, 7, 8, 9, 10(c), 10(d), 14, and 17 through 29 of this Agreement shall survive such expiration or termination.

30. **AIRLINE FREQUENT FLYER MILES.** VeriSign may provide you with the opportunity to receive airline frequent flyer miles ("Miles") with select airlines as determined by VeriSign, in its sole discretion from time to time, for qualifying purchases in accordance with the terms and conditions set forth on our Web site. You acknowledge and agree that (a) any Miles accrued and awards issued are subject to the terms and conditions of the applicable frequent flyer program, (b) all applicable taxes and fees related to such Miles and/or award travel are your responsibility, (c) in order to earn Miles for qualifying purchases the name on your Network Solutions account and the applicable frequent flyer account must match, (d) Network Solutions has your permission to provide your account information to the applicable airline granting any such Miles, (e) you will only be eligible to receive up to one hundred thousand (100,000) American Airlines® AAdvantage® Miles during a 12-month period if you are a U.S. entity or citizen or sixty thousand (60,000) American Airlines AAdvantage Miles during a 12-month period if you are a non-US entity or citizen, (f) you will only be eligible to receive up to fifty thousand (50,000) United® Mileage Plus®

RFJN0008

Miles during a 12-month period, (g) all Delta SkyMiles® credited to your Delta SkyMiles program account shall be standard miles and shall not count toward medallion or other elite status unless otherwise stated by Delta, (h) all US Airways® Dividend Miles terms and conditions apply, and (i) all claims related to or arising from uncredited Miles must be made within one (1) year of the date of any such qualifying purchase. Please allow 6-8 weeks for Miles to be posted to the applicable frequent flyer account. You are eligible to earn Miles for qualifying purchases unless otherwise stated by the applicable airline frequent flyer program, your employer or other third party. American Airlines and AAdvantage are registered marks of American Airlines, Inc. American Airlines reserves the right to change the AAdvantage program at any time without notice. American Airlines is not responsible for products or services offered by other participating companies. For complete details about the AAdvantage program, visit www.aa.com. United® and Mileage Plus® are registered trademarks of United Air Lines, Inc. United may change Mileage Plus program rules, regulations, travel awards and special offers or terminate the Mileage Plus program at any time and without notice. United, its subsidiaries, affiliates, and agents are not responsible for any products and services of other participating companies. For complete details about the Mileage Plus program, visit www.united.com. Network Solutions reserves the right to end or amend this program without notice.

SERVICE SPECIFIC TERMS: The following terms apply in addition to Sections 1 through 29 only if you have selected the particular service described:

## SCHEDULE A TO VERISIGN SERVICE AGREEMENT

## ADDITIONAL TERMS APPLICABLE TO REGISTRANTS OF DOMAIN NAMES

1. Security. VeriSign does not guarantee the security of your domain name registration records, and you assume all risks that the password and/or passphrase you select may be compromised as a result of fraudulent, unauthorized or illegal activity.

2. Fees and Payment. Initial domain name registrations, and domain name registrations that have passed the registration agreement's anniversary date, must be in a paid status to transfer, delete, modify, or otherwise to request VeriSign to affect the domain name record or to provide domain name services. Domain name registrations in an unpaid status are routinely deleted on a regular basis.

3. Transfers and Licensing of Use. You agree that you may not transfer your domain name registration to another domain name registrar during the first sixty (60) days from the effective date of your initial domain name registration with us. You may transfer your domain name registration to a third party of your choice, subject to the terms and conditions set forth in Schedule U. Even if you license the use of our domain name registration services to a third party, you remain responsible for complying with all terms and conditions of this Agreement, and you accept liability for harm caused by such licensee's wrongful use of our domain name registration services, unless you promptly disclose the identity of such license upon request by any person who provides reasonable evidence of actionable harm.

4. VeriSign's Disclosure of Certain Information. Subject to the requirements of our privacy statement, in order for us to comply the current rules and policies for the domain name system, you hereby grant to VeriSign the right to disclose to third parties through an interactive publicly accessible registration database the following mandatory information that you are required to provide when registering or reserving a domain name: (i) the domain name(s) registered by you; (ii) your name and postal address; (iii) the name(s), postal address(es), e-mail address(es), voice telephone number and where available the fax number(s) of the technical and administrative contacts for your domain name(s); (iv) the Internet protocol numbers of the primary nameserver and secondary nameserver(s) for such domain name(s); (v) the corresponding names of those nameservers; (vi) the original creation date of the registration; and (vii) the expiration date of the registration. You also grant to VeriSign the right to make this information available in bulk form to third parties who agree not to use it to (a) allow, enable or otherwise support the transmission of

mass unsolicited, commercial advertising or solicitations via telephone, facsimile, or e-mail (spam) or (b) enable high volume, automated, electronic processes that apply to our systems to register domain names.

5. Domain Name Dispute Policy. If you registered a domain name through us, you agree to be bound by our current domain name dispute policy that is incorporated herein and made a part of this Agreement by reference. The current version of the domain name dispute policy may be found at our Web site: http://www.netsol.com/en_US/legal/dispute-policy.jhtml.

6. Domain Name Dispute Policy Modifications. You agree that we, in our sole discretion, may modify our dispute policy. We will post any such revised policy on our Web site at least thirty (30) calendar days before it becomes effective. You agree that, by maintaining the reservation or registration of your domain name after modifications to the dispute policy become effective, you have agreed to these modifications. You acknowledge that if you do not agree to any such modification, you may terminate this Agreement. We will not refund any fees paid by you if you terminate your Agreement with us.

7. Domain Name Disputes. You agree that, if your use of our domain name registration services is challenged by a third party, you will be subject to the provisions specified in our dispute policy in effect at the time of the dispute. For any dispute with, or challenge by, a third party concerning or arising from your use of a domain name registered with us or your use of our domain name registration services, you agree to submit to subject matter jurisdiction, personal jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division and the courts of your domicile. You agree that in the event a domain name dispute arises with any third party, you will indemnify and hold us harmless pursuant to the terms and conditions set forth below in this Agreement. If we are notified that a complaint has been filed with a judicial or administrative body regarding your use of our domain name registration services, you agree not to make any changes to your domain name record without our prior approval. We may not allow you to make changes to such domain name record until (i) we are directed to do so by the judicial or administrative body, or (ii) we receive notification by you and the other party contesting your registration and use of our domain name registration services that the dispute has been settled. Furthermore, you agree that if you are subject to litigation regarding your registration and use of our domain name registration services, we may deposit control of your domain name record into the registry of the judicial body by supplying a party with a registrar certificate from us. You agree that we will comply with all court orders, domestic or international, directed against you and/or the domain name registration.

8. No Guaranty. You agree that, by registration of your chosen domain name, such registration does not confer immunity from objection to either the registration or use of your domain name.

9. Revocation. You agree that we may suspend, cancel or transfer your services, including, but not limited to, domain name registration services in order to: (i) correct mistakes made by us, another registrar or the registry in registering your chosen domain name, or (ii) to resolve a dispute under our domain name dispute policy.

10. Survival. In the event the Agreement or this Schedule terminates, Sections 4, 5, 6, 7, 9 and 10 of this Schedule shall survive such expiration or termination.

11. Under Construction Page. You acknowledge and agree that any or all domain names that are (i) registered with VeriSign, (ii) hosted on a VeriSign domain name server, and (iii) do not otherwise resolve to an active Web site, may resolve to an "under construction" or similar temporary Web page ("Under Construction Page"), and that VeriSign may place on any such Under Construction Page promotions and advertisements for, and links to, VeriSign's Web site, VeriSign product and service offerings, third-party Web sites, third-party product and service offerings, and/or Internet search engines. You agree that VeriSign may change the content and/or appearance of, or disable, any Under Construction Page at any time, in its sole discretion, and without prior notice. If for any reason, you do not want a domain name to resolve to the Under Construction Page described above, you may select an Under Construction Page that contains only

RFJN0010

VeriSign branding and a domain name registration search box, as provided on our Web Site.

12. Requests to Change Registrar. You agree that VeriSign may deny any request to transfer a domain name registration that is otherwise capable of transfer to another registrar where you fail to respond appropriately to a transfer confirmation request from VeriSign.

13. Domain Protect. You agree that we may, but are not obligated to, place your domain name registration in a Domain Protect status to prevent unauthorized transfers of your domain name registration, as described on our Web site. You acknowledge and agree that in order to transfer a domain name registration that is in a Domain Protect status, you may first have to access the account manager tool on our Web site and remove the domain name registration from Domain Protect status.

### SCHEDULE D TO VERISIGN SERVICE AGREEMENT

#### ADDITIONAL TERMS APPLICABLE TO REGISTRANTS OF DOMAIN NAMES IN THE COUNTRY CODE TOP-LEVEL DOMAINS.

In addition to the terms set forth in Schedule A, the following terms shall apply to registrants of domain names registered in the country-code top-level domains available for registration on our Web site ("ccTLDs"), including but not limited to the .tv, .cc, .bz, .nu, .ws, .au, .uk, .be, .br, .az, .at, .com.mx, .nz and .de country-code top-level domains. Your registration of a domain name in any ccTLD (each a "New TLD Domain Name"), is subject to policies established or revised from time to time by the registry for such New TLD Domain Name ("New TLD Registry"), in its capacity as the registry for its respective Top Level Domain. Each respective New TLD Registry's current policies ("New TLD Registry Policies") are available for you to review at each New TLD's respective website (for example, the registry policy for .nu can be found at http://nunames.nu/about/terms.cfm, the registry policy for .bz can be found at http://www.belizenic.bz/terms.php, the registry policy for .be can be found at http://www.dns.be/eng/DomainInfo/enduser_termsandconditions.htm, the registry policy for .com.mx can be found at http://www.nic.mx/nic/pisql/nic_Politicas.nic_Politicas_Dominios, the registry policy for .nz can be found at http://www.domainz.net.nz/Domainz.asp?Content=Terms, the registry policy for .de can be found at http://www.denic.de/doc/DENIC/agb.en.html, the registry policy for .uk can be found at http://www.nominet.org.uk/nominet-terms.html). You agree to be bound by and comply with the applicable New TLD Registry Policies, including amendments and modifications thereto, with respect to your New TLD Domain Name registration. You acknowledge and agree that you have reviewed and satisfied yourself as to the obligations and conditions contained in the applicable New TLD Registry Policies. Such policies shall not alter the terms and conditions of this Agreement. To the extent there is a conflict between the New TLD Registry policies and the terms of this Agreement, the terms of this Agreement shall prevail. You agree that the New TLD Registry has the right to enforce the New TLD Registry Policies. With respect to any domain name registrations in the .de ccTLD, and subject to the limitation of liability and indemnification provisions contained in Sections 7 and 9, respectively, of the General Terms and Conditions of the Agreement, you authorize and direct us to designate VeriSign personnel as your administrative contact for all such domain name registrations. With respect to any domain name registrations in the .nz ccTLD, and subject to the limitation of liability and indemnification provisions contained in Sections 7 and 9, respectively, of the General Terms and Conditions of the Agreement, you authorize and direct us to (i) submit service request to and interact with the .nz New TLD Registry on your behalf and (ii) designate a VeriSign email address as the registrant email address of record with the .nz New TLD Registry.

### SCHEDULE E TO VERISIGN SERVICE AGREEMENT

#### SPECIAL NOTICE AND DISCLAIMER FOR MULTILINGUAL DOMAIN NAME REGISTRATIONS

In addition to the terms set forth in Schedule A, the following terms shall apply to Multilingual Domain Names ("MDN"). We currently are making MDN registration services available to you as part of our participation in a test bed ("Test Bed") being conducted by VeriSign Global Registry Services for the purpose testing proposed standards for deployment of MDN technology and to

RFJN0011

provide operational experience with those proposed standards.

WE EXPRESSLY DISCLAIM ANY WARRANTY THAT CURRENT OR FUTURE ENCODING SCHEMES, PROTOCOLS AND OTHER MDN-ENABLING TECHNOLOGIES, WHETHER PROVIDED BY US OR OTHERWISE, WILL BE APPROVED BY INTERNET STANDARD-SETTING BODIES OR OTHERWISE SUCCESSFULLY DEPLOYED. WE EXPRESSLY DISCLAIM ANY WARRANTY THAT THE TEST BED WILL CONTINUE OR THAT OUR MDN REGISTRATION SYSTEM WILL INTEROPERATE PROPERLY WITH THE CURRENT OR FUTURE TEST BED OR THE MDN-ENABLING TECHNOLOGIES OF OTHERS.

You assume all risks inherent in the experimental nature of this service and the technologies supporting it. The encoding schemes, protocols and other MDN-enabling technologies are not within our control and are subject to change without notice. You assume all risks that such changes may impair or prevent your ability to use the MDN you have registered. You further understand and agree that we may interrupt or deny MDN registration services to you, temporarily or permanently, as a result of such changes. You further assume all risks that the Internet addressing system will not recognize an MDN you have registered or otherwise will not enable such MDN to function as an Internet address.

We may, but shall not be obligated to, make any and all modifications to an MDN registration, including without limitation changing the MDN's ASCII-based translation, that we deem necessary or appropriate for the purpose of bringing an MDN registration into conformance with evolving technical standards. Such modifications may be made without notice to you. In the event we elect to make such modifications, you agree to hold us harmless from any claims, liabilities or demands arising from such modifications. Before registering an MDN, we strongly recommend that you review and become familiar with the "Multilingual Domain Name Position Paper," published on the website of VeriSign Global Registry Services, currently located at the following url: http://www.verisign-grs.com.

You specifically acknowledge and agree that an MDN shall be considered a domain name for purposes of the Domain Name Dispute Policy and the provisions relating thereto in this Agreement. Notwithstanding anything to the contrary contained in the Domain Name Dispute Policy, you agree that during the Test Bed we may terminate your registration of an MDN in our sole discretion without notice to you if, within 45 days of your registration, we receive a formal, written objection to the registration by any legitimate authority, including without limitation a trademark owner or governmental entity. Our right of termination under this provision shall continue until such time as: (1) VeriSign Global Registry Services publicly announces that its Test Bed is complete; and (2) we determine in our sole discretion that all of the encoding schemes, protocols and other MDN-enabling technologies that are used to provide your MDN registration services have been approved by appropriate standard-setting bodies.

### SCHEDULE F TO VERISIGN SERVICE AGREEMENT

ADDITIONAL TERMS APPLICABLE TO SERVICES IN CONNECTION WITH .BIZ TLD.

In addition to the terms set forth in Schedule A, the following terms shall apply to .biz domain names.

1. Additional Representations and Warranties. If you are applying for the registration of a domain name in the .biz top-level domain ("TLD"), you also represent and warrant that: (i) the domain name will be used primarily for bona fide business or commercial purposes and not (a) exclusively for personal use or (b) solely for the purposes of selling, trading or leasing the domain name for compensation, or the unsolicited offering to sell, trade or lease the domain name for compensation; and (ii) the domain name is reasonably related to your business or intended commercial purpose at the time of registration.

2. Acknowledgment of Dispute Policies and Rules. The registrant acknowledges having read and understood and agrees to be bound by the terms and conditions of the following documents, as they may be amended from time to time, which are hereby incorporated and made an integral

RFJN0012

part of this Agreement:

(i) The Uniform Domain Name Dispute Policy, available at http://www.icann.org/udrp/udrp.htm;

(ii) The Start-up Trademark Opposition Policy ("STOP"), available at http://www.neulevel.com/countdown/stop.html;

(iii) The Restrictions Dispute Resolution Criteria and Rules, available at http://www.neulevel.com/countdown/rdrp.html.

If at the time of your application for services in the .biz TLD, any of the above policies or rules (collectively ".biz Policies") have not yet been approved by ICANN (which may mean the .biz Policies are not available for viewing via live hyperlinks above), you agree to be bound by the terms of such .biz Policies upon such approval and in the final form approved by ICANN, as posted on our Web site or the ICANN Web site (located at www.icann.org). You agree that, by maintaining the services provided hereunder (which may include registration of a domain name) after such posting of any of the ICANN approved .biz Policies, you have agreed to the terms and conditions of the same. You acknowledge that if you do not agree to the .biz Policies, you may terminate this Agreement. We will not refund any fees paid by you if you terminate your Agreement with us.

3. Registry Actions or Inactions. Our ability to provide services to you depends in part upon the provision of services by third parties, such as the .biz registry. We cannot control and will not be responsible for the actions or inactions of such third parties. For example, the .biz registry has reserved the right to deny, cancel or transfer any domain name registration under certain circumstances. You acknowledge and agree that we shall not be liable to you or any other party in connection with claims, damages, losses, expenses or costs incurred or suffered by you as a result of actions taken or not taken by third parties, including, but not limited to, the .biz registry.

4. Multiple Phases of Services. Your application or registration (whether successful or not) for any .biz registry or .biz TLD services hereunder does not guarantee, and we do not promise, that you will be approved or eligible for any other services available or that may become available through us or any third party. For example, certain services in the .biz TLD are provided in sequential phases, and participation in one phase, does not automatically qualify you for participation in other phases, and any further participation is not automatic. The .biz registry, and not VeriSign, determines the dates and times associated with the various service phases available in the .biz TLD. You agree to review and become familiar with the information available on our Web site and on the .biz Web site concerning the various phases and descriptions of services available in connection with .biz TLD, and to regularly check for modifications and/or updates to such information, as the same may change from time to time. You agree that you are solely responsible for applying and/or registering for the service phases you desire to participate in. Additionally, you acknowledge and agree that submission of an application for domain name registration or any other services, does not guarantee that you will ultimately be the registrant for a particular domain name, even if you participated in some other service associated with the domain name, such as an intellectual property notification service or similar service.

5. Additional Acknowledgments Concerning Customer Information. You also acknowledge and agree that VeriSign will share with the .biz registry certain information submitted by you in your application(s) for our services, as required by our agreement(s) with the .biz registry or to provide the services you have applied for. You acknowledge and agree that any information we share with the .biz registry may be used by them to fulfill the .biz registry's service obligations to us or any third party. You hereby grant us and the .biz registry a limited, royalty-free, non-exclusive worldwide license to use all of the data contained in a Trademark

6. Disclaimer Concerning Intellectual Property Notification Service. Your participation in an intellectual property notification service or similar service DOES NOT PROVIDE YOU WITH ANY INTELLECTUAL PROPERTY PROTECTIONS OR REGISTRATIONS, NOR DOES IT PROVIDE YOU WITH ANY RIGHTS TO ANY PARTICULAR DOMAIN NAME REGISTRATION. THIS IS A NOTIFICATION SERVICE ONLY. EVEN IF YOU PARTICIPATE IN THIS SERVICE, YOU MUST STILL SUBMIT AN

RFJN0013

APPLICATION FOR DOMAIN-NAME REGISTRATION SERVICES TO BE ELIGIBLE TO BECOME THE REGISTRANT FOR THE DESIRED DOMAIN NAME(S).

7. Survival of Terms. You agree that the indemnity provisions set forth in this Schedule shall survive any termination of the Agreement

8. Terms of Use for IP Claim Service. The following additional terms apply specifically to the Intellectual Property Claim Service (in this Section 8 of this Schedule, the "Claim Service") made available in the .biz TLD. For purposes of this Section 8, "Owner" shall mean the owner of a registered or common law trademark or service mark and "Agent" shall mean the duly authorized agent of an Owner (collectively "You"), and "Registrar" shall mean VeriSign. These Terms of Use will continue to apply to all past use of the Claim Service by You, even if You are no longer using the Claim Service. You acknowledge and agree that Registrar may terminate or block Your use of all or part of the Claim Service without prior notice for any reason, including, without limitation, if Registrar believes You have engaged in conduct prohibited by these Terms of Use.

(a). The Claim Service. Registrar provides the Claim Service to holders of both registered and common law trademarks or service marks (collectively "Trademarks"). During the domain name application process, applicants for a .biz domain name ("Applicants") will be notified of an Owner's alleged intellectual property rights in a Trademark if the domain name contained in the domain name application is an exact match of the Trademark identified in an IP Claim (as defined below) submitted by Owner. You may review frequently asked questions regarding the Claim Service by reviewing our FAQs.

(b). License to Use Data / Privacy. By submitting an IP Claim, You hereby grant Registrar, as well as any of its agents or subcontractors, and the .biz registry, a limited, royalty-free, non-exclusive worldwide license to use all of the data contained in the IP Claim solely for the purposes of implementing the Claim Service, processing Your IP Claim, notifying Applicants of Your IP Claim, and for notifying You of changes to the Claim Service, and for archival purposes.

(c). The IP Claim Process. In order to submit a claim with respect to a Trademark or Trademarks ("IP Claim") through the Claim Service, You must complete an IP Claim form for each Trademark. For each IP Claim, You must submit complete contact information, representative contact information and notification details, and the details regarding the Trademark. You may specify in the representative field that an Agent may receive legal correspondence regarding the IP Claim. Once You have submitted an IP Claim, you will receive a confirmation email and a claim number. You must retain the claim number for each IP Claim You submit. Registrar will accept IP Claims until July 9, 2001, or such later date as it may determine in its sole discretion ("Close of Phase I") and no IP Claims will be accepted after that date. From the Close of Phase I until September 25, 2001 ("Phase 2"), or such other later date as Registrar may choose, in its sole discretion, the domain name applications from ICANN-approved registrars ("Applications") will be compared with the database of IP Claims processed through the Claim Service ("IP Claim Database"). For each exact match between an IP Claim in the IP Claim Database and a domain name application, the Registry Operator for .Biz ("Registry Operator") will notify the Applicant that a third party or third parties have submitted an IP Claim for the exact Trademark. The email notification to the Applicant will include, among other things, the information provided by Owner in the IP Claim, instructions on how to proceed with the registration process, and that if selected during the randomized name selection phase ("Name Selection Phase"), the domain name will be placed on a temporary thirty (30) day hold when the Registry goes "live." The Applicant will have the option to proceed with the Application or cancel the Application. If the Applicant does not respond to the email notification, or elects to cancel the Application, the Applicant's domain name application will not be processed during the Name Selection Phase. If the Applicant chooses to proceed with the registration process and the name is selected during the Name Selection Phase, that domain name automatically will be placed on a thirty (30) day "hold period" when the name is registered. After Name Selection, the Owner will be notified by Registry Operator if an Applicant has successfully registered the domain name. The Owner will then have the option of contacting the Applicant and finding a solution or using the guidelines set forth by a special dispute resolution process called the Start-up Trademark Opposition Policy ("STOP") (formerly referred to as the Start-up Dispute Resolution Policy or "SUDRP") (information available at http://www.neulevel.com/countdown/stop.html), or the Uniform Domain-Name Dispute Resolution

Procedures ("UDRP") (information is available at http://www.icann.org/udrp/udrp-policy-24oct99.htm). You will not be notified if there are no Applications that exactly match an IP Claim You submitted in the IP Claim Database.

USE OF THE SERVICE DOES NOT GUARANTEE THAT AN OWNER WILL BE AWARDED THE .BIZ EXTENSION FOR ITS TRADEMARK. AN OWNER THAT WISHES TO OBTAIN A .BIZ EXTENSION FOR ITS TRADEMARK MUST FILE A DOMAIN NAME APPLICATION. DOMAIN NAME APPLICANTS WILL ONLY BE NOTIFIED OF APPLICATIONS THAT ARE EXACT MATCHES WITH A TRADEMARK IDENTIFIED IN AN IP CLAIM FORM. REGISTRAR WILL NOT VERIFY WHETHER A TRADEMARK CLAIMED ON AN IP CLAIM FORM CORRESPONDS WITH AN ACTUAL, LEGAL OR VALID TRADEMARK, NOR WILL REGISTRAR PROVIDE ANY LEGAL OVERSIGHT OR ADJUDICATION FOR ANY DISPUTED INTELLECTUAL PROPERTY IMPLICATED BY THE SERVICE.

(d). Conduct. You agree to be bound by the applicable provisions of the VeriSign Acceptable Use Policy, incorporated herein and made part of this Agreement by reference, in connection with your use of the services described in this Schedule.

(e) Fees. As consideration for the Claim Service, Registrar, or its agents or subcontractors may require you to submit and pay for each IP Claim individually or it may allow you store up a certain number of IP Claims before submitting them for processing. Once you have stored that number of IP Claims, you may not be able to store any additional IP Claims and may need to submit them for processing and pay the applicable fee before obtaining additional storage space. No refunds are permitted.

(f). Links. Some links on the Claim Service lead to sites posted by independent site owners. Because Registrar has no control over these sites, it cannot be responsible for such sites' accessibility via the Internet and does not endorse products, services, or information provided by such sites. As such, Registrar shall not be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with, use or reliance on any content, goods or services available on or through any other site. Further, the inclusion of these links does not imply that the other sites have given permission for inclusion of these links, or that there is any relationship between Registrar and the linked sites.

(g). Modifications to the Claim Service. Registrar reserves the right at any time and from time to time to modify or discontinue, temporarily or permanently, the Claim Service (or any part thereof) with or without notice. You agree that will not be liable to You or to any third party for any modification, suspension, or discontinuation of the Claim Services.

(h). Third Party Beneficiary. Registry Operator ("NeuLevel") is an intended third party beneficiary of these Term and Conditions with rights to enforce these Terms of Use. You will cooperate in good faith with NeuLevel or Registrar in investigating instances of non-compliance with these Terms of Use, if NeuLevel or Registrar believes in good faith that you are not in compliance with these Terms of Use.

(i). You agree that Registrar and Registry Operator are not responsible for checking, verifying or editing message content or completeness, or for detecting errors or anomalies, or for recreating or re-transmitting data.

### SCHEDULE G TO VERISIGN SERVICE AGREEMENT

### ADDITIONAL TERMS APPLICABLE TO SERVICES IN CONNECTION WITH .INFO TLD.

In addition to the terms set forth in Schedule A above, the following terms shall apply to .info domain names.

1. Additional Provisions. You acknowledge and agree to the following: (i) you acknowledge and agree that VeriSign will share with the .info registry certain information submitted by you in your application(s) for our services, and you consent to the use, copying, distribution, publication,

RFJN0015

modification and other processing of your personal data by the .info registry and its designees and agents in connection with the .info registry's service obligations to us or third parties, or as otherwise deemed necessary by the .info registry; (ii) you agree to submit to proceedings commenced under the Uniform Domain Name Dispute Resolution Policy ("UDRP") and the Sunrise Dispute Resolution Policy ("SDRP") (available at http://www.afilias.info/faq/sunrise-challenge.html), as these may be modified from time to time; (iii) you agree to immediately correct and update the registration information for any domain name registered hereunder during the registration term for such registered domain name; and (iv) you acknowledge that the .info registry will have no liability of any kind for any loss or liability resulting from the proceedings and processes relating to the Sunrise Period or the Land Rush Period, including, without limitation: (a) the ability or inability of a registrant to obtain a registered domain name during these periods, and (b) the results of any dispute over a "Sunrise Registration."

If at the time of your application for services in the .info TLD, the SDRP has not yet been approved by ICANN (which may mean the SDRP is not available for viewing via live hyperlink above), you agree to be bound by the terms of the SDRP upon such approval and in the final form approved by ICANN, as posted on our Web site or the ICANN Web site (located at http://www.icann.org). You agree that, by maintaining the services provided hereunder after such posting of any of the ICANN approved SDRP, you have agreed to the terms and conditions of the same. You acknowledge that if you do not agree to the SDRP, you may terminate this Agreement. We will not refund any fees paid by you if you terminate your Agreement with us.

2. Registry Actions or Inactions. Our ability to provide services to you depends in part upon the provision of services by third parties, such as the .info registry. We cannot control and will not be responsible for the actions or inactions of such third parties. For example, the .info registry has reserved the right to refuse or cancel any Sunrise Registration at any time and to request additional information relating to a Sunrise Registration. You acknowledge and agree that we shall not be liable to you or any other party in connection with claims, damages, losses, expenses or costs incurred or suffered by you as a result of actions taken or not taken by third parties, including, but not limited to, the .info registry.

3. No Guarantee on Registration. The .info registry, and not VeriSign, determines the dates and times associated with the various service periods available in the .info TLD. You agree to review and become familiar with the information available on our Web site and on the .info Web site concerning the various periods and descriptions of services available in connection with .info TLD, and to regularly check for modifications and/or updates to such information, as the same may change from time to time. You agree that you are solely responsible for applying and/or registering for the service periods you desire to participate in. You acknowledge and agree that submission of an application for domain name registration or any other services (regardless of when submitted), does not guarantee that you will ultimately be the registrant for a particular domain name.

4. Disclaimer Concerning Intellectual Property Protection. Your application for a Sunrise Registration DOES NOT PROVIDE YOU WITH ANY INTELLECTUAL PROPERTY PROTECTIONS OR REGISTRATIONS.

5. Use of Other Registrars. You agree that we may, but are not obligated to, submit your registration application and/or information through another ICANN accredited registrar ("Third Party Registrar") if we believe, in our sole discretion, that doing so will provide you with a better opportunity for successfully registering a .info domain name. Should our submission result in the registration of a .info domain name for you, you acknowledge and agree that you will also then be a customer of the Third Party Registrar through which your domain name is registered. If we do submit your registration application and/or information through a Third Party Registrar, and a .info domain name is registered to you through that Third Party Registrar, you agree that in addition to your agreement with VeriSign, you agree to be bound by the following terms and conditions in the Agreement with respect to the Third Party Registrar for so long as you are receiving registration services through that Third Party Registrar:

    a.  Section 1 of the Agreement;

    b.  Sections 3 through 29;

RFJN0016

    c.   Schedule A (except Section 1 of Schedule A); and
    d.   This Schedule.

You agree that VeriSign shall have the right, but not the obligation, to submit a change of registrar request to the Third Party Registrar, if any, through which your domain name is registered to transfer the sponsorship of your domain name to VeriSign at any time after the expiration of 60 calendar days from the registration of the domain name, and you hereby authorize and direct VeriSign to effect such a transfer if VeriSign decides, in its sole discretion, that it wishes to effect such a transfer. You will not be required to pay any transfer or new service fees to effect the transfer.

## SCHEDULE O TO VERISIGN SERVICE AGREEMENT

## ADDITIONAL TERMS APPLICABLE TO SERVICES IN CONNECTION WITH .NAME TLD.

In addition to the terms set forth in Schedule A above, the following terms shall apply to .Name domain names.

1. Eligibility Requirements. You represent and warrant that every registration you are applying for in the .name top-level domain ("TLD") satisfies the eligibility requirements ("Eligibility Requirements") established by Global Name Registry Ltd., the registry for the .name TLD, which are available at the following URL: http://www.icann.org/tlds/agreements/name/registry-agmt-appl-03jul01.htm.

2. Dispute Resolution Policies. You agree that every service for which you register is subject to the Uniform Domain Name Dispute Resolution Policy (the "UDRP") and the Eligibility Requirements Dispute Resolution Policy (the "ERDRP"), which are located at http://www.icann.org/tlds/agreements/name/registry-agmt-appm-03jul01.htm. Without limiting the foregoing, you agree that (i) every Defensive Registration is subject to challenge pursuant to the ERDRP; (ii) if a Defensive Registration is successfully challenged pursuant to the ERDRP, the Defensive Registration Holder will pay the challenge fees; (iii) if a challenge to a Defensive Registration is successful, the Defensive Registration will be subject to the procedures described in the ERDRP and the Eligibility Requirements including, without limitation, the cancellation of the Defensive Registration Holder's other Defensive Registrations; and (iv) if a Phase I Defensive Registration (as defined by the .name registry) is successfully challenged on the basis that it does not meet the applicable eligibility requirements, the Defensive Registration Holder will thereafter be required to demonstrate, at its expense, that it meets the eligibility requirements for Phase I Defensive Registrations for all other Phase I Defensive Registrations that it registered within .name through any registrar. In the event the Defensive Registration Holder is unable to demonstrate the foregoing with respect to any such Phase I Defensive Registration(s), those Defensive Registration(s) will be cancelled.

3. Limitation of Liability. In addition to the other limitations of liability contained herein, you agree that neither the .name registry nor VeriSign shall have any liability of any kind for any loss or liability resulting from (i) the processing of registration requests prior to live SRS launch, including, without limitation, your ability or inability to obtain a Registered Name, a second-level domain e-mail address registration (an "SLD E-mail Address"), a Defensive Registration, or a NameWatch Registration using the services provided by VeriSign or the .name registry; or (ii) any dispute over any Registered Name, SLD E-mail Address, Defensive Registration, or NameWatch Registration, including any dispute resolution proceeding related to any of the foregoing.

4. Registry Actions or Inactions. Our ability to provide services to you depends in part upon the provision of services by third parties, such as the .name registry. We cannot control and will not be responsible for the actions or inactions of such third parties. You acknowledge and agree that we shall not be liable to you or any other party in connection with claims, damages, losses, expenses or costs incurred or suffered by you as a result of actions taken or not taken by third parties, including, but not limited to, the .name registry.

**SCHEDULE Q TO VERISIGN SERVICE AGREEMENT**

**ADDITIONAL TERMS APPLICABLE TO SERVICES IN CONNECTION WITH .US TLD.**

In addition to the terms set forth in Schedule A above, the following terms shall apply to .US domain names.

1. Nexus Requirements/Certification. You certify that you have and shall continue to have a lawful bona fide U.S. nexus, as required by the .US top-level domain ("TLD") administrator, NeuStar, Inc. (".US Registry"), and that you meet all of the .US nexus requirements (".US Nexus Requirements") set forth below (and as represented by you in the registration application information provided by you to VeriSign). You must be (and you certify that you are) either:

A. A natural person (i) who is a United States citizen, (ii) a permanent resident of the United States of America or any of its possessions or territories, or (iii) whose primary place of domicile is in the United States of America or any of its possessions [Nexus Category 1]; or

B. An entity or organization that is (i) incorporated within one of the fifty (50) U.S. states, the District of Columbia, or any of the United States possessions or territories or (ii) organized or otherwise constituted under the laws of a state of the United States of America, the District of Columbia or any of its possessions or territories [Nexus Category 2]; or

C. An entity or organization (including a federal, state, or local government of the United States, or a political subdivision thereof) that has a bona fide presence in the United States of America or any of its possessions or territories [Nexus Category 3]. If you are claiming Nexus Category 3, you certify that you have a "bona fide presence in the United States" on the basis of real and substantial lawful contacts with, or lawful activities in, the United States of America.

2. Name Servers Certification. You certify that the name servers listed by you in connection with your application for domain name registration services in the .US TLD are located within the United States.

3. Your obligation to satisfy Nexus Requirement. You acknowledge and agree that it is your responsibility, through the registration process (and, if applicable, as required subsequent to your application), to provide the information necessary to satisfy the .US Nexus Requirements, and that a failure by you to satisfy the .US Nexus Requirements may result in, among other things, (i) the domain name application(s) being rejected by VeriSign and/or the .US Registry, (ii) the domain name(s) being placed on "hold" by VeriSign and/or the .US Registry, and/or (iii) the domain name(s) being deleted by VeriSign and/or the .US Registry. Neither VeriSign nor the .US Registry (nor any other entity or person) shall be liable to you for any actions or inactions of any of them resulting from your failure to provide all required .US Nexus Requirements information at the time of registration (or, where applicable, subsequent to registration), and none of them shall have any obligation to request or attempt to obtain from you additional information to establish your compliance with the .US Nexus Requirements, even if the need for such information is known by any of them.

4. Nexus Dispute Policy. You agree to be bound by the Nexus Dispute Policy ("NDP") administered by the .US Registry (or a third party designated by the .US Registry), which policy and its applicable forms are located on the .US Registry's web site at the URL: www.neustar.com. You agree to abide by all decisions rendered by the .US Registry (or its third party designee) in connection with the NDP.

5. Dispute Resolution Policy. You agree that you are bound by the United States Dispute Resolution Policy set forth on the .US Registry's website at the URL: www.neustar.com.

6. Registry Actions or Inactions. Our ability to provide services to you depends in part upon the provision of services by third parties, such as the .US Registry. We cannot control and will not be responsible for the actions or inactions of such third parties. You acknowledge and agree that we

RFJN0018

shall not be liable to you or any other party in connection with claims, damages, losses, expenses or costs incurred or suffered by you as a result of actions taken or not taken by third parties, including, but not limited to, the .US Registry (for example, the .US Registry reserves the right to deny, delete, transfer or freeze any domain name registration for a variety of reasons, none of which VeriSign can control).

7. Accurate Information. Without limiting the other provisions of the Agreement, your willful or grossly negligent provision of inaccurate or unreliable information, or your willful or grossly negligent failure promptly to update information provided to VeriSign shall constitute a material breach of this Agreement and shall be a basis for cancellation of the domain name(s) applied for hereunder.

8. Application Submission. You acknowledge and agree that VeriSign, Inc. (as the parent company) will be submitting your .US domain name application(s) to the .US Registry through VeriSign .US Registrar, Inc., and that all applications submitted by you hereunder (except for Sunrise applications, where applicable) will be submitted by VeriSign .US Registrar on or after the date upon which the .US Registry goes live.

### SCHEDULE V TO VERISIGN SERVICE AGREEMENT

### ADDITIONAL TERMS APPLICABLE TO REGISTRANTS OF DOMAIN NAMES IN THE .AU COUNTRY CODE TOP-LEVEL DOMAINS.

In addition to the terms set forth in Schedules A and D, the following terms shall apply to registrants of domain names registered in the .au country-code top-level domain.

Summary

The terms and conditions set forth below govern the registration of domain names in the .au country-code top-level domain and are mandated by auDA (as defined below).

For purposes of this Schedule V, the defined terms set forth below shall have the following meaning:

"**auDA**" means .au Domain Administration Limited ACN 079 009 340, the regulatory body responsible for administering the .au ccTLD and its associated sub-domains.

"**Domain Name**" means the domain name registered in the .au country-code top-level domain in accordance with this Agreement.

"**Domain Name Application**" means an application by a Registrant for a Domain Name License, or the renewal of an existing Domain Name License.

"**Domain Name License**" means the License to use a Domain Name for a specified period of time, as evidenced by a certificate of registration issued by the Registrar to the Registrant.

"**National Privacy Principles**" has the same meaning as in the *Privacy Act 1988* (Cth).

"**Published Policies**" means those specifications and policies established and published by auDA from time to time, as the self-regulatory body responsible for the administration of the .au ccTLD, in accordance with its constitution.

"**Registrant**" means a holder of, or an applicant for, a Domain Name License, and includes its agent.

"**Registrant Agreement**" means this Agreement.

"**Registrant Data**" means the Registrant data submitted by the Registrar to the Registry.

"**Registrar**" means VeriSign, Inc. and its wholly owned subsidiaries.

1. REGISTRAR'S AGENCY.

The Registrar agrees and covenants to act as agent for auDA for the sole purpose, but only to the extent necessary, to enable auDA to receive the benefit of rights and covenants conferred to them under this Registrant Agreement.

2. REGISTRATION OF DOMAIN NAMES

2.1 A Domain Name Application must be in the form prescribed under the Published Policies. The Domain Name must comply with the Published Policies.

2.2 The Registrar and the Registrant do not have any proprietary right arising from:

2.2.1 the registered Domain Name; or

2.2.2 the entry of a Domain Name in the Registry Database.

2.3 All personal information pertaining to the Registrant is held by auDA for the benefit of the Australian public.

3. CONSENT TO USE REGISTRANT INFORMATION

3.1 The Registrant grants to auDA, the right to publicly disclose to third parties, all information relating to the registered Domain Names in accordance with the Published Policies which are available on auDA's website http://www.auda.org.au.

3.2 The Registrant grants to the Registrar, the right to disclose to the Registry Operator, all information which are reasonably required by the Registry Operator in order to register the Domain Name in the Registry.

3.3 The Registrant grants to the Registry Operator, the right to publicly disclose to third parties, all information relating to the registered Domain Name to enable the Registry Operator to maintain a public WHOIS service, provided that such disclosure is consistent with:

3.4 the National Privacy Principles; and

3.5 auDA's Published Policies.

4. CHANGE OF REGISTRARS

4.1 The Registrar must ensure that the Registrant can easily transfer registered Domain Names to another registrar in accordance with the Published Policies. The Published Policies include, but are not limited to, such matters as:

4.1.1 the maximum fees chargeable by the Registrar;

4.1.2 when fees are not chargeable by the Registrar;

4.1.3 the conditions pursuant to which the Registrar must transfer; and

4.1.4 the conditions pursuant to which the Registrar does not have to transfer.

4.2 In the event that:

4.2.1 the Registrar is no longer a registrar; or

4.2.2 the Registrar's auDA Accreditation is suspended or terminated; or

4.2.3 the Registrar Agreement is terminated by auDA, the Registrant is responsible for transferring the registered Domain Name to a new registrar in accordance with the Published Policies within 30 days of written notice being provided to the Registrant by auDA.

4.3 In the event that the Registrar Agreement between auDA and the Registrar is terminated, the Registrar must not charge the Registrant any fee for the transfer of the registered Domain Name to another registrar.

5. REGISTRAR'S OTHER OBLIGATIONS

5.1 The Registrar must immediately give written notice to the Registrant if:

5.1.1 the Registrar is no longer a registrar; or

5.1.2 the Registrar's auDA Accreditation is suspended or terminated; or

5.1.3 the Registrar Agreement is terminated by auDA.

5.2 auDA may post notice of:

5.2.1 the fact that the Registrar is no longer a registrar;

5.2.2 the suspension or termination of a Registrar's auDA Accreditation; or

5.2.3 the termination of the Registrar Agreement between auDA and the Registrar on its web site and may, if it considers appropriate, give such notice to the Registrant.

6. REGISTRANT'S OTHER OBLIGATIONS

6.1 Throughout the Term of the Registrant Agreement, the Registrant must:

6.1.1 comply with the Published Policies;

6.1.2 give notice to the Registry Operator, through the Registrar, of any

change to any information in the Registrant Data.

6.2 The Registrant must not, directly or indirectly, through registration or use of its

Domain Name or otherwise:

6.2.1 register a Domain Name for the purpose of selling it;

6.2.2 register a Domain Name for the purpose of diverting trade from another business or web site;

6.2.3 deliberately register misspellings of another entity's company or brand name in order to trade on the reputation of another entity's goodwill; and

6.2.4 register a Domain Name and then passively hold a Domain Name License for the purpose of preventing another registrant from registering it.

6.3 The Registrant must not in any way:

6.3.1 transfer or purport to transfer a proprietary right in any domain name

registration;

6.3.2 grant or purport to grant a registered domain name as security; or

6.3.3 encumber or purport to encumber a domain name registration.

## 7. DISPUTE RESOLUTION

7.1 auDA currently has in place a dispute resolution policy called auDRP (the .au

Dispute Resolution Policy) which applies in the event of disputes between a registrar and a registrant, or between a registrant and a third party, in relation to entitlements to domain names in .au. The auDRP binds the Registrar and the Registrant as if it were incorporated in the Registrant Agreement.

7.2 The Registrant acknowledges that auDA may develop and implement other dispute resolution policies which are accessible by the Registrant as an alternative and further to any complaints handling procedure prescribed by the Registrar. Such policies bind the Registrar and the Registrant as if they were incorporated in the Registrant Agreement.

## 8. REGISTRANT WARRANTIES

8.1 The Registrant warrants that it meets, and continues to meet, the eligibility criteria prescribed in auDA's Published Policies for registering a Domain Name. In the event that the Registrant ceases to meet such eligibility criteria, the Domain Name License may be terminated by either the Registrar or auDA.

8.2 The Registrant warrants that it has not previously submitted a domain name which is the same as the Domain Name for registration with another registrar where:

8.2.1 the Registrant is relying upon the same eligibility criteria for both domain names; and

8.2.2 the Domain Name has previously been rejected by the other registrar.

## 9. LIABILITIES

9.1 The Registrant must not pursue any claim against auDA, and auDA is not liable for any direct, indirect, special, punitive, exemplary or consequential damages, including but not limited to damages resulting from loss of use, lost profits, lost business revenue or third party damages arising from any breach by the Registrar of its obligations under the Registrant Agreement or the Registrar Agreement between auDA and the Registrar.

9.2 The Registrant acknowledges and agrees that if the Registrar has any outstanding fees owing to auDA, entitling auDA to terminate the Registrar Agreement between auDA and the Registrar, auDA may in its sole discretion terminate the Registrar Agreement.

9.3 The Registrant agrees that auDA is not responsible for the use of any Domain Name in the Registry database and that auDA is not responsible in any way for any conflict or dispute with or any actual or threatened claim against a Registrar or Registrant, including one relating to a registered or unregistered trademark, a corporate, business or other trade-name, rights relating to a name or other identifying indicium or of an individual or other intellectual property rights of a third party or relating to the defamation or unlawful discrimination with respect to any other person.

9.4 Notwithstanding any other provision of this document and to the fullest extent permitted by law, auDA will not be liable to the Registrant for consequential, indirect or special losses or damages of any kind (including, without limitation, loss of profit, loss or corruption of data, business interruption or indirect costs) suffered by the Registrant as a result of any act or omission whatsoever of auDA, its employees, agents or sub-contractors.

9.5 Nothing in this document is intended to exclude the operation of *Trade Practices Act 1974*.

10. WARRANTY STATEMENT

In addition to any other warranties set forth in this Agreement, Registrant (a) represents and warrants that all information provided to Registrar, and all supporting documents provided to Registrar, are true, accurate and complete, (b) authorizes Registrar to contact third parties, investigate, request and obtain additional information and documentation and otherwise verify the information contained in its Domain Name Application, (c) waives any and all liability on the part of the Registrar for any and all actions taken by Registrar in verifying the information provided in Registrant's Domain Name Application, (d) waives any and all liability on the part of the Registrar related to or arising from the acceptance or rejection of Registrant's Domain Name Application on the basis of any false or misleading information contained in any such application, (e) acknowledges that if its Domain Name Application is accepted on the basis of any false or misleading information contained therein that auDA reserves the right to cancel any such Domain Name License at any time in its sole discretion, and (f) acknowledges that its entitlement to the Domain Name may be challenged by a third party with legitimate rights in and to such Domain Name.

## SCHEDULE B TO VERISIGN SERVICE AGREEMENT

### E- MAIL SERVICES

1. Description of Service. VeriSign is providing you with the capability of sending and receiving electronic mail via the Internet. You must: (a) provide all equipment, including a computer and modem, necessary to establish a connection to the Internet; and (b) provide for your own connection to the Internet and pay any telephone service fees associated with such connection. VeriSign has set no fixed upper limit on the number of messages you may send or receive through the e-mail service; however, VeriSign restricts the number of recipients of any e-mail sent by you to five hundred (500) per e-mail and retains the right, at VeriSign's sole discretion, to restrict the volume of messages transmitted or received by you in order to maintain the quality of our services to other customers and to protect our computer systems. We, in our sole discretion, will determine whether or not your conduct is consistent with this Agreement and any VeriSign operating rules or policies and may suspend or terminate your e-mail service if your conduct is found to be inconsistent with this Agreement or such rules or policies. The e-mail service is subject to scheduled (from 12:01am eastern United States time to 2:00 am eastern United States time every Saturday) and unscheduled outages that will impact your ability to use the service. We will use commercially reasonable efforts to restore the service after any unscheduled outages. Moreover,

RFJN0023

in order to receive the e-mail service we (or our third party provider) must host your domain name record. If you transfer your domain name record to a third party in conjunction with a live web site, or for any other reason, or allow your domain name registration to expire, you will no longer be able to use the e-mail service. We will not refund the fees you paid for our e-mail service if you elect to transfer your domain name record to a third party.

2. Catch-All Mailbox Service. VeriSign may make available to you the ability to subscribe to our Catch-All Mailbox service. You acknowledge and agree that, in the event you subscribe to the Catch-All Mailbox service, any electronic mail sent to the e-mail box of any user of your VeriSign e-mail service (e.g., Person@Yourcompany.com) will also be sent to the e-mail box set up for the Catch-All Mailbox service. You further acknowledge and agree that in the event your VeriSign e-mail and domain name services are terminated, any future registrant of your terminated domain name that subscribes to the Catch-All Mailbox service may receive e-mails intended for receipt by you or a former user of your e-mail service, and you agree that VeriSign shall have no liability to you or any third party with respect thereto. You are solely responsible for providing any and all necessary notifications regarding termination of your VeriSign e-mail services, and you agree that VeriSign shall have no liability to you or any third party with respect thereto.

3. SPAM Protection. VeriSign's e-mail service includes real-time SPAM Protection provided by Brightmail. All e-mail sent to your e-mail address(es) will be scanned by Brightmail Anti-Spam to detect SPAM and to assist in preventing SPAM from reaching your e-mail box(es). All e-mail detected as SPAM will be deleted and will not be delivered to your email inbox. All e-mail box(es) automatically include SPAM Protection and this feature can not be disabled or configured by you. You acknowledge and agree that our SPAM Protection feature is not guaranteed to be one hundred percent (100%) effective or error free and may result in e-mail that is not SPAM being falsely-identified as SPAM and deleted by our system, or the delivery of SPAM to your e-mail box(es). You acknowledge and agree that VeriSign shall have no liability to you or any third party with respect to our SPAM Protection feature, your failure to receive any e-mail as a result thereof, or your receipt of SPAM.

4. Virus Protection. VeriSign's e-mail service includes Virus Protection that scans your email, and attachments thereto, to assist in the prevention of the transmission of viruses to your computer system and/or e-mail program. All e-mail sent to your e-mail address(es) will be scanned for viruses. If a virus is detected, the e-mail message and/or attachment, as applicable, will be cleaned if possible and the header of the e-mail will be tagged to inform you that a virus was detected and that the e-mail message and/or attachment has been cleaned and the virus removed. If a virus is detected, and the virus cannot be removed from the e-mail message and/or attachment, the e-mail message and/or attachment will be deleted and the e-mail will be tagged to inform you that portions of the e-mail have been deleted because a virus was detected. All e-mail box(es) automatically include Virus Protection and this feature cannot be disabled or configured by you. You acknowledge and agree that our Virus Protection feature is not guaranteed to be one hundred percent (100%) effective or error free and may delete e-mail messages and/or attachments that you may desire to view, or allow the transmission of viruses to your computer system and/or e-mail program. You acknowledge and agree that VeriSign shall have no liability to you or any third party with respect to our Virus Protection feature, your failure to receive any e-mail and/or e-mail attachments as a result thereof, or the transmission of viruses to your computer system and/or e-mail program.

5. Additional Storage. VeriSign may make available to you the ability to purchase additional storage for a particular e-mail box in the specific increments described on our Web site. The additional storage will be attributed to the e-mail box designated by you during the application process, and your designation cannot be changed once made. The term of the additional storage services will run concurrently with the then-remaining term of the domain name to which the designated e-mail box(es) is/are associated, and the price of the additional storage services will be prorated accordingly (unless the designated e-mail box(es) is/are associated with a domain name that is part of a monthly service, in which case the monthly price will be added to the monthly invoices for that monthly service). Termination or transfer of the domain name registration associated with the e-mail box(es) to which the additional storage is/are attributed will result in the termination of both the e-mail box(es) and any related additional storage services, and such termination shall be without refund of any fees paid. Unless provided otherwise on our Web site, in

RFJN0024

no event may a customer have more than 100 Megabytes of total data storage.

6. Billing for E-mail Service. Billing for annual e-mail services shall be by valid credit card (acceptable to VeriSign) at the time of purchase. If you elect to subscribe to monthly e-mail services, your monthly payments for the same will be automatically charged to the credit card provided by you (and acceptable to VeriSign) at the time of your purchase (with such payments being charged in advance on a monthly basis) ("Monthly E-mail Service Fee"), and you hereby agree that VeriSign is authorized to so charge your credit card. VeriSign, in its sole discretion, shall determine the prices it will charge for the e-mail services, and the terms and conditions applicable to the same, and VeriSign may, upon providing thirty (30) days' notice to you, amend such pricing and/or terms and conditions. If you do not agree with any such change(s), you may terminate this Agreement or cancel your e-mail service subscription, as applicable, as provided herein, within such thirty (30) day period; otherwise all such changes shall thereafter be effective with respect to your account, and you agree that we are authorized to charge your credit card for any new Monthly E-mail Service fee.

7. Privacy. VeriSign will not monitor, edit or disclose the contents of your private communications with third parties unless required to do so by law or in the good faith belief that such action is necessary to: (a) conform to the law or comply with legal process served on VeriSign; (b) protect and defend the rights or property of VeriSign; or (c) act under exigent circumstances to protect the personal safety of our customers or the public. You acknowledge and agree that VeriSign neither endorses the contents of any of your communications nor assumes responsibility for such content, including but not limited to any threatening, libelous, obscene, harassing or offensive material contained therein, or any infringement of third party intellectual property rights arising therefrom or any crime facilitated thereby. You acknowledge and agree that certain technical–processing of e-mail messages and their content may be required to: (a) send and receive messages; (b) conform to connecting networks' technical requirements; (c) conform to the limitations of the e-mail service; or (d) conform to other similar requirements.

8. Customer Conduct. You agree to be bound by the applicable provisions of the VeriSign Acceptable Use Policy, incorporated herein and made part of this Agreement by reference, in connection with your use of the services described in this Schedule. VeriSign's outsourcing contractors for the e-mail services, including, but not limited to, Brightmail, Inc. and Mirapoint, Inc., or their successors, shall be intended third party beneficiaries of the e-mail service customer's obligations under this Agreement and thus shall be entitled to enforce those obligations against you as if a party to this Agreement.

**SCHEDULE C TO VERISIGN SERVICE AGREEMENT**

**DOT COM FORWARDING SERVICE**

1. VeriSign is providing you with the capability to forward users or visitors who type in a specific domain name to another domain name designated by you through a service branded as "dot com forwarding™". You represent and warrant that you have the necessary rights to use the dot com forwarding service to forward, point, alias or resolve your domain name(s) to the other domain name designated by you in ordering such services. You agree that we, in responding to a third party complaint or for any other reason, have the right, in our sole discretion, to suspend or terminate your dot com forwarding service without notice and with no obligation to refund fees paid if we determine the dot com forwarding service is forwarding users to a website or URL that is unsuitable or being used for any unlawful or harmful purpose, as determined in our sole discretion.

**SCHEDULE H TO VERISIGN SERVICE AGREEMENT**

RFJN0025

## E-COMMERCE SERVICES.

1. Additional Services. The e-commerce services we provide under this Agreement may incorporate other products or services that we provide, or products or services provided by third parties with whom we have a business relationship ("Additional Services"). Your use of these Additional Services may be subject to a separate application and/or approval process and your reaching separate agreements with us or with third parties. (For example, if you desire to accept credit card payments through the website you establish via the e-commerce services, your relationship with the third-party merchant account provider may be subject to an application and approval process and your reaching a separate agreement with such provider.) Some of these separate agreements may require you to pay fees in addition to the fees that you pay us for the E-Commerce Services. We will strive to let you know when your receipt of Additional Services will require you to enter into a separate agreement, whether with us or with a third-party, and whether such separate agreement will require you to pay additional fees. In this regard, three of the vendors providing services as part of the e-commerce services, Critical Path, Inc., Orbit Commerce, Inc., and WebSite Pros, Inc., and their successors, are intended third-party beneficiaries under this Agreement and will be entitled to enforce your obligations under this Agreement. You agree that hosting for the E-Commerce Services provided to you will be provided either by us or a third party selected by us, as determined by us in our sole discretion.

2. Your Responsibilities. In addition to your other responsibilities described in this Agreement, you will also be responsible for the following:

(a) Internet Access. You agree that you will obtain access to the Internet and all software, hardware, and other equipment necessary to access the Internet.

(b) Commercial Banking Relationship. Depending on the services you elect to receive, you may be responsible for establishing and maintaining a commercial banking relationship with a financial institution. The terms of any such relationship shall be between you and the financial institution and will not necessarily reflect or incorporate terms of any agreements we may have with the institution.

(c) Fulfillment. You will be responsible for fulfilling all orders for products and services you sell on your website.

(d) Policies. You agree to maintain commercially reasonable business practices in connection with your use of the E-Commerce Services and to comply with all applicable laws, rules, regulations, ordinances, and other binding legal obligations with respect to your use of the E-Commerce Services.

3. Fees, Payment and Term. In addition to the payment terms in Section 3 of the Agreement, the following provisions shall also apply. You may subscribe for the E-Commerce Services on an annual basis ("Annual Subscription") or on a monthly basis ("Monthly Subscription"). Each Annual Subscription and Monthly Subscription is renewable, subject to the terms set out below. Annual Subscriptions must be renewed prior to the anniversary date of the account. Monthly Subscriptions will be automatically renewed until either (i) you notify us that you do not wish to renew the E-Commerce Services; or (ii) this Agreement is terminated (for any reason). All one-time fees are due immediately and are non-refundable (except as expressly provided otherwise herein). All recurring fees will be automatically charged to the credit card that you provide us, and you agree that we are authorized to charge your credit card accordingly. We will determine the fees we charge for the E-Commerce Services and the terms and conditions applicable to the E-Commerce Services. The prices shown on our website at the time of your purchase will remain in effect for you for the term of the subscription selected by you (for example, if you select an annual subscription, your price will not change for the first year; if you select a monthly subscription, your price will not change for at least one month). Upon termination of the Agreement or the E-Commerce Services, you agree we will cease charging your credit card for the E-Commerce Services as of the expiration of the monthly billing cycle in which the termination is effective. If you selected and paid in full for an Annual Subscription at the time of application, we may issue a prorated refund credit to your credit card in an amount not to exceed nine (9) months on a

prorated basis. In every case, any set-up fees paid to VeriSign or third parties, and any other fees paid to third party service providers are not refundable. We will make reasonable efforts to provide you with notice of any changes in these fees or the applicable terms and conditions thirty (30) days before they take effect. Within that period, if you do not agree to the changes, you may terminate this Agreement and cease using the E-Commerce Services. (You will not, however, receive a refund on any payments that we have received for the E-Commerce Services, except as expressly provided otherwise herein.) Otherwise, however, the changes will take effect and you agree that we are authorized to charge your credit card for the new fees for the E-Commerce Services. Any renewal of your E-Commerce Services is subject to our then-current terms and conditions, payment of all applicable fees at the time of renewal, and, in the case of domain name re-registration, the domain name registry's acceptance of your domain name registration. You agree that the E-Commerce Services provided hereunder are provided as a bundle consisting of the various services selected by you and that the E-Commerce Services cannot be maintained in any manner other than as a bundle, and neither the E-Commerce Services nor any part thereof may be transferred or assigned to any other person or entity. You agree that terminating your subscription for the E-Commerce Services will terminate every service included in the E-Commerce Services bundle, including your domain name registration. If you wish to cancel your E-Commerce Services bundle (and terminate this Agreement), you must do in accordance with our cancellation procedures.

4. Limitation of Liability. You agree that we are not a financial or credit reporting institution. With respect to the payment facilitation services we provide as part of the E-Commerce Services, we merely provide data transmission to effect certain payment authorizations for you and we are not responsible for the results of any credit inquiry, for the operation of websites of Internet service providers or financial institutions, for the availability or performance of the Internet, or for any damages or costs that you may suffer as a result of any instructions given, actions taken, or omissions made by you, your financial processor(s), your financial institution, or any Internet service provider.

5. SureList℠ Service. We may provide you an opportunity through our SureList service to have your website included in the search index of one of our third party vendors (for purposes of this paragraph, the "Index Servicer"). We will provide one URL from your website (the URL) to the Index Servicer, which it then adds to its search database. The Index Servicer will then periodically search various content of your website and include such content in the search index. The index may be searched by the Index Servicer's search partners. You acknowledge and agree that the Index Servicer is responsible for maintaining the index and keeping it current. We bear no responsibility or liability for the operation, maintenance and functioning of the index or for the service described in this paragraph. You further acknowledge that in order for the Index Servicer to include your website in its search index, your website must be technically compatible with the the Index Servicer's search tool. At a minimum, in order to be technically compatible: (a) your website address must not contain formatting errors; (b) your website must be operational (i.e., it may not be "under construction" and it may not generate error messages such as "file not found"); (c) your website must contain visible text and be accessible without a password or similar restriction; and (d) your website must permit so-called "spidering" technology. We and/or the Index Servicer, in our sole discretion, may remove a website from the search index for any reason, including, but not limited to, the following: (a) fraudulent or illegal use of the service; (b) the potential infringement of the rights of a third-party; (c) in response to a court order or other judicial or governmental request or action; and/or (d) the posting of content or the offering of products or E-Commerce Services that may be or are illegal (e.g., if either we or the Index Servicer receives a notice of an act of copyright infringement in compliance with the notice requirements of the Digital Millennium Copyright Act of 1998). You expressly agree (a) that we will not be responsible for the operation, maintenance or functioning of the index and the search service or any delays or failures to perform; and (b) that we do not represent or warrant that your website or address will achieve (i) favorable placement, or any placement, within the search index, or (ii) experience increased visits, or any visits, as a result of placement within the search index.

6. Additional Terms Applicable to We Build It Design and Maintenance Service. Your purchase of a We Build It service is subject to the additional restrictions herein. This package option includes catalog creation services of up to a limit of 25 products. Any additional products you request will incur an additional surcharge at our then current rates. You are responsible for providing

RFJN0027

electronic material, including product imagery and descriptions, to the We Build It service representatives, in one of the following formats: JPG, JPEG, GIF, BMP, TIF, or PCX. Product descriptions must be delivered in one of the following standard formats: DOC, HTM, HTML, TXT, RTF, XLS, CSV, or MDB. Failure to deliver imagery or product descriptions in one of the above standard formats may also incur an additional surcharge for the additional effort required by VeriSign or its partners to comprehend and convert the shared information to one of the standard formats. You will have the option to accept either of these surcharges and proceed with the We Build It service, or reject the surcharge amount and receive a refund that is compliant with the refund policy outlined in Section 3 of this Schedule: Fees, Payment and Term.

7. Survival. In the event the Agreement or this Schedule expires or terminates, Sections 4, 6(c), 7, 8, 12 and 13 of this Schedule shall survive such expiration or termination.


### SCHEDULE I TO VERISIGN SERVICE AGREEMENT

### VERISIGN PAYMENT TRANSACTION PROCESSING SERVICES

1.  Definitions.

    a.  "Financial Institution" shall mean banks or financial institutions for which VeriSign has a processor connection to be able to process payment transactions, which have agreed to evaluate and provide merchant accounts and payment authorization services to merchants.
    b.  "Payment Services" shall mean VeriSign's Payflow services used by you, or such other brand names as replace the foregoing brand names. Current descriptions can be found at the URL: http://www.verisign.com/payment/payflow.html for the Payflow Link[SM] services or http://www.verisign.com/payment/payflowpro.html for the Payflow Pro[SM] services. Third party services bundled with the Payment Services are subject to separate terms and conditions provided by VeriSign or the applicable licensor.
    c.  "Payment Software" shall mean the object code version of VeriSign's payment services client Software Development Kit ("SDK"), including any HTML code, application programming interfaces (APIs), related documentation and other client software or code which VeriSign provides to you, including minor updates, to enable VeriSign to provide the Services to you. Unless otherwise specified, Software shall not include any source code. The Software is proprietary to VeriSign and is licensed to you under a separate SDK License Agreement at the time of download.
    d.  "Transaction" shall mean information related to the purchase of goods and services from you by a third party. Specifically a Transaction is an authorization, delayed capture, sale or credit data transmission between VeriSign and its back end processors.

2.  Your Additional Obligations. You shall be solely responsible for:

    a.  establishing, hosting and maintaining your Web site(s) and your connection to the Internet (the "Merchant Web Site(s)"), fulfilling all orders for products and services sold by you to your users on the Merchant Web Site(s) or otherwise, and reviewing the Transactions in your account on a regular basis and notifying VeriSign promptly of suspected unauthorized activity through your account;
    b.  establishing and maintaining the appropriate and necessary connection between the Merchant Web Site(s) and VeriSign's web site, including without limitation transmitting your enrollment information and Transaction data to VeriSign servers via the VeriSign web site and ensuring that the data transmitted in conjunction with the Services is accurate, complete and in the form as requested by VeriSign;
    c.  displaying a web page to users purchasing products or services from you that provides the user with an acknowledgement that a Transaction has been completed and secured by VeriSign (the "Acknowledgment Page"). You agree that in addition to your branding on the Acknowledgement Page, the Acknowledgement Page will include the relevant VeriSign logo, provided by VeriSign to you, such logo to be a hypertext link to the URL:

http://seal.verisign.com/payment (the "VeriSign Site") or other web site reasonably designated by VeriSign, and the text "VeriSign has routed, processed and secured your payment information. More information about VeriSign." The underlined text shall also be a hypertext link to the VeriSign Site or other site designated by VeriSign. You agree that the VeriSign Logo and the foregoing text will appear at the top of the Acknowledgement Page (but below your branding) and users will not be required to scroll left, right, up or down to view the VeriSign Logo or such text. VeriSign hereby grants you the rights to use the relevant VeriSign Logo, name and link to the VeriSign Site as necessary to carry out the obligations of this section and in accordance with any trademark usage guidelines provided to you by VeriSign from time to time upon reasonable notice.

    d.  establishing and maintaining a commercial banking relationship with one or more Financial Institutions. The terms of such relationship shall be determined solely by you and the Financial Institution and will not necessarily reflect or incorporate terms that VeriSign may have separately and independently negotiated with Financial Institutions; and

3. Secure Transactions. VeriSign has implemented and will maintain security systems for the transmission of Transactions, consisting of encryption and "firewall" technologies that are understood in the industry to provide adequate security for the transmission of such information over the Internet. VeriSign does not represent or warrant that the Services or Transaction data will be secure, and VeriSign will not be responsible in the event of any infiltration of its security systems, provided that VeriSign has used commercially reasonable efforts to prevent any such infiltration as set forth in this section. You further acknowledge and agree that VeriSign is not responsible for the security of Transaction data or information or any other information stored on your servers or any other party's servers (other than subcontractors of VeriSign solely to the extent VeriSign is liable for its own actions hereunder).

4. Technical Support. The following technical support is available for the Payment Services and Payment Software: (a) For the Payflow Link services, VeriSign provides web support and email support twenty-four hours a day, seven days a week; and (b) for Payflow Pro, in addition to the above support, VeriSign provides telephone support during the hours of 5:00 a.m. to 6:00 p.m. PST, Monday through Friday, VeriSign holidays excepted. VeriSign agrees to respond to support inquiries as promptly as reasonably possible.

5. Limitations. You acknowledge that VeriSign is not a bank or financial or credit reporting institution. VeriSign is responsible only for providing data transmission to effect certain payment authorizations for you and is not responsible for the results of any credit inquiry, the operation of web sites of ISPs or Financial Institutions or the availability or performance of the Internet, or for any damages or costs you suffer or incur as a result of any instructions given, actions taken or omissions made by you, your financial processor(s), your Financial Institution or any ISP.

6. Privacy. The parties acknowledge and agree that you shall provide and VeriSign shall capture only the Transaction and user information (collectively, the "Data") that is required by the Payment Software and is necessary for VeriSign to provide the Payment Services. You agree to provide to VeriSign, and VeriSign shall capture, only the Data that is required by the Payment Software and is necessary for VeriSign to provide the Payment Services. VeriSign shall not disclose Data to third parties or use the Data, except that VeriSign shall have the rights (i) to use the Data as necessary to perform the Services contemplated in this Agreement (including distributing the Data to third parties providing services requested by you); (ii) to maintain the Data as long as necessary or as required by law and used internally for record keeping, internal reporting, and support purposes; and (iii) to provide the Data as required by law or court order, or to defend VeriSign's rights in a legal dispute. You represent and warrant that you shall comply with all applicable privacy, consumer and other laws and regulations with respect to its (i) provision, use and disclosure of the Data; (ii) dealings with the users providing the Data; and (iii) use of the Payment Services.

7. American Express Direct Processing.

a. Access Via Ecommerce Application. You understand and agree that if you install a third party eCommerce application or your own custom integration on your web site through which you access the VeriSign Direct Processing services, it is your responsibility to comply with or select an

eCommerce application that complies with the most current American Express standards and operational requirements. In addition, it is your responsibility to keep your systems in good working order and to repair and correct any deficiencies, errors, or defect promptly during the term of this Agreement if notified by VeriSign or American Express that such repair is necessary for the VeriSign Direct Processing services to operate properly and in accordance with American Express requirements. VeriSign will promptly notify you of American Express required changes to your system. You understand and agree that your failure to perform these functions may result in your inability to process such transactions through VeriSign or in VeriSign or American Express suspending or terminating your right to access the VeriSign Direct Processing services.

b. Inability to Access Service. You agree to notify VeriSign immediately of online processing problems, including but not limited to providing VeriSign's customer service department with notice within forty-eight (48) hours of your using voice authorizations for your transactions that you would otherwise send through VeriSign's online payment services gateway.

c. In no event shall VeriSign be liable for transaction processing and other services performed by American Express.

8. Survival. In the event of termination or expiration of this Schedule or the Agreement, Sections 1, 5, 6 and 8 of this Schedule shall survive.

### SCHEDULE K TO VERISIGN SERVICE AGREEMENT

### ADDITIONAL TERMS APPLICABLE TO VERISIGN TRUST NETWORK DIGITAL CERTIFICATES AND CERTIFICATION SERVICES

1. Description of Service. This section details the terms and conditions regarding your application ("Certificate Application") for a digital certificate ("Certificate" or "ID") and, if VeriSign accepts your Certificate Application, the terms and conditions regarding the Certificate to be issued by VeriSign to you as "Subscriber" of that Certificate. A "Certificate" is a digitally signed message that contains a Subscriber's public key and associates it with information authenticated by VeriSign or a VeriSign-authorized entity. The Certificates provided under this section are issued within the VeriSign Trust Network ("VTN"). The VTN is a global public key infrastructure that provides Certificates for both wired and wireless applications. VeriSign is one of the service providers within the VTN, together with a global network of affiliates throughout the world. The VTN and VeriSign under this Agreement offer three distinct classes ("Classes") of certification services, Classes 1-3, for both the wired and wireless Internet and other networks. Each level, or class, of Certificate provides specific functionality and security features and corresponds to a specific level of trust. You are responsible for choosing which Class of Certificate you need. The following subsections state the appropriate uses and authentication procedures for each Class of Certificate. For more detailed information about VeriSign's certification services, please see the VeriSign Certification Practice Statement ("CPS") published at http://www.verisign.com/CPS.

(i) Class 1 Certificates. Class 1 Certificates offer the lowest level of assurances within the VTN. They Certificates issued to individual Subscribers, and authentication procedures are based on assurances that the Subscriber's distinguished name is unique and unambiguous within the domain of a particular issuer of Certificates (a "Certification Authority") and that a certain e-mail address is associated with a public key. Class 1 Certificates are appropriate for digital signatures, encryption, and access control for non-commercial or low-value transactions where proof of identity is unnecessary.

(ii) Class 2 Certificates. Class 2 Certificates offer a medium level of assurances in comparison with the other two Classes. Again, they are issued to individual Subscribers. In addition to the Class 1 authentication procedures, Class 2 authentication includes procedures based on a comparison of information submitted by the Certificate Applicant against information in business records or databases or the database of a VeriSign-approved identity proofing service. They can be used for digital signatures, encryption, and access control, including as proof of identity in medium-value

RFJN0030

transactions.

(iii) Class 3 Certificates. Class 3 Certificates provide the highest level of assurances within the VTN. Class 3 Certificates are issued to individuals and organizations for use with both client and server software. Class 3 individual Certificates may be used for digital signatures, encryption, and access control, including as proof of identity, in high-value transactions. Class 3 individual Certificates provide assurances of the identity of the Subscriber based on the personal (physical) presence of the Subscriber before a person that confirms the identity of the Subscriber using, at a minimum, a well-recognized form of government-issued identification and one other identification credential. Class 3 organizational Certificates are issued to devices to provide authentication; message, software, and content integrity; and confidentiality encryption. Class 3 organizational Certificates provide assurances of the identity of the Subscriber based on a confirmation that the Subscriber organization does in fact exist, that the organization has authorized the Certificate Application, and that the person submitting the Certificate Application on behalf of the Subscriber was authorized to do so. Class 3 organizational Certificates for servers ("Secure Server IDs" and "Global Server IDs" as described below) also provide assurances that the Subscriber is entitled to use the domain name listed in the Certificate Application, if a domain name is listed in such Certificate Application.

2. Processing Your Certificate Application. Upon VeriSign's receipt of your payment of the most current price for a Certificate and upon completion of authentication procedures required for your type of Certificate, VeriSign will process your Certificate Application. VeriSign will notify you whether your Certificate Application is approved or rejected. If your Certificate Application is approved, VeriSign will issue you a Certificate for your use in accordance with this Agreement. Your use of the PIN from VeriSign to pick up the Certificate or otherwise installing or using the Certificate is considered your acceptance of the Certificate. After you pick up your Certificate, you must review the information in it before using it and promptly notify VeriSign of any errors. Upon receipt of such notice, VeriSign may revoke your Certificate and issue a corrected Certificate.

3. Privacy. In addition to the terms in Section 5 of the Agreement, you agree that VeriSign may place in your Certificate certain information that you provide for inclusion in your Certificate. In the case of individual Certificates, this information includes an e-mail address and the name that you give VeriSign to include in the Certificate. You also agree that VeriSign may publish your Certificate and information about its status in VeriSign's repository of Certificate information and make this information available to other repositories.

4. Use of Your Certificate. You must use your Certificate for applications in accordance with Section 1 of this Schedule. You must not use your Certificate in any situation where death, personal injury, or environmental damage could result. In the case of Class 1 Certificates, you must not use your Certificate or any other Class 1 Certificate as proof of identity.

5. Security Requirements and Revocation. You must maintain the security of your private key and any passphrase, PIN, software, or hardware mechanism protecting it. You must prevent any loss, loss of control, theft, unauthorized disclosure, or unauthorized modification ("Compromise") of your private key's security or of any passphrase, PIN, software, or hardware mechanism protecting your private key. For example, you must not allow others to have access to your private key or any passphrase, smart card (if used), or other security mechanism protecting your private key.

If you know or suspect that a Compromise occurred relating to your private key's security or the security of any data (such as a passphrase or PIN), software, or hardware protecting your private key, you must promptly notify VeriSign and request that VeriSign revoke your Certificate. After your revocation request has been authenticated, VeriSign will revoke your Certificate. You agree that VeriSign is entitled to investigate all actual or suspected Compromises of your private key or data, software, or hardware protecting your private key, or breach in the security of the VTN, as permitted by law, and you must reasonably cooperate with VeriSign in any such investigation. You agree that VeriSign is entitled to revoke your Certificate upon an actual or suspected Compromise of your private key, any data (such as a passphrase or PIN), software, or hardware protecting your private key, if such a Compromise involves an actual or suspected Compromise of the security of the VTN, if you materially breach this Agreement, or if VeriSign determines that it or

RFJN0031

another organization approved your Certificate application or issued your Certificate in a way that materially differed from what is described in Section 1 of this Schedule or the CPS. Revocation of your Certificate terminates this Agreement as it applies to services under this Schedule and/or Schedule L.

6. Relying Party Obligations. In addition to using your own Certificate, you may receive or rely upon the Certificates of others. Before relying on a Certificate, you must ensure that the Certificate is appropriate for the application. For example, do not rely upon a Class 1 Certificate for proof of identity purposes. You must use software that performs cryptographic functions properly and, before relying on a Certificate, you must ensure that the software shows that it has performed the applicable function correctly. For example, do not rely upon a digital signature if your software says that the digital signature is not valid.

Your software application should identify a "chain" of Certificates, leading from the Certificate on which you wish to rely to a root Certificate within your software. If not, you must not rely on the Certificate. In any case, before relying on the Certificate, you must ensure that none of the Certificates in the chain are revoked, suspended or expired by checking the Certificate status at https://digitalid.verisign.com/services/client/index.html or its current location on the VeriSign public website, or another appropriate repository. Do not rely upon the Certificate if that Certificate or any other Certificate in the chain is revoked, suspended or expired.

As an alternative to the procedures listed in this Section, you may use VeriSign's real-time status checking services to identify the proper public key to rely on, to establish the proper chain of Certificates, and to obtain the current status of that public key (whether it is revoked, suspended, or expired, or invalid because another Certificate in the Certificate chain is revoked, suspended, or expired).

7. Intellectual Property. VeriSign owns all property rights, intellectual property rights, and title in and to the Certificate. You have the right to use the Certificate under the terms and conditions of this Agreement.

8. Warranties.

(i) VeriSign Warranties. VeriSign warrants to you that (a) there are no errors introduced by VeriSign in your Certificate information as a result of VeriSign's failure to use reasonable care in creating the Certificate, (b) your Certificate complies in all material respects to the CPS, and (c) VeriSign's revocation services and use of a repository conform to this CPS in all material aspects. VeriSign also has a special limited warranty program called the NetSure[SM] Protection Plan ("NetSure Protection Plan"), which covers Subscribers receiving Certificates directly from VeriSign. Please refer to the NetSure Protection Plan at http://www.verisign.com/repository/netsure/ for details concerning the warranties VeriSign makes to you and the limitations on them.

(ii) Your Warranty. You warrant to VeriSign and anyone who relies on your Certificate that (a) all the information you provide to VeriSign is accurate; (b) no Certificate information you provided (including your e-mail address) infringes the intellectual property rights of any third parties; (c) the Certificate Application information you provided (including your email address) has not been and will not be used for any unlawful purpose; (d) you have been (since the time of its creation) and will remain the only person possessing your private key and no unauthorized person has had or will have access to your private key (except where you are using VeriSign's roaming services or Personal Trust Service); (e) you have been (since the time of its creation) and will remain the only person possessing any passphrase, PIN, software, or hardware mechanism protecting your private key and no unauthorized person has had or will have access to the same; (f) you are using your Certificate exclusively for authorized and legal purposes consistent with this Agreement; (g) you are using your Certificate as an end-user Subscriber and not as a Certification Authority issuing Certificates, Certification revocation lists, or otherwise; and (h) each digital signature created using your private key is your digital signature, and the Certificate has been accepted and is operational (not expired or revoked) at the time the digital signature is created.

9. ADDITIONAL DISCLAIMER. IN ADDITION TO THE DISCLAIMERS IN SECTION 14 OF THIS

AGREEMENT, VERISIGN IS NOT YOUR AGENT, FIDUCIARY, TRUSTEE, OR OTHER REPRESENTATIVE. VERISIGN ALSO SPECIFICALLY DISCLAIMS THE APPROPRIATENESS, FUNCTIONALITY, OR OPERATION OF ANY SOFTWARE NOT PROVIDED BY VERISIGN.

10. NetSure Protection Plan and Limitations Period. You are covered by the most current version of the NetSure Protection Plan, the details of which are available at http://www.verisign.com/repository/netsure/. Under the NetSure Protection Plan, VeriSign will pay you for certain incidental or consequential damages of one or more of the limited warranties in the NetSure Protection Plan, up to the limits set forth in the NetSure Protection Plan. VeriSign is not obligated to make a payment under the NetSure Protection Plan for a breach of a warranty found in the NetSure Protection Plan unless you submit a payment request as required by the Netsure Protection Plan within one (1) year after the termination of this Agreement (this provision shall survive termination or expiration of this Schedule or the Agreement).

11. <u>LIMITATIONS OF LIABILITY</u>.

(i) <u>LIMITATIONS UNDER NETSURE PROTECTION PLAN</u>. THE MOST THAT VERISIGN MUST PAY YOU UNDER THE NETSURE PROTECTION PLAN IS THE AMOUNT DETERMINED UNDER THE NETSURE PROTECTION PLAN. THE LIMITATIONS ON DAMAGES AND PAYMENTS IN THIS SECTION (11)(i) DO NOT APPLY TO REFUND PAYMENTS OR GENERAL CONTRACT DAMAGES.

(ii) <u>OTHER LIMITATIONS</u>. This SECTION 11 (ii) applies to liability under contract (including breach of warranty), tort (including negligence and/or strict liability), and any other legal or equitable form of claim. IF YOU INITIATE ANY CLAIM, ACTION, SUIT, ARBITRATION, OR OTHER PROCEEDING SEPARATE FROM A REQUEST FOR PAYMENT UNDER THE NETSURE PROTECTION PLAN RELATING TO SERVICES PROVIDED UNDER THIS SECTION L, AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, VERISIGN'S TOTAL LIABILITY FOR DAMAGES SUSTAINED BY YOU AND ANY THIRD PARTY FOR ANY USE OR RELIANCE ON A SPECIFIC CERTIFICATE SHALL BE LIMITED, IN THE AGGREGATE, TO THE AMOUNTS SET FORTH BELOW.

| Class | Liability Caps |
|---|---|
| Class 1 | One Hundred U.S. Dollars ($ 100.00 US) |
| Class 2 | Five Thousand U.S. Dollars ($ 5,000.00 US) |
| Class 3 | One Hundred Thousand U.S. Dollars ($ 100,000.00 US) |

The LIABILITY limitationS provided in THIS Section 11 (ii) shall be the same regardless of the number of digital signatures, transactions, or claims related to such certificate, subject to the NETSURE PROTECTION PLAN, VeriSign SHALL NOT be obligated to pay more than the total liability LIMITATION for each certificate. THIS SECTION 11 (ii) DOES NOT LIMIT REFUND PAYMENTS OR PAYMENTS UNDER THE NETSURE PROTECTION PLAN.

EXCEPT AS EXPRESSLY PROVIDED IN THIS SECTION 11 AND THE MOST CURRENT VERSION OF THE NETSURE PROTECTION PLAN AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE SERVICES UNDER THIS schedule SHALL BE SUBJECT TO THE LIMITATIONS OF LIABILITY IN SECTION 10 OF THE AGREEMENT.

12. Refund Policy. If you paid for the Certificate and you are not completely satisfied with the Certificate issued to you for any reason, you may request that VeriSign revoke the Certificate within thirty (30) days of issuance and provide you with a refund. Following the initial 30 day period, you may request that VeriSign revoke the Certificate and provide a refund if VeriSign has breached a warranty or other material obligation under *either* this Agreement *or* the NetSure Protection Plan relating to you or your Certificate. After VeriSign revokes your Certificate, VeriSign will promptly credit your credit card account (if the certificate was paid for via credit card) or otherwise reimburse you via check, for the full amount of the applicable fees paid for the certificate. You can request a refund by completing the Refund Request Form at

RFJN0033

https://www.verisign.com/repository/refund.

13. Indemnity Conditions. Your indemnification obligations under the Agreement shall also include: (a) your use of the Certificate issued to you contrary to Section 4 of this Schedule; (b) any willful or intentional misconduct in connection with the use of the Certificate; (c) your failure to protect your private key; (d) the use of or reliance upon a Certificate not in accordance Section 6 of this Schedule; (e) your choice and use of security software, hardware, and encryption/digital signature algorithms, including their respective parameters, procedures, and techniques; and (f) any conduct by you that breaches the security of the VTN.

14. Dispute Resolution. In the event of any dispute or claim relating exclusively to services provided under this Schedule, the parties shall follow the dispute resolution procedures detailed in this Section 14.

(i) Negotiation. The parties shall use commercially reasonable efforts to settle any disputes or claims relating exclusively to services provided under this Schedule by good faith negotiations. If the parties do not reach a solution after a reasonable period (but, in any event within sixty (60) days from the first day notice of a dispute is received by the other party), then, upon notice by either party to the other, such disputes or disagreement shall be finally settled according to Section 14 (ii).

(ii) Resolution. If you are a U.S. resident, all proceedings to resolve any disputes or claims relating exclusively to services provided under this Schedule not resolved as set forth in Section 14 (i) shall be brought in a federal or state court whose jurisdiction encompasses Santa Clara County, California. Both you and VeriSign waive any defenses to such proceedings based on lack of personal jurisdiction, improper venue, or insufficiency of service of process. The parties also waive any right to a jury trial in any such suit. If you are not a U.S. resident, all such disputes or claims shall be resolved by arbitration administered by the International Chamber of Commerce ("ICC") according to the ICC Rules of Conciliation and Arbitration. Judgment on the award rendered by the arbitrators may be entered in any court of competent jurisdiction. The arbitration award shall be in writing and shall specify the factual and legal bases for the award. The existence, content, or results of any arbitration hereunder shall not be disclosed without the prior written consent of both parties. Nothing in this Section 14 shall preclude VeriSign from seeking, to the extent permitted by governing law, equitable (including injunctive) relief upon an alleged or suspected Compromise in the security of the VTN or upon an alleged infringement of any of VeriSign's intellectual property rights.

15. IF YOU ARE PURCHASING A VERISIGN CLASS 1 DIGITAL ID FROM OUR WEB SITE, WE ARE REQUIRED TO NOTIFY YOU OF OUR PRIVACY POLICIES. THEREFORE, WE ARE PROVIDING THE FOLLOWING EXTRACT FROM OUR PRIVACY STATEMENT. THE FOLLOWING PARAGRAPHS EXPLAIN WHAT VERISIGN DOES WITH THE INFORMATION WE COLLECT FROM YOU WHEN YOU ENROLL FOR A DIGITAL ID. THESE PARAGRAPHS ARE EXTRACTED FROM OUR PRIVACY STATEMENT WHICH WE ENCOURAGE YOU TO READ IN FULL (http://www.verisign.com/truste).

a. Information We Gather from You. VeriSign is asking for the personal information in this Digital ID enrollment screen for the limited purposes of creating your Digital ID, providing the services that may be part of your Digital ID, and authenticating your identity in order to issue you a Digital ID. You should also be assured that we do not provide or sell information about our customers or site visitors to vendors that are not involved in the provision of VeriSign's public certification and other services. When you visit our site, our computers may automatically collect statistics about your visit. This information does not identify you personally, but rather about a visit to our site. We may monitor statistics such as how many people visit our site, the user's IP address, which pages people visit, from which domains our visitors come and which browsers people use. We use these statistics about your visit for aggregation purposes only. These statistics are used to help us improve the performance of our Web site.

b. How We Use and With Whom We Share the Information We Gather. We may request information from customers via surveys. Participation in these surveys is voluntary and will be

RFJN0034

used for purposes of monitoring or improving the use of and satisfaction with our Web site, and improving our customer service and product offerings.

We use the information you submit to contact you to discuss the support, renewal, and purchase of our products and services. We may also provide the information you have submitted to us to a VeriSign subsidiary, business partner, or representative so that the subsidiary, business partner, or representative can contact you on behalf of VeriSign to facilitate the support, renewal, and purchase of VeriSign products and services. Please be assured that any subsidiary, business partner, or representative who contacts you for one of these purposes has agreed to use the information we supply only in accordance with a confidentiality agreement. To find out the names and locations of the subsidiaries, business partners, and/or representatives to whom we have provided your information, please contact us at the address listed at the end of this document.

We will also use the information you supply to form the contents of a Digital ID. The exact information that appears in our different types of Digital IDs is set forth in the relevant enrollment page and this Privacy Statement. *Please note that all information that you provide us that forms the content of a Digital ID will be "published." Publication of Digital IDs in an accessible location (a repository) is an integral part of enabling the widespread use of Digital IDs. Your Digital ID will be published in our repository so that a third party may access, review, and rely upon your Digital ID. You should have no expectation of privacy regarding the content of your Digital ID.*

If we are required by law to disclose certain information to local, state, federal, national or international government or law enforcement authorities, we will do so.

c. Your Ability to Opt-Out of Further Notifications. From time-to-time, we notify our subscribers of new products, announcements, upgrades and updates. If you would like to opt-out of being notified, please contact us at the address listed at the end of this document.

If you would like to change your preferences online, please visit **http://www.verisign.com/compref/** Please be aware that we reserve the right to notify our subscribers of any information that affects the security, initial use, expiration, product enhancement or migration of our products or services.

d. How You Can Update or Correct Your Information. We cannot update or correct information contained in a Digital ID without destroying the integrity of the Digital ID because we digitally sign each subscriber's Digital ID as a part of the Digital ID issuance process. If we were to subsequently modify or remove any information listed in a Digital ID, our digital signature would not verify the Digital ID's new content. Furthermore, if a subscriber (sender) then digitally signed a message with his or her private key, a third party would not be able to properly verify the sender's signature (created using the sender's private key) because the sender's Digital ID would have been altered after the key pair's creation. For more information and tutorials on digital signatures, Digital IDs, keys, and related subjects, click here **http://www.verisign.com/repository**

If you would like to update or correct any information in our records that is not contained in your Digital ID, please contact us via e-mail at **id-support@verisign.com** or at the address listed at the end of this document.

e. How You Can Revoke (Deactivate) Your Digital ID. When a third party wants to rely on a Digital ID, it is important for the third party to know its status (for example, whether it is valid, suspended (where available) or revoked). The third party may do this by accessing our repository and querying for the status of the Digital ID. We do not generally delete Digital IDs (and their content) from our on-line repository because a third party might not then be able to check its status. You may, however, revoke (deactivate) your Digital ID. A revoked Digital ID will still appear in our repository with an indication that it has been revoked. If you are a Digital ID subscriber and would like to have your Digital ID revoked (deactivated) from our database, please visit our site at **https://digitalid.verisign.com/revoke.htm** and follow the listed instructions or contact us via e-mail at **id-support@verisign.com** or at the address listed at the end of this

RFJN0035

document.

f. Changes to VeriSign's Privacy Statement. If a material change is made to the VeriSign Privacy Statement (http://www.verisign.com/truste) and/or the way we use our customers' personally identifiable information then, with the prior written approval from TRUSTe, we will post prominent notice of the nature of such change on the first page of the Privacy Statement and also on our home page.

Our address is: VeriSign, Inc.

Attention: Support

487 East Middlefield Road

Mountain View, California 94043

16. Survival. In the event the Agreement or this Schedule expires or terminates, Sections 7, 9, 11, 13, 14 and 16 of this Schedule shall survive such expiration or termination.

### SCHEDULE L TO VERISIGN SERVICE AGREEMENT

### ADDITIONAL TERMS APPLICABLE TO SECURE SERVER IDs, GLOBAL SERVER IDs, AND CONTENT-SIGNING CERTIFICATES

In addition to the terms set forth in Schedule K, the following terms shall apply to Secure Server IDs, Global Server IDs, and Content-Signing Certificates.

1. Definitions.

"Secure Server ID" means a Class 3 organizational Certificate used to support SSL sessions between web browsers and web servers.

"Global Server ID" means a Class 3 organizational Certificate used to support SSL sessions between web browsers and web servers that are encrypted using strong cryptographic protection consistent with applicable export laws.

"Content Signing Certificate" means a Certificate intended for an organization to digitally sign code or other content so as to authenticate the source of the code or content and to provide assurances of integrity of this content.

"Web Host" means web host, internet service provider, systems integrator, or technology consultant.

2. Use Restrictions. You are prohibited from using your ID (i) for or on behalf of any other organization or (ii) to perform private or public key operations in connection with any domain name and/or organization name other than the submitted by you during enrollment, unless you have purchased the Shared Hosting Security Service. You are also prohibited from using your ID on more than one server at a time (unless you have purchased the SPECIFIC licensing option on the enrollment screen that permits the use of an ID on multiple servers). If you choose to display VeriSign's Secure Site Seal (the "Seal"), you must install and display such Seal only in accordance with the Secure Site Seal Licensing Agreement. This Section 2 does not apply to Content-Signing Certificates.

3. Revocation. If your organizational name and/or domain name registration and for Content-Signing Certificates only, the technical contact, change, you must immediately notify VeriSign, and VeriSign shall revoke your ID. VeriSign retains the right to revoke your ID if, within forty five (45)

RFJN0036

days of receiving an invoice from VeriSign, you do not pay the invoice. VeriSign also retains the right to revoke your ID if you have installed a Seal and fail to perform any of your obligations under the Secure Site Seal Licensing Agreement or otherwise fail to perform any other material obligations under the terms of this Agreement or in VeriSign's sole discretion, VeriSign determines that you have or may have compromised the security or integrity of the VTN.

3. Revocation. If your organizational name and/or domain name registration and for Content-Signing Certificates only, the technical contact, change, you must immediately notify VeriSign, and VeriSign shall revoke your ID. VeriSign retains the right to revoke your ID if, within forty five (45) days of receiving an invoice from VeriSign, you do not pay the invoice. VeriSign also retains the right to revoke your ID if you have installed a Seal and fail to perform any of your obligations under the Secure Site Seal Licensing Agreement or otherwise fail to perform any other material obligations under the terms of this Agreement or in VeriSign's sole discretion, VeriSign determines that you have or may have compromised the security or integrity of the VTN.

4. Obligations Upon Revocation or Expiration. Upon expiration or notice of revocation of your ID, you shall permanently remove your ID from the server on which it is installed and shall not use it for any purpose thereafter and, if you have installed a Seal, you shall remove such Seal.

5. Third Party Service Providers. If you are purchasing a service from VeriSign that includes one or more services provided by a third party (such as website monitoring or security checking services by Keynote Systems, Inc., Qualys, Inc., or Netcraft, Inc.) or listing in a third-party directory, you hereby consent to our disclosure of your Certificate Application and enrollment information to these third party service providers and agree that they may contact you directly regarding their services. Unless otherwise stated herein, any terms and conditions for these products shall be provided to you directly by the third party service provider. VeriSign disclaims any and all warranties, refuses any and all liability, and shall not provide partial refunds for any service provided by a third party.

6. Additional Terms Applicable to Services in Connection With Secure and Global Site Services

(i) Two Day Service Guarantee (This Section only applies to the following services: Secure Site Pro, Commerce Site, Commerce Site Pro, and Code Signing Pro, and Secure Site Plus (renewals only)). VeriSign shall issue your ID within two (2) business days (excluding weekends and VeriSign-recognized holidays) after you submit your Certificate Application to VeriSign provided that you: 1) are an organization located in the United States, 2) select to pay by credit card and submit a valid credit card number, and 3) you submit a Dun and Bradstreet DUNS number and a domain name that VeriSign is able to validate through its normal validation procedures stated in the CPS ("Guarantee Period"). Business days begin and end according to Pacific Time. The first business day shall be the business day after the day you submit your Certificate Application to VeriSign. Your sole and exclusive remedy for VeriSign's failure to issue your ID within the Guarantee Period, shall be a refund of fifty percent (50%) of the retail price that you paid for your ID.

(ii) Expedite Option. This Section 6(ii) only applies to customers located in the United States purchasing, Secure Site and Secure Site Pro Certificates only. VeriSign shall issue your ID within 24 hours from the next business day (excluding weekends and VeriSign-recognized holidays) after you submit your complete certificate application to VeriSign provided that you: 1) agree to pay the fee specified in the enrollment, 2) are an organization located in the United States, 3) select to pay by credit card and submit a valid credit card number, and 4) submit a Dun and Bradstreet DUNS number and a domain name that VeriSign is able to validate through its normal validation procedures stated in the CPS ("Expedite Guarantee Period"). Business days begin and end according to Pacific Time. Your sole and exclusive remedy for VeriSign's failure to issue your ID within the Expedite Guarantee Period, shall be no charge for the Expedite fee. THIS EXPEDITE SERVICE GUARANTEE DOES NOT APPLY TO ANY OTHER VERISIGN PRODUCT OR SERVICE.

(iii) Payflow Services. If you are purchasing Commerce Site or Commerce Site Pro, you are also receiving a token that entitles you to either 12 months or 24 months, (depending on whether you select the one year or two year certificate), of VeriSign's Payflow Pro payment services, which are

subject to the terms and conditions in Schedule I. These 12-month or 24-month periods shall commence on the date the ID is issued to you.

(iv) Second ID. If you selected to pre-pay for a second ID ("Second ID") during enrollment, VeriSign shall issue you the Second ID prior to, or upon expiration of, the ID corresponding to this Agreement (and Application). Notwithstanding the foregoing, VeriSign shall retain the right to not issue the ID if, in VeriSign's sole discretion, VeriSign determines that any of the information in the Application has changed or is otherwise inaccurate. Except for Sections 6 (i) and 6 (ii) of this Schedule, the terms of this Agreement shall apply to your ID. Please note that the Keynote Service and coupons for training classes will not be supplied to you with your Second ID.

VeriSign shall send an e-mail containing the Second ID to the technical and organizational contacts listed in the Application (or as otherwise changed by you in accordance with VeriSign's standard procedures). If you desire to have different individuals assume the responsibility of the technical and/or organizational contacts for the Second ID, you must notify VeriSign at least 60 days prior to the expiration of the ID. Such notice must be in accordance with the instructions provided on the VeriSign web site.

7. Additional Terms Applicable to Services in Connection With Global Server IDs

(i) VeriSign Export Licenses. VeriSign is licensed to issue IDs, subject to the terms of VeriSign's export license agreements with the U.S. Department of Commerce, Bureau of Export Administration ("License"). VeriSign has received a retail classification for IDs under a License. VeriSign shall retain the right, at its sole discretion, to approve your Application, subject to the terms of a License.

(ii) ID. The Export Commodity Control Number for your ID is 5D002. An ID enables you to negotiate SSL or TLS sessions using 128-bit RC4 or IDEA, 56 bit DES, two-key Triple-DES encryption, or such other encryption that the U.S. Department of Commerce may permit for export in the future.

(iii) Qualified Applicant. You represent that you are eligible to receive favorable treatment under current U.S. encryption export control policy for the export of IDs and shall, therefore, be considered a "Qualified Applicant."

(iv) Geographical Restrictions. You represent that you are not located in and shall not use your ID or reside in Afghanistan (Taliban-controlled areas), Cuba, Iran, Iraq, Libya, North Korea, Sudan, Syria, and any other countries where such use is prohibited under U.S. export control regulations, under the terms of the Agreement. VeriSign will not issue you an ID if you are located in or reside in any of the above locations.

(v) Use Restrictions. Software Platform Restrictions. You must use an ID software platform ("Software") listed on the enrollment form in order to enable an SSL or TLS session with your Sever ID. If the Software is not specifically listed on the enrollment form and it is produced or sold by a United States entity ("Entity"), you are responsible for ensuring that the Entity has obtained an export license or classification that permits the Entity to export the Software from the United States before you install your ID on it.

(vi) Additional Representations. By submitting a Certificate Application for an ID, you represent that the following statements are true and warrant that such statements shall be true during the term of this Agreement:

(a) The Certificate Application has been submitted by a responsible official or representative empowered and authorized by the organization named in the Certificate Application (the "Organization") to certify that the conditions set forth in this Agreement and the Certificate Application have been, or shall be, met in full by the Organization.

(b) The Organization is eligible to obtain and utilize an ID in a manner consistent with all applicable export control laws and regulations of the United States.

RFJN0038

(c) You shall operate your computer systems on which you installed your ID ("Server") under your Effective Control. "Effective Control" means you 1) have access to all transaction data that may be transmitted over the Server, and are prepared to disclose data to a government agency in the jurisdiction where the Server is operated pursuant to a duly authorized warrant or court order or other lawful authority and 2) have authority to modify or control the Server, including the ability to disable your ID in the event that VeriSign is entitled by contract, or required by law, to terminate this Agreement, which governs use of your ID.

(d) You shall revoke your ID or Second ID (as defined in Section 6 (iv) of this Schedule) if, at any time, you no longer meet the definition of a Qualified Applicant.

8. Non-Qualified Applicants. IF YOU ARE NOT A QUALIFIED APPLICANT AS DEFINED ABOVE, YOU STILL MAY BE ELIGIBLE FOR ACQUISITION AND USE OF A GLOBAL SERVER ID. ORGANIZATIONS MAY ACQUIRE AND USE A GLOBAL SERVER ID TO THE EXTENT PERMITTED UNDER INDIVIDUALLY-APPROVED EXPORT LICENSE ARRANGEMENTS.

9. Additional Terms Applicable to Services in Connection With WTLS Server IDs or Short-Lived Server IDs

(i) Validation. You are not required to submit a common name (for example, www.verisign.com) in your certificate signing request ("CSR"). VeriSign disclaims any and all liability related to the authentication of your domain name if you do not submit a common name in your CSR.

(ii) Short-Lived WTLS Server IDs. (This section applies to customers who have purchased a Short-Lived Server ID only). Every 24 hours, VeriSign shall issue you an ID with a validity period of 48 hours, for a period of one year. Upon revocation of the Short-Lived WTLS Server ID, the service will end and you will no longer receive new Certificates every 24 hours.

10. Additional Terms Applicable to Services in Connection With Content-Signing Certificates

(i) Use Restrictions. Section 2 of this Schedule shall not apply to Content-Signing Certificates. Instead, this Section 9 (i) shall apply to Content-Signing Certificates. You are prohibited from using your ID (i) for or on behalf of any other organization, (ii) on more then one machine at a time, (iii) to distribute malicious or harmful content of any kind or content that otherwise has the effect of inconveniencing the recipient of such content, (iv) for any purpose other than its intended use, (v) and transferring control or permitting access to the private key corresponding to the public key in the ID to anyone other then the technical contact provided for at the time of enrollment.

(ii) Additional Requirements for Verification. VeriSign shall issue an ID only after VeriSign has communicated directly over the telephone with the Corporate Contact provided at the time of enrollment. If VeriSign is unable to speak with the Corporate Contact, it is the responsibility of the Corporate Contact to contact VeriSign at the callback number provided by VeriSign. Your failure to callback in a timely manner may delay the validation and approval of your ID Application.

(iii) Authenticode Certificate Limitations. (This Section only applies to customers who have purchased a Content-Signing Certificate pursuant to the Microsoft Authenticode program.) You hereby makes the following software publisher's pledge to all users and VeriSign concerning software that the software publisher digital signs with a private key corresponding to the public key contained in a certificate: In addition to the other representations, obligations, and warranties contained or referenced in the Certificate Application, you represent and warrant that you shall exercise reasonable care consistent with prevailing industry standards to exclude programs, extraneous code, viruses, or data that may be reasonably expected to damage, misappropriate, or interfere with the use of data, software systems, or operations of the other party. This software publisher's pledge is made exclusively by you. VeriSign shall not be held responsible for the breach of such representations and warranties by you under any circumstance. The decision of VeriSign shall be final as to whether or not (i) a software publisher materially breached this software pledge, and (ii) any responsive actions taken (or not taken) by VeriSign were necessary

and appropriate.

11. Additional Terms Applicable to End-User Subscribers Receiving Secure Server IDs and Global Server IDs Through Web Hosts

(i) Your Web Host has applied for an ID on your behalf, which your Web Host will use to provide certain security for your website. By allowing your Web Host to use this ID, you are agreeing to be bound by the terms of this Agreement and Sections 6 and 7 of this Schedule (for Global Server ID customers only). If you do not agree to the terms of the Agreement and Sections 1 through 7 of this Schedule (where Section 7 of this Schedule applies only to Global Server ID customers), please contact VeriSign immediately at +1 650-426-3400 and VeriSign will revoke your ID.

(ii) Authorization. You represent that your Web Host is authorized, as your agent, to apply for, accept, install maintain, and if necessary, initiate revocation of your ID, all on your behalf.

12. Additional Terms Applicable to Services in Connection With Secure Site ISPs

(i) Customer Information. You shall promptly communicate the Agreement and Sections 1 through 7 of this Schedule (where Section 7 of this Schedule applies only if you are requesting a Global Server ID for your Customer) to your Customer.

(ii) Authorization. You represent that you are the organization you entered in the account name in the enrollment screen and are authorized, as Customer's agent, to apply for, accept, install maintain, and if necessary, initiate revocation of Customer's ID, all on Customer's behalf.

13. Additional Terms Applicable to Services in Connection With Shared Hosting Security Services

(i) Revocation. If your organizational name and/or domain name registration change, you must immediately notify VeriSign, and VeriSign shall revoke your shared hosting encryption ID ("Shared ID") and Customers' Silver Seals (as defined in Section 13 (i) of this Schedule). VeriSign also retains the right to revoke your Shared ID and your Customers' Silver Seals if you use your Shared ID and/or your Customers' Silver Seals on behalf of more Customers than you have paid to use them for, or otherwise fail to perform any other material obligations under the terms of the Agreement or in VeriSign's sole discretion, VeriSign determines that you have or may have compromised the security or integrity of the VTN.

(ii) Obligations Upon Revocation or Expiration. Upon expiration or notice of revocation of your ID, you shall permanently remove your ID and, where applicable, any of your Customers' Silver Seals from the server on which they are installed and shall not use them for any purpose thereafter.

14. Additional Terms Applicable to Services in Connection With Shared ID Web Hosts

(i) Customer Information. You shall promptly communicate a code used to identify a Customer ("Code") and, where applicable, the Silver Secure Site Seal ("Silver Seal") enrollment page ("Enrollment Page") to Customer. The Enrollment Page is located in your web host account. If you are hosting web pages on behalf of your Customer, you shall promptly communicate the Agreement and Sections 12 and 14 of this Schedule, which is located at <http://www.verisign.com/repository/isp.html.

(ii) Authorization. You represent that you are the organization you entered in the account name above and are authorized, as Customer's agent, to use your Shared ID to enable SSL between your Customers' website(s) and their customers, all on your Customers' behalf.

(iii) Use Restrictions. You are prohibited from using your Shared ID (i) for or on behalf of any other organization or to perform private or public key operations in connection with any domain name and/or organization name other than your Customers that you have submitted the Code and, where applicable, the Enrollment Page to and been issued and installed a Silver Seal on their

RFJN0040

website(s) or (ii) on more than one server at a time.

(iv) Reporting, Inspections, and Audits. You shall monitor, record, and keep reports of the number of Customers on whose behalf you are using your Shared ID, to whom you submitted the Code, and, where applicable, to whom you submitted the Enrollment Page. You shall provide VeriSign with a copy of such reports upon VeriSign's reasonable request. In the event that the number of such Customers is greater than the number of Customers you paid for during enrollment ("Additional Customers"), you shall also pay VeriSign for the Additional Customers at VeriSign's then-current fees.

VeriSign shall also have the right to inspect, during normal business hours and at VeriSign's expense, your procedures for tracking and records related to your obligations under this Section. You shall cooperate with such inspections, which shall be conducted no more frequently than twice annually.

15. Additional Terms Applicable to Services in Connection With Shared ID End Users

(a) Your Web Host has applied for a VeriSign Shared ID to enable secure sockets layer sessions ("SSL") between you and your customers on your behalf. If you do not agree to the terms of this Agreement, please contact VeriSign immediately at 1-650-426-3400.

(b) Authorization. You represent that your Web Host is authorized, as your agent, to apply for, accept, install maintain, and if necessary, initiate revocation of the ID, all on your behalf.

(c) Revocation. VeriSign retains the right to revoke the Shared ID if your Web Host does not pay all applicable fees within forty five (45) days from the date VeriSign issues the Web Host an invoice. VeriSign also retains the right to revoke the Shared ID if you fail to perform any other material obligations under the terms of this Agreement or in VeriSign's sole discretion, VeriSign determines that you have or may have compromised the security or integrity of the VTN.

(d) Obligations Upon Revocation or Expiration. Upon expiration or notice of revocation of your Shared ID, you shall ensure that your Web Host shall not use the Shared ID to enable SSL sessions between you and your customers thereafter.

16. Additional Terms Applicable to Services in Connection With Gold and Silver Secure Site Seal End Users

"Silver Secure Site Seal," "Gold Secure Site Seal," or "Seal" shall mean a seal provided by VeriSign under this Seal Agreement that shall enables a visitor to your web site to link to a web page at VeriSign's web site, which shall display certain authentication information related to the organizational and domain listed in the Seal and the Web Host listed in the corresponding Shared ID.

Authorization. For Web Hosts only. You represent that you are the organization you entered in the account name and are authorized, as Customer's agent, to apply for, accept, install, maintain, and if necessary, initiate revocation of the Seal, all on your Customers' website(s) on your Customers' behalf. Silver Secure Site Seal end users are not permitted to use a Gold Secure Site Seal.

License. VeriSign grants to you a nonexclusive, non-transferable license during the term of this Seal Agreement to: (a) download and install a single copy of the Seal on your computer system in accordance with the Seal Installation Instructions (http://www.verisign.com/seal/secure/install.html), (b) display the Seal only on a web page owned by you, or that you are authorized to operate on behalf of your Customer, with the same domain name as the domain name in your Application, (c) use the Seal solely for the purpose of identifying the web site associated with the same domain name as the domain name in your Application, and (e) reproduce the Seal only from electronic files and in accordance with

instructions provided to you by VeriSign.

Revocation. If your organizational name and/or domain name registration change, you must immediately notify VeriSign, and VeriSign shall revoke your Seal. VeriSign also retains the right to revoke your Seal if your Web Host use your Seal on behalf of more Customers than your Web Host has paid to use them for, or you or Your Web Host otherwise fails to perform any other material obligations under the terms of this Agreement or in VeriSign's sole discretion, VeriSign determines that you have or may have compromised the security or integrity of VeriSign's Public Certification Services.

License Restrictions.

Authorization. If you are a Web Host and are hosting web pages, hosting the Seal, and/or ordering the Seal on behalf of your customer, you represent that you are authorized to apply for, accept, install maintain, and if necessary, initiate revocation of the Seal, all on your customer's behalf. If your Web Host is hosting web pages, hosting the Seal, and/or ordering the Seal on your behalf, you represent that your Web Host is authorized, as your agent, to apply for, accept, install, maintain, and/or if necessary, initiate revocation of the Seal, all on your behalf.

Intellectual Property Use Restrictions. You shall not copy, sell, rent, lease, transfer, assign, or sublicense the Seal, in whole or in part. You shall not alter the Seal in any way, including but not limited to skewing; modifying the color, size, pattern, and fonts; and separating logo elements, copyright, and trademark indicators. You shall take no action that will interfere with or diminish VeriSign's rights in the Seal. You shall not use the Seal in any way as an endorsement, or to suggest an endorsement by VeriSign of your web site, content, products, services, or otherwise. This provision shall survive termination or expiration of this Schedule or the Agreement.

VeriSign's Limited Warranties. VeriSign warrants to you that at the time it provides the Seal hereunder: (a) VeriSign originated no material misrepresentations of fact in Seal, (b) VeriSign introduced no errors in the information in the Seal as a result of a failure to exercise reasonable care in creating the Seal and (c) VeriSign has confirmed that your organization and domain name and certain other Application Information are consistent with information contained in third party databases.

17. Survival. In the event the Agreement or this Schedule expires or terminates, Sections 1, 2, 4, 7(iv), 12(ii) and 14(c) of this Schedule shall survive such expiration or termination.

## SCHEDULE M TO VERISIGN SERVICE AGREEMENT

QUALYSGUARD SERVICE

1. QualysGuard™ Service. Upon your submission of your company IP addresses and domain names and acceptance of the terms and conditions of this Agreement, you will be entitled to use the QualysGuard Service in accordance with the terms of this Agreement. VeriSign reserves the right to change the QualysGuard Service from time to time, as requested by Qualys Inc. ("Qualys") and VeriSign will notify you of any material changes or updates to the QualysGuard Service, which may effect you, in accordance with the terms in the Agreement. You agree to notify VeriSign immediately in writing of any changes in the IP addresses and/or domain names that you have provided to VeriSign. You also must notify VeriSign in writing if you desire to increase the number of IP addresses or domain names to be tested under the QualysGuard Service.

2. Upon VeriSign's receipt of your IP addresses and domain names, you will be registered and receive a user name and password for the QualysGuard Service. You will be responsible for keeping your user name and password confidential. You shall notify VeriSign immediately upon learning of any unauthorized use of your user name or password. Neither VeriSign nor Qualys will protect you from the unauthorized use of your user name and password. You will be responsible for all activities and charges incurred through the use of your user name and password, and will indemnify and hold harmless



VeriSign and Qualys for any claims, liability, damages, losses, and costs (including reasonable attorneys' fees) relating to or arising from the unauthorized use of your password.

3.  Grant of Rights. Subject to the terms and conditions of this Agreement, VeriSign grants you a limited, non-exclusive, non-transferable right to access the QualysGuard Service's user interface and to reproduce solely for your own internal business purposes the electronic reports summarizing the results of the scanning and mapping functions of the QualysGuard Service once launched on the IP addresses and/or domain names identified by you (the "Reports").

4.  Restrictions on Use of the QualysGuard Service and Reports. The rights granted to you in Section 3 above are subject to the following restrictions:

a. VeriSign will not provide you the QualysGuard Service to analyze a third party's IP addresses, domain names, or networks. Therefore, you may not rent, lease, or loan the QualysGuard Service, or any part thereof, or provide or use the QualysGuard Service on behalf of a third party; nor may you permit third parties to benefit from the use or functionality of the QualysGuard Service via timesharing, service bureau arrangements, or otherwise.

b. While there is no software transfer necessary from VeriSign to you to effectuate the QualysGuard Service, you agree not to reverse engineer, decompile, or disassemble any software that provides the QualysGuard Service, or otherwise attempt to derive the processes by which the QualysGuard Service is provided or the Reports are generated, except to the extent the foregoing restriction is expressly prohibited by applicable law.

5.  Payment. You shall be obligated to pay VeriSign, as indicated on VeriSign's website, the fees attributable to the number of IP addresses and/or domain names provided to VeriSign. The fees applicable shall change if you add IP addresses and/or domain names in the manner described in Section 1 above. VeriSign reserves the right to change its pricing for the QualysGuard Service at any time; provided, however, that any prices set forth in a Purchase Order accepted by VeriSign prior to such change will remain unaffected. You may also opt for an introductory offer option that will give you a limited right to use the QualysGuard Service upon payment of the fee for the introductory offer. The introductory offer option(s) are not renewable.

6.  Third Party Beneficiary. Qualys, Inc. is an intended third party beneficiary to these terms and conditions relating to the QualysGuard Service and as such may assert its rights as the licensor and service provider to VeriSign and you hereunder.

7.  Support. VeriSign will not provide and is not responsible for technical support of any kind to you for the QualysGuard Service. Upon your request, Qualys may provide technical support to you.

8.  Term and Termination. The initial term of any subscription to the QualysGuard Service shall be for the period specified in the applicable Purchase Order or on the VeriSign Web Site, commencing on the date you receive your user name and password from VeriSign or Qualys. Except in the case of an introductory offer subscription, the subscription will automatically be extended for successive renewal terms of one-year each if you pay the fees for the renewal term at least thirty (30) days before the expiration of the then current term. Depending on the introductory offer option you select, the term of the introductory offer will either be seven (7) days or two (2) months. Buyer may terminate this Agreement and receipt of the Service at any time upon thirty (30) days' advanced written notice to Authorized Reseller for any reason. If Buyer terminates the Agreement for convenience as set forth above, Buyer will not receive any refund or credit for any unused portion of the subscription to the Service. Either party may terminate this Agreement upon thirty (30) days' prior written notice if the other party materially breaches a provision of this Agreement. Upon termination or expiration, all rights granted hereunder terminate and Buyer must cease all use of the Service, including any downloads of the Reports. Sections 2, 4, 6, 8, 9 and, 10 of this Schedule will survive any termination or expiration of the Agreement or this Schedule.

9. Identification of IP Addresses.

a.  Because of the sensitive nature of performing security checks on IP addresses,

you represent and warrant that you have full right, power, and authority to consent to have the QualysGuard Service test for vulnerabilities ("scan") in the IP addresses and/or domain names provided to VeriSign and Qualys. Without limiting any other remedy that VeriSign and / or Qualys may have, you agrees to indemnify and hold VeriSign and / or Qualys harmless from and against any and all liabilities, losses, damages, costs, and expenses, including without limitation reasonable attorneys' fees and costs, incurred by VeriSign and / or Qualys resulting from your breach of this Section 11(a).

b.  You also acknowledge and agree that the scanning of such IP addresses and/or domain names may in some circumstances result in the disruption of services at such site(s). Consequently, you agree that it is your responsibility to perform backups of data on all devices connected to your IP addresses and/or domain names prior to invoking the use of the QualysGuard Service. You further assume the risk for all damages, losses, and expenses resulting from use of the QualysGuard Service, and VeriSign and Qualys shall not be liable for aforementioned disruptions.

10. You acknowledge and agree that Qualys shall be deemed a "contractor" for purposes of your indemnification obligations under the Agreement.


## SCHEDULE J TO VERISIGN SERVICE AGREEMENT

### WEB SITES FROM VERISIGN

1. Definitions. For purposes of this Schedule, the following capitalized terms shall have the meanings ascribed to them below:

(a) "VeriSign Web Site" means any pre-designed, customizable VeriSign Web site template licensed by VeriSign to end users.

(b) "Starter Web Site" means a one-page VeriSign Web Site.

(c) "Subscription Service" means any of the VeriSign subscription service packages that are available for purchase by end users on a monthly basis, for a monthly fee, that combine the VeriSign Web Site license, the Web Site Manager Service and the Web Hosting Service, all as described on the VeriSign Web site located at the URL verisignwebsites.com. The Subscription Service does not include Starter Web Sites.

(d) "Website Manager Service" means the VeriSign on-line tool that allows customers to access their VeriSign Web Site, add/modify content, upload images and make generic changes to their VeriSign Web Site.

(e) "Web Hosting Service" means the Web hosting services provided by a third party through VeriSign as part of a Subscription Service.

2. Payment. In addition to the payment terms in Section 3 of the Agreement, the following provisions shall also apply solely with respect to the Subscription Service:

(a) VeriSign, in its sole discretion, shall determine the prices it will charge for the Subscription Service, and the terms and conditions applicable to the same, and VeriSign may, upon providing thirty (30) days' notice to you, amend such pricing and/or terms and conditions. If you do not agree to the change(s), you may terminate your Subscription Service as provided herein within that thirty (30) days; otherwise all such changes shall thereafter be effective with respect to your account, and you agree that we are authorized to charge your credit card for the new monthly

RFJN0044

Subscription Service fee.

(b) Billing for the VeriSign Web Site license shall be by valid credit card (acceptable to VeriSign) at the time of purchase. If you elect to subscribe to the Website Manager Service, your monthly payments for the same will be automatically charged to the credit card provided by you (and acceptable to VeriSign) at the time of your purchase (with such payments being charged in advance on a monthly basis) ("Monthly Website Manager Service Fee"), and you hereby agree that VeriSign is authorized to so charge your credit card. VeriSign, in its sole discretion, shall determine the prices it will charge for the VeriSign Web Site license or the Website Manager Service, and the terms and conditions applicable to the same, and VeriSign may, upon providing thirty (30) days' notice to you, amend such pricing and/or terms and conditions. If you do not agree to the change(s), you may terminate this Agreement (or cancel your Website Manager Service subscription, as applicable) as provided herein within that thirty (30) days; otherwise all such changes shall thereafter be effective with respect to your account, and you agree that we are authorized to charge your credit card for any new monthly Website Manager Service fee.

3. Charges for Excess Hosting Space Usage. If you are purchasing a Starter Web Site or a Subscription Service, the amount of hosting space included with your purchase shall be as set forth on our web site located at the URL www.verisignwebsites.com (the "Maximum Hosting Space"). You agree that in the event you exceed the Maximum Hosting Space, VeriSign may, in its sole discretion, (i) charge you, and you agree to pay, an overage fee for any such excess usage as set forth on the www.verisionwebsites.com web site; or (ii) terminate your Starter Web Site and/or Subscription Service (as applicable), and all related services.

4. Conduct. You agree to be bound by the applicable provisions of the VeriSign Acceptable Use Policy, incorporated herein and made part of this Agreement by reference, in connection with your use of the services described in this Schedule.

5. Cancellation. You may cancel your subscription to the Website Manager Service at any time. To cancel your subscription to the Website Manager Service you must submit your written notice of cancellation to VeriSign (as provided herein) and include the following information: (i) Your VeriSign customer identification number and username; (ii) your VeriSign Web Site Web address; and (iii) your reason for requesting cancellation. Unless otherwise agreed to in writing (in either paper or electronic form), your Website Manager Service will be canceled as of the expiration of the monthly billing cycle in which your notice was received.

6. Term and Termination.

(a) Term. Your Subscription Service shall be on a month-to-month basis for successive monthly periods, unless either party notifies the other of termination in accordance with this Agreement.

(b) Notice of Service Cancellation by You. Unless terminated earlier as provided herein, this Schedule, and the Agreement if you have no other services with VeriSign, will be terminated as of the cancellation of your Subscription Service and Website Manager Service.

(c) Survival. In the event of expiration or termination of this Schedule or the Agreement for any reason, Sections 1 and 6of this Schedule shall survive.

## SCHEDULE N TO VERISIGN SERVICE AGREEMENT

### SURELIST[SM] SERVICE

We may provide you an opportunity through our SureList service to have your website included in the search index of one of our third party vendors (for purposes of this paragraph, the "Index Servicer"). At the time of purchase, the URL submitted by you (the "URL") will be provided to the

Index Servicer for submission in its search database. The Index Servicer will then periodically search various content of your website and include such content in the search index. The index may be searched by the Index Servicer's search partners. You may submit corrections or changes to the URL during the first thirty (30) days after your purchase of the SureList service, after which time period no further changes to the URL will permitted. You acknowledge and agree that the Index Servicer is responsible for maintaining the index and keeping it current. We bear no responsibility or liability for the operation, maintenance and functioning of the index or for the service described in this paragraph. You further acknowledge that in order for the Index Servicer to include your website in its search index, your website must be technically compatible with the the Index Servicer search tool. At a minimum, in order to be technically compatible: (a) your website address must not contain formatting errors (i.e., (b) your website must be operational (i.e., it may not be "under construction" and it may not generate error messages such as "file not found"); (c) your website must contain visible text and be accessible without a password or similar restriction; and (d) your website must permit so-called "spidering" technology. We and/or the Index Servicer, in our sole discretion, may remove a website from the search index for any reason, including, but not limited to, the following: (a) fraudulent or illegal use of the service; (b) the potential infringement of the rights of a third-party; (c) in response to a court order or other judicial or governmental request or action; and/or (d) the posting of content or the offering of products or E-Commerce Services that may be or are illegal (e.g., if either we or the Index Servicer receives a notice of an act of copyright infringement in compliance with the notice requirements of the Digital Millennium Copyright Act of 1998). You expressly agree (a) that we will not be responsible for the operation, maintenance or functioning of the index and the search service or any delays or failures to perform; and (b) that we do not represent or warrant that your website or address will (i) achieve favorable placement, or any placement, within the search index, or (ii) experience increased visits, or any visits, as a result of placement in the search index.

## SCHEDULE R TO VERISIGN SERVICE AGREEMENT

### CHANGE OF REGISTRAR SERVICE

1. In addition to the terms in Schedule A (and the other applicable Schedules, if any, of the Agreement), the terms of this Schedule shall apply to all applications for a change of registrar to VeriSign. This Schedule to the Agreement is submitted for the purpose of applying to change the registrar of record of a domain name to Network Solutions, Inc., a VeriSign company. The term "domain name" refers to the domain name identified in your Change of Registrar Application. The term "updated registrant" refers to the person or entity identified as the updated registrant in your Change of Registrar Application, if any.

2. You represent and warrant that: (a) the information provided to VeriSign in connection with your application is accurate and complete; (b) you are the rightful holder of the registration for the domain name; (c) the registrar of record for the domain name as of the date of this request is the current registrar; (d) you are not in default on any obligations you may owe to the current registrar; (e) you are not the subject of any pending bankruptcy proceedings; (f) you are not party to any dispute resolution proceeding concerning your use or registration of the domain name; (g) you are not in default on any obligations you may owe to VeriSign; (h) the domain name is not the subject of any collection proceedings, including garnishment, attachment, levy or otherwise. The individual submitting this request represents and warrants that he/she is authorized to request a change of registrar and to apply for our registrar services.

3. You request that we provide registrar services for the domain name. In furtherance of your request, you have applied for our registrar services. We will have no responsibilities as registrar of the domain name unless and until we send you or the updated registrant, as appropriate, notice of acceptance of the Application.

4. You authorize us to take all actions necessary to become the registrar for the domain name, including transmitting to the appropriate Registry a request to change the Registry database to reflect Network Solutions as the registrar of record. You acknowledge and agree that we shall not

RFJN0046

be responsible for any legal obligations you may owe to any third party, including the current registrar. You further acknowledge and agree that you are not entitled to a credit from us for any sums you may have paid the current registrar. You agree to release, indemnify, and hold us and our contractors, agents, employees, officers, directors and affiliates harmless from all liabilities, claims and expenses, including attorneys fees, of third parties arising under this Agreement.

## SCHEDULE S TO VERISIGN SERVICE AGREEMENT

### ADDITIONAL TERMS APPLICABLE TO SUPERSTATS, COUNTER, BROADSERVER, EZ POLLS AND GUESTBOOK SERVICES -- PURCHASED DIRECTLY FROM VERISIGN

In addition to the terms and conditions set forth on Schedule J, the following terms and conditions shall apply to all SuperStats, Counter, Broadserver, EZ Polls and Guestbook services purchased directly from VeriSign. For purchases of any of these services through the MyComputer website storefront (currently located at the URL www.mycomputer.com), please see Schedule T to the Agreement. All capitalized terms used herein, and not otherwise defined, shall have the meanings set forth on Schedule J.

1. Any services referenced herein that are purchased in connection with a Subscription Service shall be included in the definition of Subscription Service for purposes of the terms and conditions set forth in Schedule J.

2. Use of Information. You acknowledge and agree that we may (but are not obligated to) collect, store, use and/or publish information regarding, and data related to, your VeriSign Web Site, including, but not limited to, your domain name, URL and traffic counts. Possible uses of such information include, but are not limited to, marketing, the development and distribution of lists concerning traffic patterns of (or visits to) web sites and VeriSign member web sites and for other general commercial purposes. Use of any personally identifiable information will be in accordance with VeriSign's Privacy Policy.

3. Page View Limits. The SuperStats and Counter services are limited to One Hundred Thousand (100,000) page views per account per month. All VeriSign Web Site accounts exceeding such limit are subject to cancellation without notice.

4. Cancellation of Your VeriSign Web Site. Any termination of your VeriSign Web Site Subscription Service will result in the termination of your SuperStats, Counter, Broadserver, EZ Polls and/or Guestbook services, if applicable, and this Schedule S, at the expiration of the monthly billing cycle in which your cancellation notice was received and processed by VeriSign.

## SCHEDULE T TO VERISIGN SERVICE AGREEMENT

### ADDITIONAL TERMS APPLICABLE TO SUPERSTATS, WATCHDOG, COUNTER, SUBMITWIZARD, SITEMINER, BROADSERVER, EZPOLLS AND GUESTBOOK SERVICES PURCHASED FROM THE MYCOMPUTER STOREFRONT

The following additional terms and conditions shall apply to the SuperStats, WatchDog, Counter, SubmitWizard, SiteMiner, BroadServer, EZpolls and GuestBook services purchased from the MyComputer Storefront. For purchases of any of these services directly through VeriSign, please see Schedule S to the Agreement.

1. Definitions. "MyComputer Storefront" as used herein shall mean the website owned or operated

RFJN0047

by MyComputer.com, Inc. at the URL www.mycomputer.com,

or its successor URL, through which an Internet user is able to apply for the services referenced in this Schedule.

2. Use of Information. You acknowledge and agree that we may (but are not obligated to) collect, store, use and/or publish information regarding, and data related to, your VeriSign Web Site, including, but not limited to, your domain name, URL and traffic counts. Possible uses of such information include, but are not limited to, marketing, the development and distribution of lists concerning traffic patterns of (or visits to) web sites and VeriSign member web sites and for other general commercial purposes. Use of any personally identifiable information will be in accordance with VeriSign's Privacy Policy.

2. Page View Limits. The SuperStats and Counter services are limited to One Hundred Thousand (100,000) page views per account per month. All accounts exceeding such limit will be charged an overage charge as set forth on the MyComputer Storefront.

3. Registration and Billing.

    a.   To receive the SuperStats, WatchDog, Counter, SubmitWizard, SiteMiner, BroadServer, EZpolls and/or GuestBook services you must submit and maintain on file with MyComputer.com certain registration data as requested by the MyComputer, Inc. online registration form for such services. Such registration data shall include, but not be limited to, your name, address, email address, website URLs, credit card number and other billing information. You must submit a separate online activation request for each service you are subscribing to. VeriSign reserves the right, in its sole discretion, to refuse any registration or Service activation request for any reason or no reason. You represent that the registration information you supply to VeriSign is true, complete and accurate. By submitting any information, you authorize VeriSign to use such information in accordance with its privacy policy www.netsol.com/en_US/legal/privacy-policy.jhtml.

    b.   You acknowledge that MyComputer, Inc. will bill you for all services you purchase.

    c.   If you become a registered user of the MyComputer website, you will receive a password for accessing your account information. You are responsible for maintaining the confidentiality of your password and account and are fully responsible for all activities that occur using your password or account. Please notify us immediately of any unauthorized use of your password or account or any other breach of security. VeriSign and/or MyComputer is not liable for any loss that you may incur as a result of any third-party's use of your password or account.

4. Third-Party Beneficiary. For purposes of Section 3 of this Schedule T, MyComputer, Inc. is an intended third-party beneficiary.

## SCHEDULE U TO VERISIGN SERVICE AGREEMENT

### Registrant Name Change Agreement

1. The following additional terms and conditions (the "Registrant Name Change Agreement" or "RNCA") apply to any change of the registrant (account holder's) name for a second-level domain name ("Registrant Name Change"), and, unless specifically noted otherwise below, apply to you whether you are listed as the registrant before the change (the "Current Registrant") or after the change (the "New Registrant"). The domain name for which this RNCA is being processed shall be referred to in this Schedule as the "Domain Name." The RNCA shall not be effective until both the Current Registrant and the New Registrant have indicated their agreement to the terms and

RFJN0048

conditions of the Agreement (which includes the terms and conditions of this Schedule). Nothing contained in this Schedule shall be construed as an assignment of the Current Registrant's rights under the Agreement. As used in this Schedule (as in the General Conditions), the word "Agreement" shall mean the VeriSign Service Agreement of which this Schedule is a part.

2. **The terms in this section apply only to the Current Registrant.** You agree that you and VeriSign are currently parties to the Agreement for the registration of the Domain Name(s). You hereby relinquish your registration of the Domain Name(s) and discharge VeriSign from all obligations under the Agreement, and you release VeriSign from all claims, liabilities or demands arising from the Agreement. You further acknowledge and agree that you are not entitled to a refund of any fees you may have paid to VeriSign. You hereby authorize VeriSign to take all steps necessary to register the Domain Name(s) to the New Registrant, including without limitation, disassociating the Domain Name(s) from the host servers designated by you without further notice. You represent and warrant that you possess the authority to legally bind the Current Registrant of the Domain Name(s) being transferred.

3. **The terms in this section apply only to the New Registrant.** You acknowledge that you have reviewed and you understand the terms, conditions, representations and warranties of the Agreement in effect as of the date of your application to become the New Registrant. By applying for this Registrant Name Change, you agree to be bound by and to perform in accordance with the terms and conditions of the Agreement, which includes VeriSign's current Domain Name Dispute Policy. You also reaffirm the accuracy and completeness of all of the information submitted for the Registrant Name Change. Your registration of the domain name shall be effective upon VeriSign's transmission of an acknowledgement to you that the Domain Name(s) has been registered to the New Registrant. You agree to pay VeriSign the RNCA processing fee set forth on our Web site or the Priority Service RNCA processing fee, based upon your selection made during the application for this Registrant Name Change, by providing appropriate credit card information as requested. You represent and warrant that you possess the authority to legally bind the New Registrant of the domain name being transferred. You acknowledge and agree, that unless you apply for additional registration years for the Domain Name(s), the term of your registration of the Domain Name(s) will be equal to the remaining term of the Current Registrant at the time of the Registrant Name Change.

Review our Privacy Policy, Service Agreement, Legal Notice and Disclaimer © Copyright 2003 Network Solutions, Inc. All rights reserved.

RFJN0049