PILLSBURY WINTHROP SHAW PITTMAN LLP
SHERI FLAME EISNER #162776
sheri.eisner@pillsburylaw.com
DAVID L. STANTON #208079
david.stanton@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

PILLSBURY WINTHROP SHAW PITTMAN LLP
JOHN M. GRENFELL #88500
john.grenfell@pillsburylaw.com
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

Attorneys for Defendant
NETWORK SOLUTIONS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DOE, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NETWORK SOLUTIONS, LLC,<br><br>Defendant. | No. C 07-5115 JSW<br><br>**DEFENDANT NETWORK SOLUTIONS, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3), OR IN THE ALTERNATIVE TO TRANSFER PURSUANT TO 28 U.S.C. § 1406(a), FOR IMPROPER VENUE**<br><br>Judge: Hon. Jeffrey S. White<br>Date: January 25, 2008<br>Time: 9:00 a.m.<br>CrtRm: 2 |

**TABLE OF CONTENTS**

I. INTRODUCTION. ................................................................................................... 1

II. PLAINTIFF HAD NOTICE AND CONSENTED TO THE FORUM CLAUSE .................................................................................................................. 3

III. PLAINTIFF'S CLAIMS ALL RELATE TO THE SERVICE AGREEMENT AND ARE GOVERNED BY THE FORUM SELECTION CLAUSE ..................... 5

IV. THE FORUM SELECTION CLAUSE IS BINDING DESPITE CLASS ACTION ALLEGATIONS .................................................................................... 6

V. PLAINTIFF HAS FAILED TO MEET HIS HEAVY BURDEN TO PROVE AN EXCEPTION TO ENFORCEMENT APPLIES ................................................ 7

   A. Enforcing the Forum Clause Will Not Deprive Plaintiff of His Day in Court. ......................................................................................................... 7

   B. The Forum Selection Clause Does Not Contravene Public Policy ................ 8

VI. ALTERNATIVELY, THIS COURT SHOULD TRANSFER TO VIRGINIA ....... 10

VII. CONCLUSION. ..................................................................................................... 11

**TABLE OF AUTHORITIES**

Cases

Argueta v. Banco Mexicano,
    87 F. 3d 320 (9th Cir. 1996) .................................................................................. 9

Bader v. International Vacations, Ltd.,
    Case No. CV-05-6958 SVW (RCx) (C.D. Cal. 2006) .......................................... 2, 5, 6

Barnett v. Network Solutions, Inc.,
    38 S.W.3d 200 (2001) ........................................................................................... 9

Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc.,
    2002 U.S. Dist. LEXIS 4406, at *14-15 (N.D. Cal. Mar. 12, 2002)
    rev'd on other grounds, 328 F.3d 528 (9th Cir. 2003) ..................................... 5

Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.,
    452 F. Supp 2d 924 (N.D. Cal. 2006) .................................................................. 6

Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,
    709 F.2d 190 (3d Cir. 1983) ................................................................................. 5

Decker Coal Co. v. Commonwealth Edison Co.,
    805 F.2d 834 (9th Cir. 1986) .............................................................................. 10

DeJohn v. The TV Corp. Int'l,
    245 F. Supp. 2d 913 (N.D. Ill. 2003) ................................................................... 3

E. & J. Gallo Winery v. Andina Licores S.A.,
    440 F. Supp. 2d 1115 (E.D. Cal. 2006) ............................................................... 9

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 5

Feldman v. Google, Inc.,
    No. 06-2540, 2007 U.S. Dist. LEXIS 22996, at *18 (E.D. PA 2007) ................... 4

Flake v. Medline Indus. Inc.,
    822 F. Supp. 947 (E.D. Cal. 1995) ..................................................................... 10

Gamer v. duPont Glore Forgan, Inc.,
    65 Cal. App. 3d 280 (1976) .................................................................................. 8

Hotmail Corp. v. Van$ Money Pie Inc.,
    Case No. C9820064 JW, 1998 U.S. Dist. LEXIS 10729 (N.D. Cal.
    April 16, 1998) ...................................................................................................... 3

M/S Breman v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972) ................................................................................... 3, 7, 9, 10

Manetti-Farrow, Inc. v. Gucci Am. Inc.,
    858 F.2d 509 (9th Cir. 1988) ................................................................................ 5

Marootian v. N.Y. Life Ins. Co.,
   No. CV-99-12073 CAS (MCx), 2001 U.S. Dist. LEXIS 22274, *30-32
   (C.D. Cal. Dec. 3, 2001) .................................................................................... 9

Medimatch, Inc. v. Lucent Techs., Inc.,
   120 F. Supp. 2d 842 (N.D. Cal. 2000) ................................................................ 9

Modius, Inc. v. PsiNaptic, Inc.,
   2006 U.S. Dist Lexis 28862, at *20-21 (N.D. Cal. May 2, 2006) ...................... 5

Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC,
   No. 02 Civ. 0767 (LBS), 2003 U.S. Dist. LEXIS 21858, at *5
   (S.D.N.Y. Dec. 4, 2003) ..................................................................................... 7

Net2Phone, Inc. v. Super. Ct.,
   109 Cal. App. 4th 583 (2003) ......................................................................... 3, 8

Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc.,
   795 F.2d 1501 (9th Cir. 1986) ............................................................................ 4

Palmco Corp. v. JSC Techsnabexport,
   448 F. Supp. 2d 1194 (C.D. Cal. 2006) ............................................................ 10

Royal Queentex Enters. v. Sara Lee Corp.,
   No. C 99-4787 MJJ, 2000 U.S. Dist. LEXIS 10139, at * 2 (N.D. Cal.
   March 1, 2000) .................................................................................................. 10

Shute v. Carnival Cruise Lines,
   897 F.2d 377, 388 n.9 (9th Cir. 1990) rev'd on other grounds, Carnival
   Cruise Lines v. Shute, 499 U.S. 585, 594-95 (1991) ....................................... 10

Smith, Valentino & Smith, Inc. v. Super. Ct.,
   17 Cal. 3d 491 (1976) ........................................................................................ 8

Surles v. Prudential Ins. Co. of Am.,
   No. C 06-05807 WHA, 2007 U.S. Dist. LEXIS 8515, at *16-17 (N.D.
   Cal. January 19, 2007) ....................................................................................... 8

Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,
   515 U.S. 528 (1995) ........................................................................................... 7

Weingrad v. Telepathy, Inc,
   2005 U.S.Dist. LEXUS 26952 (SDNY 2005) ........................................... 2, 5, 6, 7

                            Statutes and Codes

28 U.S.C. § 1404(a) .................................................................................................. 10

28 U.S.C. § 1406(a) .......................................................................................... 3, 10, 11

                            Rules and Regulations

Federal Rule of Civil Procedure 12(b)(3) ............................................................. 3, 11

Federal Rule of Civil Procedure 12(f) ........................................................................ 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.  INTRODUCTION.

In order to do business with Network Solutions LLC ("Network Solutions" or "Defendant"), Plaintiff repeatedly, voluntarily and affirmatively agreed to a written Service Agreement. It contained an unambiguous forum selection clause that all disputes must be brought in Virginia.[1] In his Opposition, Plaintiff argues that the forum selection clause should not be enforced. As demonstrated in the Motion and below, Plaintiff is incorrect.

As described in Natalie Sterling's Declaration ("Sterling Decl."), the Motion and discussed below, Plaintiff received reasonable notice of the terms of the Service Agreement. Like all Network Solutions customers, he consented to the agreement in order to create the webmail account at issue. Sterling Decl. ¶13. The agreement was made available to him when he registered his account in October 2003, and when he renewed the account in 2004, 2005, 2006 and 2007. Id. ¶¶ 13-14. Each time, Plaintiff was able to access and had abundant opportunity to read the full Service Agreement by means of a hyperlink. Sterling Decl. ¶¶ 13-14, 17; see also Opp. at 1:7. When he registered and renewed his account, he consented to the Service Agreement by affirmatively clicking a box next to the following text: "I have read the Network Solutions Service Agreement and agree to its terms." Id. Without checking this box to indicate acceptance of the Service Agreement when he registered and renewed his account, Plaintiff would not have been able to receive any services from Network Solutions. Sterling Decl. ¶ 13-14. As discussed below, such online "click wrap" contracts are fully enforceable, whether or not the consenting party chooses to read the hyperlinked contract. Here, each enforceable Service Agreement to which Plaintiff consented contained an enforceable forum selection clause. Sterling Decl. ¶¶ 18-23.

---

[1] Plaintiff alleges the 2003 Agreement provided for some claims to be litigated under California law. This is irrelevant because each year when he renewed his account, he consented to the current Agreement, and the 2004 through 2007 versions provide for exclusive jurisdiction in Virginia. Sterling Decl. ¶¶ 20-22. Importantly, the version of the Service Agreement in effect at the time of the alleged capture, caching and publication of Plaintiff's emails in 2006 provided for exclusive jurisdiction in Virginia. Id. at ¶ 22.

1   This forum selection clause governs Plaintiff's claims because his entire Complaint ("Complaint" or "CAC") arises from and relates to the contractual relationship between the parties. Plaintiff seeks to avoid this consequence by claiming that "the service agreement is not once mentioned in the Complaint." But this is not true. The Complaint quotes identical language contained in each version of the Service Agreement in effect from October 2003 through October 2007. <u>Compare</u> CAC ¶ 9, <u>with</u> Request for Judicial Notice ("RFJN") Exhs. 1-5 at RFJN 007, 0055-56, 0091, 0133, 0225. Further, the Complaint concedes that the relationship between Network Solutions and its customers is contractual, admitting that "all Defendant's customers enter into a written agreement with Defendant." CAC ¶ 9. Plaintiff even admits in his Opposition to "contracting" with Network Solutions. Opp. at 8:11. Moreover, all of the alleged "actual" damages set forth in the Complaint arise from fees that customers paid pursuant to the Service Agreement. <u>See, e.g</u>, CAC ¶ 30; Opp. at 7:10-22. Thus, the Service Agreement is integral to Plaintiff's claims. Plaintiff's attempt to plead around the agreement by not alleging a breach of contract claim does not prevent the Court from considering or enforcing the forum selection clause. <u>See</u> Motion at 7:26-14.

    Numerous courts have previously enforced the same provision at issue in this case. <u>See</u> Motion at 5:10-22; RFJN Exhs. 10-18 <u>see also</u> Opp. at 3:22-4:18 (discussing <u>Weingrad v. Telepathy, Inc</u>, 2005 U.S.Dist. LEXUS 26952 (SDNY 2005) and <u>Bader v. International Vacations, Ltd.</u>, Case No. CV-05-6958 SVW (RCx) (C.D. Cal. 2006)). This Court should follow suit. Forum selection clauses are presumptively enforceable; the party seeking to avoid enforcement bears the heavy burden of proving that an exception applies. Motion at 9:19-13:22. As discussed below, Plaintiff's Opposition and declaration ("Doe Decl.") fail to satisfy his heavy burden. For example, he claims it would be prohibitively inconvenient to litigate in Virginia, but Virginia is where the majority of witnesses, documents and servers are located, making it the most convenient forum. He also claims enforcement of the forum selection clause contravenes California's public policy, yet California law generally favors forum selection clauses, and, in any event, enforcement of the clause in this Court is a question of federal law. Furthermore, the forum selection clause results in significant

1  economic benefits to Network Solutions' customers.  Sterling Decl. ¶ 24.  For all these
2  reasons, and as further discussed in the Motion, Defendant requests this action be dismissed
3  pursuant to Federal Rule of Civil Procedure 12(b)(3).
4  　　　　In the alternative, Network Solutions requests that the Court transfer this action to
5  Virginia pursuant to 28 U.S.C. § 1406(a).  As the Motion demonstrated, the analysis of
6  whether to transfer an action under Section 1406(a) is set forth in the seminal case of M/S
7  Breman v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).  As further described below, the
8  forum selection clause is valid and enforceable under the M/S Breman standards, the
9  Opposition fails to demonstrate otherwise, and the matter is suitable for transfer.
10 II.　　　PLAINTIFF HAD NOTICE AND CONSENTED TO THE FORUM CLAUSE
11 　　　　Plaintiff argues he should not be bound by the forum selection clause, because he
12 "never read the agreement and certainly did not read or agree to the governing law clause."
13 Opp. at 1:9-10; Doe Decl. ¶¶ 6-8.  Yet, as a matter of law, Plaintiff repeatedly received
14 reasonable notice of the terms of his Service Agreement, including the forum selection
15 clause, by means of the "click-wrap" arrangement through which it was presented to him.
16 　　　　"Click-wrap" agreements, of the type used by Network Solutions with over two
17 million online customers, are electronic contracts offered through a hyperlink, in which an
18 individual demonstrates acceptance by clicking on a box indicating that he or she has read,
19 understood, and agreed to the contractual terms.  See Sterling Decl. ¶¶ 13-15 and Ex. A.  By
20 clicking on the associated hyperlink, the individual is given access to and an opportunity to
21 review all the terms of the agreement.  DeJohn v. The TV Corp. Int'l, 245 F. Supp. 2d 913,
22 919 (N.D. Ill. 2003).  Such agreements, commonplace in online transactions, are valid and
23 enforceable.  Id. at 915-16; Hotmail Corp. v. Van$ Money Pie Inc., Case No. C9820064 JW,
24 1998 U.S. Dist. LEXIS 10729 (N.D. Cal. April 16, 1998); Net2Phone, Inc. v. Super. Ct., 109
25 Cal. App. 4th 583, 588 (2003) (finding no unfairness in a contract that must be accessed by
26 hyperlink, a common internet practice).  In particular, forum selection clauses included in
27 "click-wrap" agreements are fully enforceable.  DeJohn, 245 F. Supp. 2d at 918; Net2Phone,
28 109 Cal. App. 4th at 588.

1    Furthermore, "failure to read a contract is not a get out of jail free card [and the] same
2 rule applies to electronic contracts."  Id.; see also Operating Eng'rs Pension Trust v. Cecil
3 Backhoe Serv., Inc., 795 F.2d 1501, 1505 (9th Cir. 1986).  "Absent a showing of fraud,
4 failure to read an enforceable click-wrap agreement, as with any binding contract, will not
5 excuse compliance with its terms."  Feldman v. Google, Inc., No. 06-2540, 2007 U.S. Dist.
6 LEXIS 22996, at *18 (E.D. PA 2007).  Requiring users to "take affirmative action and click
7 the 'Yes, I agree to the above terms and conditions' button in order to proceed," provides
8 them with reasonable notice of their agreement.  Id. at *22.  Clicking on the button, or
9 checking the available box, provides the required indication of assent.  Id. at *24.

10   The Opposition implies that accessing a document via hyperlink is burdensome, yet
11 Plaintiff's declaration states that when he received a notice from Network Solutions to re-
12 register his domain name, he, "clicked on the hyper-link and reregistered that domain
13 name...[and] estimate[s] that the total re-registration process took no more than a few
14 minutes."  Doe Decl. ¶ 5.  By his own admission, Plaintiff illustrates the ease with which
15 electronic documents can be accessed by a hyperlink.  He also concedes in his opposition to
16 Defendant's motion to strike that the Service Agreement is readily available and accessible
17 online.  See Opposition to Defendant's Motion to Strike Under Federal Rule of Civil
18 Procedure 12(f) at  fn. 2 (identifying the Service Agreement "that existed, as of December
19 14, 2007, on Defendant's website," and referencing
20 http://www.networksolutions.com/legal/static-service-agreement.jsp).

21   Plaintiff's argument that he was unaware of the forum selection clause is especially
22 disingenuous insofar as he voluntarily agreed once again to the Service Agreement in
23 October 2007, after Network Solutions had filed an action against him in Virginia, providing
24 him with clear and ample notice that he was bound by a forum selection clause in this case.
25 Sterling Decl. ¶¶ 18, 23, 27; Declaration of Sheri Eisner, ¶¶ 2-7 and Ex. A.  By renewing his
26 webmail account even after the filing of the Virginia Action, Plaintiff manifested conscious
27 assent to the terms of the Service Agreement, including its unambiguous forum selection
28 clause.

600461284  – 4 –  DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
Case No. C 07-5115 JSW

III. **PLAINTIFF'S CLAIMS ALL RELATE TO THE SERVICE AGREEMENT AND ARE GOVERNED BY THE FORUM SELECTION CLAUSE**

Plaintiff argues that the forum selection clause should not be enforced because he has not asserted a claim for breach of contract. Opp. at 3:21. Yet, Plaintiff's entire Complaint arises from and relates to the contractual relationship between the parties. The services Network Solutions provides to over two million customers do not exist in a vacuum; they are governed by and only offered in connection with a written Service Agreement. Sterling Decl. ¶ 13-15. The Complaint admits as much. CAC ¶ 9 ("[A]ll Defendant's customers enter into a written agreement with Defendant.") The forum selection clause applies to all claims, including Plaintiff's, arising from this contractual arrangement.

Well-established law holds that forum-selection clauses apply to claims plead in tort but relating to a contractual arrangement. See Manetti-Farrow, Inc. v. Gucci Am. Inc., 858 F.2d 509, 514 (9th Cir. 1988). A tort claim relates to the contract if the plaintiff's "claims ultimately depend on the existence of a contractual relationship between" the parties. Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 203 (3d Cir. 1983); Bader Int'l Vacations, Ltd, No. CV 05-6958 SVW (C.D. Cal. Sept. 18 2006) (RFJN Ex. 14). A tort claim also relates to a contract if the claim depends upon the interpretation of the parties' rights and duties under the contract. Modius, Inc. v. PsiNaptic, Inc., 2006 U.S. Dist Lexis 28862, at *20-21 (N.D. Cal. May 2, 2006). Thus, the artful omission of a breach-of-contract claim does not prevent the application of a forum selection clause. Coastal Steel Corp., 709 F.2d at 203; Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc., 2002 U.S. Dist. LEXIS 4406, at *14-15 (N.D. Cal. Mar. 12, 2002) rev'd on other grounds, 328 F.3d 528 (9th Cir. 2003). As discussed fully in Defendant's motion to dismiss pursuant to Rule 12(b)(6), all of Plaintiff's claims depend upon the existence and interpretation of his contractual arrangement with Network Solutions.

As discussed in the Motion, this matter is closely analogous to the facts in Weingrad, 2005 U.S. Dist. LEXIS 26952, and Bader, Case No. CV-05-6958 SVW (RCx). See RFJN Ex. 13-14. In both of those decisions, the courts found the forum selection clauses governed

non-contractual claims. Plaintiff attempts to distinguish <u>Weingrad</u> and <u>Bader</u>, but his discussion instead serves to highlight the similarities between those decisions and the matters at issue in this case. See Opp. at 4:1-18. He argues they are distinguishable because they involve the right to maintain a domain name rather than a webmail account. Opp. at 4:19-22. But this is a distinction without a difference; both decisions address tort claims brought in the context of a contractual service arrangement, the same scenario presented here. Furthermore, the declaration of Natalie Sterling and Plaintiff's <u>own</u> declaration each demonstrate that this case does, in fact, stem from a domain name registration, which is required to obtain a Network Solutions' webmail account. Doe Decl. ¶¶ 3, 5; Sterling Decl. ¶¶ 8, 11.

Plaintiff's discussion of <u>Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.</u>, 452 F. Supp 2d 924, 932 (N.D. Cal. 2006) is unavailing. In that case, the court held that an agreement did not govern a case for antitrust violations, and therefore a forum selection clause could not be enforced, because the claims did not relate to the contract. In its brief discussion of the relation between the contract and the plaintiff's claims, the court implied that the relationship was attenuated, and noted the complaint did not mention the agreement. The present case is distinguishable because the claims asserted by Plaintiff flow directly from his contractual relationship with Network Solutions, and Plaintiff refers to, quotes and necessarily relies on the Service Agreement as the initial source of his right to maintain the webmail account. Therefore, <u>Coalition</u> is inapposite, and the forum selection clause governs.

## IV. THE FORUM SELECTION CLAUSE IS BINDING DESPITE CLASS ACTION ALLEGATIONS

Plaintiff also asserts that this case is different from <u>Weingrad</u> and <u>Bader</u> because he has brought it as a class action, and some putative class members might not have a contractual relationship with Network Solutions. Opp. at 5:19-20. Defendant ardently disputes that such an unwieldy class could ever be certified, and further disputes that class action treatment is even appropriate in this case. But, of course, the Court is not considering a motion for class certification. This is a motion to dismiss based on <u>Plaintiff's</u> claims and <u>his</u> contract, not those of some hypothetical prospective member of an uncertified class.

1   Further, Network Solutions only offers webmail services pursuant to a Services
2   Agreement. Sterling Decl. ¶ 13. The forum selection clause provides that all disputes must
3   be brought in Virginia "whether or not such disputes also involve other parties in addition to
4   you and Network Solutions." See, e.g., Sterling Decl. Ex. E at 144. Plaintiff has not, and
5   cannot, allege a duty owed by Defendant to non-contracting third-parties that would serve as
6   a basis for liability in connection with Network Solutions' webmail services. Even if such a
7   duty could be alleged, which it cannot be, it is well established that forum selection clauses
8   are enforceable against non-signatories, if they are closely related to the dispute, and it is
9   foreseeable that they will be bound. See Nanopierce Techs., Inc. v. Southridge Capital
10  Mgmt. LLC, No. 02 Civ. 0767 (LBS), 2003 U.S. Dist. LEXIS 21858, at *5 (S.D.N.Y. Dec. 4,
11  2003); Weingrad v. Telepathy, Inc., No. 04 CV 2024 (MBM), 2005 U.S. Dist. LEXIS 26952
12  at *16 (S.D.N.Y. Nov. 7, 2005) (RFJN Ex. 13 at 302).

13  V.   **PLAINTIFF HAS FAILED TO MEET HIS HEAVY BURDEN TO PROVE AN**
14       **EXCEPTION TO ENFORCEMENT APPLIES**

15  A.   Enforcing the Forum Clause Will Not Deprive Plaintiff of His Day in Court.

16  Plaintiff claims that enforcing the forum selection clause will deprive him of his
17  "meaningful day in court." Opp. at 7:14-8:12. Yet, to invalidate a clause, a party seeking to
18  escape the contract must prove that "trial in the contractual forum will be so gravely difficult
19  and inconvenient that he will for all practical purposes be deprived of his day in court." M/S
20  Breman, 407 U.S. at 18 (emphasis added). A demonstration of more than just increased cost
21  and inconvenience is required. Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,
22  515 U.S. 528, 535-36 (1995). Here, neither the arguments set forth in the Opposition nor the
23  assertions in Plaintiff's declaration satisfy his burden. Presently, only one witness, Plaintiff,
24  lives in California; whereas the vast majority of Network Solutions' witnesses reside in
25  Virginia. Additionally, all of Network Solution's servers and documents that may be
26  relevant are likely located in Virginia. Therefore, instead of being inconvenient to litigate in
27  Virginia, it is actually the most convenient forum. Further, Plaintiff's argument that his
28  counsel resides in California is of no consequence. He easily could hire local counsel in

1  Virginia (which, in fact, he has already done in connection with the Virginia Action).

2  Plaintiff claims that it was not "foreseeable at the time of contracting that Defendant
3  would publish to the Internet his private email and force him to seek redress only in
4  Virginia." Opp. at 8:11-12. In other words, while admitting the existence of the contract,
5  Plaintiff claims he could not have foreseen a dispute. This is not credible. Plaintiff
6  consented to the Service Agreement when he renewed in October 2007, <u>after</u> an action was
7  filed against him in Virginia. <u>See</u> Exh. A to Eisner Decl. (Complaint for Declaratory
8  Judgment, September 21, 2007). Moreover, each version of the contract that he agreed to
9  contains a forum selection clause, disclosing in plain English that any disputes would need to
10 be litigated in Virginia. <u>See</u>  Sterling Decl. ¶ 18-23, C at 66-67, D at 102, E at 144, F at 332.

11 B.   <u>The Forum Selection Clause Does Not Contravene Public Policy</u>

12 Plaintiff argues that the forum selection clause offends the public policy of California.
13 Opp. 8:14-9:24. This is incorrect. California favors contractual forum selection clauses so
14 long as they are entered into voluntarily and their enforcement would not be unreasonable.
15 <u>Smith, Valentino & Smith, Inc. v. Super. Ct.</u>, 17 Cal. 3d 491, 495-96 (1976). Moreover, the
16 very concept of a forum selection provision necessarily contemplates possible differences
17 between the law of the state where the contract is executed and that of the state whose law is
18 chosen. <u>Gamer v. duPont Glore Forgan, Inc.</u>, 65 Cal. App. 3d 280 (1976). Beyond that,
19 there is conflicting case law regarding whether or not the enforcement of a forum selection
20 clause is contrary to public policy where the selected forum does not provide the same
21 protections as California law. Not all California state courts considering the question have
22 enforced such clauses, but some have done so even where the plaintiff would not be afforded
23 the same rights in the foreign jurisdiction. <u>Net2phone, Inc. v. Super. Ct.</u>, 109 Cal. App. 4th
24 583, 588-90 (2003) (enforcing a forum selection clause on the ground that New Jersey was a
25 suitable alternative forum even though New Jersey law did not provide the right to bring
26 representative actions or recover attorney fees); <u>Surles v. Prudential Ins. Co. of Am.</u>, No. C
27 06-05807 WHA, 2007 U.S. Dist. LEXIS 8515, at *16-17 (N.D. Cal. January 19, 2007)
28 (holding that enforcing an Illinois choice of law provision did not impair California's interest

because plaintiff could pursue remedies under Illinois law, even if they may not be quite so large as they might be in California). Thus, given California's general policy favoring enforcement of forum selection clauses, this split of authority in state court does not satisfy Plaintiff's heavy burden to demonstrate that enforcement of the forum selection clause violates public policy. Moreover, taken to its extreme, Plaintiff's interpretation would prevent any party from creating an enforceable contract in which Virginia was the chosen forum, as any party could avoid such a provision simply by initiating litigation in California.

Additionally, regardless of how California state courts might rule, this Court must apply federal law. Argueta v. Banco Mexicano, 87 F. 3d 320, 324 (9th Cir. 1996). In the Ninth Circuit, the fact that a selected forum "affords remedies that are different or less favorable to the laws of the forum preferred by a plaintiff is not alone a valid basis to deny enforcement of the forum selection and choice of law provisions." E. & J. Gallo Winery v. Andina Licores S.A., 440 F. Supp. 2d 1115, 1127 (E.D. Cal. 2006); Medimatch, Inc. v. Lucent Techs., Inc., 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000). Here, Plaintiff can pursue his claims in Virginia, and whether or not California law may be different or potentially more favorable does not defeat his prior choice of law under federal law. Motion § 12:16-13:22.

Further, even if enforcement of the forum selection clause would offend California public policy this factor is not solely determinative. Rather, under M/S Breman, it is just one of several factors to be considered. Marootian v. N.Y. Life Ins. Co., No. CV-99-12073 CAS (MCx), 2001 U.S. Dist. LEXIS 22274, *30-32 (C.D. Cal. Dec. 3, 2001); Barnett v. Network Solutions, Inc., 38 S.W.3d 200, 203 (2001). As the Motion explained, there are legitimate reasons for enforcement in this case that must be weighed against other principles of public policy. See Motion at 10:9-11:10. In particular, the forum selection clause in the Service Agreement results in direct economic benefits to Network Solutions' customers by allowing Defendant to provide its services at affordable prices. See Sterling Decl. ¶ 24. Further, in a saturated market of domain name registrars, if Plaintiff did not want to be bound by the Virginia forum selection clause, he could have easily chosen another company. See Id. ¶ 8 (stating there are about 894 domain name registrars).

## VI. ALTERNATIVELY, THIS COURT SHOULD TRANSFER TO VIRGINIA

If this matter is not dismissed it should be transferred to Virginia because the forum selection clause is enforceable under the M/S Breman analysis. Plaintiff's argument that Network Solution's has not carried its burden to justify a transfer applies an incorrect analysis to the type of transfer motion at issue in this case. See Opp. at 10:1-14:22.

Defendant requested as an alternative to dismissal, to transfer this action pursuant to 28 U.S.C. § 1406(a). Section 1406(a) is the proper statute under which to move to transfer based on improper venue due to a forum selection clause. Flake v. Medline Indus. Inc., 822 F. Supp. 947, 949-52 (E.D. Cal. 1995). As the Motion discusses, courts apply the analysis laid out in M/S Breman when deciding whether to dismiss or transfer an action under Section 1406(a). See Motion at 9:19-13:22; 14:5-15:10; see also Shute v. Carnival Cruise Lines, 897 F.2d 377, 388 n.9 (9th Cir. 1990) rev'd on other grounds, Carnival Cruise Lines v. Shute, 499 U.S. 585, 594-95 (1991). Under this analysis, the forum selection clause in the Service Agreement is enforceable; therefore the action should be dismissed or transferred.

Rather than address M/S Breman, Plaintiff spends five pages on whether transfer is proper under factors that do not apply to a motion to transfer under Section 1406(a). See Opp. at 10-14. The factors Plaintiff discusses apply to determinations of whether to transfer under 28 U.S.C. § 1404(a) ("Section 1404(a)").[2] See Royal Queentex Enters. v. Sara Lee Corp., No. C 99-4787 MJJ, 2000 U.S. Dist. LEXIS 10139, at * 2 (N.D. Cal. March 1, 2000) (analyzing motion to transfer under Section 1404(a) with no forum selection clause at issue); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (same). This analysis is irrelevant to this Motion. Because the forum selection clause is valid under the M/S Breman analysis, it is proper to transfer this case to Virginia.

---

[2] Further, the majority of Plaintiff's analysis is based on law that involves a motion to transfer in the absence of a forum selection clause. For example, Plaintiff asserts the plaintiff's choice of forum is entitled to great deference. However, in reality, that presumption is negated when the parties agreed to a forum-selection clause. Palmco Corp. v. JSC Techsnabexport, 448 F. Supp. 2d 1194, 1198 (C.D. Cal. 2006).

VII.  CONCLUSION.

For the forgoing reasons and as set forth in the Motion, the forum selection clause in Plaintiff's Service Agreement is applicable to the present action and valid. Therefore, Network Solutions respectfully requests that this Court dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative transfer this case pursuant to 28 U.S.C. § 1406(a).

Dated: December 21, 2007

PILLSBURY WINTHROP SHAW PITTMAN LLP
SHERI FLAME EISNER
JOHN M. GRENFELL
DAVID L. STANTON

By ___/s/_____
Sheri Flame Eisner
Attorneys for Defendant
NETWORK SOLUTIONS, LLC