1 | PILLSBURY WINTHROP SHAW PITTMAN LLP
SHERI FLAME EISNER #162776
2 | sheri.eisner@pillsburylaw.com
DAVID L. STANTON # 208079
3 | david.stanton@pillsburylaw.com
725 South Figueroa Street, Suite 2800
4 | Los Angeles, CA  90017-5406
Telephone: (213) 488-7100
5 | Facsimile: (213) 629-1033

6 | PILLSBURY WINTHROP SHAW PITTMAN LLP
JOHN M. GRENFELL #88500
7 | john.grenfell@pillsburylaw.com
50 Fremont Street
8 | Post Office Box 7880
San Francisco, CA  94120-7880
9 | Telephone: (415) 983-1000
Facsimile: (415) 983-1200
10 |
Attorneys for Defendant
11 | NETWORK SOLUTIONS, LLC

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14 | SAN FRANCISCO DIVISION

| | |
|---|---|
| DOE, Individually And On Behalf Of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>NETWORK SOLUTIONS, LLC,<br><br>    Defendant. | No. C 07-5115 JSW<br><br><u>DEFENDANT NETWORK SOLUTIONS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u><br><br>Judge:  Hon. Jeffrey S. White<br>Date:   January 25, 2008<br>Time:  9:00 a.m.<br>CrtRm: 2 |

**POINTS AND AUTHORITIES**

I.   INTRODUCTION

The Supreme Court in Twombly enunciated the pleading standard for civil actions, holding that to survive a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a complaint must do more than provide "labels and conclusions," or a "formulaic recitation of the elements of a cause of action." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). There must be factual allegations that "raise a right to relief above the speculative level." Id. at 1965. The complaint must cross "the line between possibility and plausibility of entitlement to relief." Id. at 1966. Here, the Complaint fails to satisfy the Twombly standard, and Plaintiff's opposition ("Opp." or "Opposition") to Defendant's motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) ("Motion") does not salvage his defective claims.

The Motion demonstrated that Count I, under the Electronic Communication Privacy Act ("ECPA") and Count V, for public disclosure of private facts, each contain intent requirements not adequately alleged in the Complaint. As discussed further below, Plaintiff's Opposition again sidesteps the intent element in each of these counts. With the ECPA claim, Plaintiff relegates the leading authorities to footnotes, failing even to address the three-part test required to establish a "knowing disclosure" for liability under that statute. Likewise, he points to no factual allegations of an intentional act that would give rise to liability for private disclosure of public facts. Instead, he does just what Twombly prohibits, providing a "formulaic recitation of the elements," and asserting only that Defendant's disclosure was intentional because it was "knowing, intentional and/or reckless." Opp. at 9:7-8. The Opposition also cannot fix the lack of any substantive allegation that the information allegedly disclosed was "offensive and objectionable," as the public disclosure of private facts claim requires.

Most notably, the Opposition seeks to disregard entirely the impact of the Service Agreement on Count II under the California Legal Remedies Act ("CLRA") and Count III under the Unfair Competition Law ("UCL"). Plaintiff even goes so far as to assert in his

1  opposition to Defendants' Request for Judicial Notice ("RFJN Opp.") that the contract "is
2  not once mentioned, let alone quoted or relied upon, in the Complaint." RFJN Opp. at
3  1:27-28. This is obviously untrue. The Complaint concedes that the relationship between
4  Network Solutions and its customers is contractual, admitting that "all Defendant's
5  customers enter into a written agreement with Defendant." CAC ¶9. Moreover, the
6  Complaint quotes identical language contained in each version of the Service Agreement
7  that Plaintiff agreed to when he created and renewed his webmail account between October
8  2003 and October 2007. Compare CAC ¶9, with RFJN Exhs. 1-5 at RFJN 007, 0055-56,
9  0091, 0133, 0225. Plaintiff pretends that this language comes from Defendant's Privacy
10 Policies, rather than the Service Agreements. RFJN Opp. at 1:28-2:2. But this is also
11 untrue. Compare CAC ¶9 with RFJN Exhs. 6-9.[1]
12     The truth is that no reasonable consumer could have been misled into believing a
13 Network Solutions webmail account was entirely secure because the very contract that
14 Plaintiff agreed to and which he quotes in his Complaint states—in capital letters—that the
15 services would not be "SECURE OR ERROR-FREE." See, e.g., RFJN Exhs. 1-5 at RFJN
16 0004, 0043, 0089, 0128-29 and 0222-23. Plaintiff knows these and other contractual
17 provisions constitute disclosure about the quality of Defendant's services, which overcome
18 the vague allegations of mere puffery upon which he bases Counts II and III. Plaintiff
19 endeavors to avoid their impact by arguing that the Services Agreement is not properly
20 subject to judicial notice. See RFJN Opp. Yet, as the Motion demonstrated, and as further
21 discussed in Defendant's reply to the RFJN Opposition ("RFJN Reply"), the Court may
22 properly consider the Service Agreement, notwithstanding Plaintiff's attempt to plead
23 around it and the spurious assertion that the Service Agreement is not
24 "mentioned…quoted… or relied upon, in the Complaint."

---

[1] The Motion already addresses Plaintiff's misguided attempt to recast a provision of the Service Agreement as Defendant's "Privacy Policy," when the latter is, in fact, a wholly separate document pertaining to customer account information collected by Network Solutions, rather than the contents of customer email accounts. Motion at 7:1-16.

1   The Opposition also fails to remedy the defects to Count IV, brought under the
2   California Consumer Records Act.  Plaintiff cannot repair the lack of allegations showing
3   the disclosure of his "personal information," as that term is defined by the Act, because no
4   allegations satisfying that definition are found in the Complaint.  He cannot resolve the
5   distinction between information that a company "owns or licenses" for its own use, which
6   is covered by the Act, and the general contents of customer webmail accounts, which are
7   not.  And the Opposition cannot alleviate the lack of factual allegations showing that the
8   allegedly disclosed emails were "no longer to be retained," as the Act expressly requires.
9   Thus, Counts I-V are without merit, and, therefore, Count VI for unjust enrichment
10  also fails.  Accordingly, for all of the foregoing reasons, and as further discussed below,
11  Defendant's Motion should be granted in its entirety.

12  II.    Count I –Electronic Communications Privacy Act

13  The Motion showed that to plead a violation of the ECPA, Plaintiff must allege facts
14  giving rise to a non-speculative, plausible claim that Defendant "knowingly divulged,"
15  Plaintiff's electronic communications.  Motion at 8:18-9:10.  The statute requires a
16  voluntary disclosure.  It is not a strict liability statute, and mere negligence does not suffice.
17  Instead, courts impose a rigorous three-part test to determine if a disclosure was intentional
18  under the ECPA, which requires (i) an awareness of the nature of the conduct; (ii) an
19  awareness of or firm belief in the existence of the requisite circumstances; and (iii) an
20  awareness of or a firm belief about the substantial certainty of the result.  Motion at 8:25-
21  9:5 (citing Freedman v. America Online, Inc., 329 F.Supp. 2d 745, 748-749 (E.D. Va.,
22  2004) (discussing legislative history)).  Similarly, the Motion demonstrates that the
23  awareness of a mere possibility of disclosure is not awareness of a "substantial certainty" of
24  disclosure, as required for ECPA liability.  Motion at 9:20-10:5 (citing Muskovich v.
25  Crowell, 1996 WL 707008 at *5 (S.D. Iowa). )  The Opposition only mentions Freedman
26  and Muskovich briefly in footnotes, seeking to distinguish the cases on their facts without
27  addressing the underlying legal standards.
28

1  The Opposition claims that Plaintiff adequately alleged an ECPA claim by asserting
2  Defendant "published" "released," "made available" and "knowingly divulged," electronic
3  communications.  But, read in the context of the Complaint, none of these conclusory
4  allegations demonstrates an affirmative "act of disclosure," or "an awareness of, or a firm
5  belief, that the acts would result in disclosure." Freedman at 748-749.  Rather, the
6  Complaint simply describes how third-party search engines accessed Plaintiff's email
7  accounts.  There are no substantive factual allegations creating a plausible claim Network
8  Solutions intentionally caused search engines to take these actions, or that what may have
9  occurred was anything more than a temporary, technical issue, which Defendant rectified
10 upon its discovery.  The Opposition even admits that Network Solutions "fixed" the
11 purported problem before Plaintiff renewed his webmail account in October 2007.  Opp. at
12 2-6.  Similarly, Plaintiff has not consistently alleged that any of his personal emails remain
13 available online, and the Opposition does not even attempt to resolve this inconsistency.
14 See Motion at 4:15-20.
15 Plaintiff asserts that at trial, he would be able to prove "there is no way that Google
16 could have gotten access to Plaintiff's emails and email in-box, *unless Defendant had*
17 *affirmatively put those emails and in-box on a publicly indexed Internet server*."  Opp. at
18 3:16-18.  Even if this allegation were set forth in the Complaint—which it is not—placing
19 emails, which are, after all, generally transmitted over the public Internet, on a public server
20 does not demonstrate a voluntary disclosure to Google for purposes of the ECPA.  Thus,
21 even if this allegation were in the Complaint, it still would not allege an "awareness of or
22 firm belief" that Google would access Plaintiff's emails.  It also would not, in itself,
23 demonstrate a "substantial certainty" that publication on Google's search engine would
24 necessarily occur.
25 Thus, the ECPA claim fails.
26     III.     Count II - California Legal Remedies Act.
27 The Motion showed that the Complaint lacks specific allegations reciting false or
28 misleading "representations" or "advertisements" that resulted in the sale of services, as

- 4 -

required for liability under the CLRA. Motion at 10:19-20:4. In an attempt to rectify this omission, the Opposition advances three vague allegations: (i) that Defendant "led … customers to believe that their 'email and email accounts would be secure and private'"; (ii) that "Defendant holds itself out as one of the oldest, best and most experienced domain name registration services on the Internet"; and (iii) that "Defendant claims to be expert at search engine optimization security and privacy." Opp. at 5:6-10 (citing CAC ¶¶ 8, 14). None of these recites an oral or written statement or advertisement made by Network Solutions, as the CLRA requires. They are also mere marketing "puffery," and not actionable misrepresentations under the CLRA, or the UCL. See Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1361 fn. 3 ("The statements are akin to 'mere puffing,' which under longstanding law cannot support liability in tort") (quoting Hauter v. Zogarts, 14 Cal.3d 104, 111 (1975)).

The only actual statement by Network Solutions that Plaintiff ever recites is quoted from the Service Agreement in paragraph 9 of the Complaint. It provides that Network Solutions would not "monitor, edit or disclose the contents of private communications with third parties." CAC ¶ 9; Opp. at 5:405. As explained in the Motion, however, the Complaint nowhere claims that Plaintiff relied upon this language in opening or renewing his webmail account, or that it "resulted in the sale…of…services," as the CLRA requires. Motion at 11:2-4. In fact, the declaration Plaintiff submitted with his opposition papers admits he did not read the Service Agreement. See Plaintiff's Decl. at ¶ 6. Likewise, the Complaint does not claim Defendant affirmatively "monitored," "edited" or "disclosed" any private communications. Rather, the Complaint is entirely based on alleged access and publication by third-party search engines.

The applicable standard the Court should apply to evaluate the language Plaintiff quotes from the Service Agreement is the "effect it would have on a reasonable customer." Consumer Advocates v. Echostar Satellite Corp, 113 Cal. App. 4th 1351, 1360 (2003). The Complaint admits in Paragraph 9 that "all Defendant's customers enter into a written agreement with Defendant." CAC ¶9. This same paragraph recites the language from the

1  Service Agreement upon which Plaintiff relies for his CLRA claim.  As the Motion and

2  RJFN demonstrate, this Service Agreement is the same document that contains

3  unambiguous disclaimers and disclosures about the quality of the webmail services offered

4  by Network Solutions.  These include that customers' use of the services would be

5  "SOLELY AT YOUR OWN RISK," "PROVIDED ON AN 'AS IS,' AND 'AS

6  AVAILABLE' BASIS," and that they were not guaranteed to be "SECURE OR ERROR

7  FREE."  Motion at 11:9-17.  Given that these unambiguous limitations are set forth in

8  every customer's contract, "no consumer opening a webmail account was led to believe that

9  Network Solutions guaranteed his emails would be 100% secure from the advancing

10  technologies employed by search engines, hackers or others."  Motion at 11:17-20.  In other

11  words, reasonable customers read the entirety of their contacts, not just one selective part.

12         Plaintiff is correct that claims under the CLRA cannot be contractually waived.

13  Opp. at 6:3-6; contra Motion at 10:14-16.  Nevertheless, the unambiguous language in the

14  Service Agreement has put all reasonable customers on notice that their emails were not

15  "SECURE OR ERROR-FREE," and Network Solutions did not make any representations

16  to the contrary.

17         Finally, a CLRA claim may only be advanced by a "consumer," who is defined as

18  an "individual who seeks or acquires, by purchase or lease, any goods or services for

19  personal, family or household purposes."  Motion at 11:20-22 (citing Cal. Civ. Code

20  §1761(d)).  As the Motion points out, the Compliant does not adequately allege that

21  Plaintiff is a "consumer" qualified to bring a CLRA claim.  Motion at 11:22-24.  Moreover,

22  the declaration Plaintiff filed with his Opposition makes it absolutely clear that he is not a

23  "consumer" for purposes of the CLRA.  Plaintiff Decl. at ¶2-3 (explaining that Plaintiff's

24  domain name and webmail account were established for "Nexus Holdings, Inc.").

25         Thus, the CLRA claim should be dismissed.

26         IV.    Count III – Unfair Competition Law

27         The Motion showed that the Complaint does not demonstrate that Defendant

28  committed "any unlawful, unfair or fraudulent business practice or act."  Motion at 12:4-

- 6 -

600461509v1

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS UNDER FRCP 12(b)(6)
Case No. C 07-5115 JSW

1  13:16. The Opposition cannot save this claim. As demonstrated in connection with the
2  CLRA claim, the Complaint contains no allegation of a misrepresentation or fraudulent
3  statement upon which a reasonable consumer could have, or did actually rely in making a
4  decision to obtain webmail services from Network Solutions.  Further, as demonstrated by
5  the entirety of the Motion, Plaintiff has not alleged any unlawful act giving rise to a
6  colorable claim against Defendant. The Opposition adds nothing to the Complaint in this
7  regard. <u>See</u> Opp. at 6:14-7:22.
8      Accordingly, Plaintiff cannot demonstrate an "injury in fact," and the UCL claim
9  must fail. Plaintiff argues broadly that "had Defendant's customers known that such
10 information would be released, made publicly available and/or not secured or otherwise
11 kept private, they never would have paid for Defendants email services." Opp. at 7:11-14
12 (<u>citing</u> CAC ¶ 13). The Complaint, however does not allege any fraudulent, unfair or
13 unlawful act that caused a payment for services. Nor does the Complaint allege that
14 Defendant knew, at any time, including when any customer obtained services, that search
15 engines would be able to access and disclose the contents of customer emails. As
16 Defendant admits, in fact, Network Solutions "fixed" this alleged issue once it was
17 discovered. Opp. at 4:2-6. Moreover, despite acknowledging that Network Solutions
18 "fixed" the purported issue, and renewing his webmail account, Plaintiff nevertheless set up
19 "another email account for sensitive email." <u>Id.</u> This option was available to him at any
20 time, and nothing alleged in the Complaint prevented him from taking such "additional
21 precautions" to protect his especially sensitive communications.
22      V.    <u>Count IV – California Customer Records Act</u>
23      The Motion explains that the Customer Records Act protects a limited subset of
24 information. Civil Code section 1798.81 requires companies to take reasonable steps to
25 arrange for the destruction of "personal information" within its "custody or control," once
26 that information "is no longer to be retained." Motion at 13:18-21 (<u>citing</u> Cal. Civ. Code
27 §1798.81). Plaintiff does not dispute this. Instead, he claims that there is a "question of
28 fact" whether the emails he alleged he found on search engines were to be "no longer

- 7 -                    DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
600461509v1                                  DISMISS UNDER FRCP 12(b)(6)
                                                  Case No. C 07-5115 JSW

1  retained." Opp. at 8:21-26.  The Complaint, however, contains no allegations about this

2  fact, or giving rise to any dispute.  Plaintiff says only that he "may be able to plead that

3  some of the emails published to the internet were emails Plaintiff had deleted."  He has not

4  done so.  Thus, the Complaint fails to state a claim under Civil Code section 1798.81.

5      The Motion further explains that Civil Code section 1798.81.5 requires companies

6  that "own or license" the "personal information about a California resident" to "implement

7  and maintain reasonable security procedures and practices appropriate to the nature of the

8  information."  Motion at 12:25-27 (citing Cal. Civ. Code §1798.81.5).  As the Opposition

9  recognizes, "owns or licenses" is defined "to include, but is not limited to, personal

10 information that a business retains as a part of the business' internal customer account or

11 for the purpose of using that information in transactions with the person to whom the

12 information relates."  Opp. at 8:10-13 (citing Cal. Civ. Code § 1798.81.5(a)).  The

13 Opposition does not, however, demonstrate, nor does the Complaint allege, that Plaintiff's

14 emails were part of Network Solutions' "internal customer account" information, or that

15 Network Solutions otherwise "owned or licensed" Plaintiff's emails.

16     Further, Civil Code section 1798.81.5 defines "personal information" as a person's

17 name in combination with any one or more of the following:  (a) a social security number;

18 (b) a driver's license number of California identification card number; (c) account, credit,

19 or debit card number together with the required code to be able to access the financial

20 account; or (d) medical information.  Civ. Code §1798.81.5(d).  The Motion explains that

21 Plaintiff fails to allege that any of his "personal information," as defined by the statute, was

22 ever released. Motion at 14:10-11.  The Opposition cannot refute this.  Instead, Plaintiff

23 points to paragraph 11 of the Complaint, but this is part of Plaintiff's class action

24 allegations.  Paragraph 4 of the Complaint, which describes the information about Plaintiff

25 that was allegedly released, fails to meet the definition of "personal information" for

26 purposes of the Consumer Records Act.

27

28

- 8 -

.
.

1    VI.    Count V – Public Disclosure of Private Facts

2    The Motion correctly described public disclosure of private facts as an intentional
3    tort under California common law. Motion at 14:14-22 (citing BAJI, CA Jury Instructions,
4    Civil No. 7.21 (West 2007-08 Ed.). In this respect, it is like other torts involving invasions
5    of privacy, all of which require some intentional conduct by the Defendant.

6    The Motion also points out that, to be actionable, the facts intentionally disclosed
7    must be "highly sensitive to a person of ordinary sensibilities." Motion at 14:17-18. As
8    explained in Taus v. Loftus, 40 Cal. 4th 683 (2007), a case relied upon in the Opposition,
9    the tort requires disclosure of "sufficiently sensitive or intimate private fact[s]," in other
10   words "intimate details of plaintiffs' lives." Id. at 717-718 (citing Coverstone v. Davies, 38
11   Cal.2d 315, 323) (Emphasis in original.)). In this case, however, Plaintiff has not alleged a
12   single fact from which to conclude it plausible that any intimate information was ever
13   revealed. Instead, Plaintiff claims broadly that "a reasonable person could find that
14   Defendants' publication of its customers' emails and email in [sic] boxes to be [sic]
15   offensive and/or objectionable." Of course, it is not the act of disclosure that one measures
16   by the offensiveness standard, but the facts themselves, and the allegations in the Complaint
17   do not support a claim that "intimate facts" about Plaintiff were ever publicly disclosed.

18   VII.    Count VI – Unjust Enrichment

19   Plaintiff's unjust enrichment claim is based entirely upon the purported violations of
20   law alleged in Counts I-V. Because, as set forth above, none of these claims state a
21   "plausible" basis for relief, the unjust enrichment claim also fails.

22
23
24
25
26
27
28

- 9 -

VIII. Conclusion

For each of the foregoing reasons, and as set forth more fully in the Motion, the Request for Judicial Notice and the Reply to Plaintiff's Objection to the Request for Judicial Notice, this case should be dismissed under FRCP 12(b)(6) for failure to state a claim.

Dated: December 21, 2007

PILLSBURY WINTHROP SHAW PITTMAN LLP
SHERI FLAME EISNER
JOHN M. GRENFELL
DAVID L. STANTON

By /s/
Sheri Flame Eisner
Attorneys for Defendant
NETWORK SOLUTIONS, LLC