1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   SHERI FLAME EISNER #162776
2  sheri.eisner@pillsburylaw.com
   DAVID L. STANTON #208079
3  david.stanton@pillsburylaw.com
   725 South Figueroa Street, Suite 2800
4  Los Angeles, CA  90017-5406
   Telephone: (213) 488-7100
5  Facsimile: (213) 629-1033

6  PILLSBURY WINTHROP SHAW PITTMAN LLP
   JOHN M. GRENFELL #88500
7  john.grenfell@pillsburylaw.com
   50 Fremont Street
8  Post Office Box 7880
   San Francisco, CA  94120-7880
9  Telephone: (415) 983-1000
   Facsimile: (415) 983-1200
10

   Attorneys for Defendant
11 NETWORK SOLUTIONS, LLC

12                     UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                         SAN FRANCISCO DIVISION

15

| | |
|---|---|
| 16  DOE, Individually And On Behalf Of All Others Similarly Situated, | No. C 07-5115 JSW |
| 17 | DEFENDANT NETWORK SOLUTIONS, LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f) |
| 18              Plaintiff, | |
| 19     vs. | |
| 20  NETWORK SOLUTIONS, LLC, | Judge:  Hon. Jeffrey S. White |
| 21              Defendant. | Date:   January 25, 2008<br>Time:   9:00 a.m.<br>CrtRm:  2 |

I.   **THE SERVICE AGREEMENTS DIRECTLY CONTRADICT PLAINTIFF'S CLAIMS**

As set forth in Defendant's Motion to Strike ("Motion"), the Court is not required to accept as true allegations that are contradicted by matters, such as the Service Agreements, that are properly subject to judicial notice. Motion at 4:20-23 (citing Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987).) Nor is the Court required to accept as true unwarranted deductions of fact or unreasonable inferences. Id. at 4:23-5:3 (citing Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965 (2007); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)). For these reasons, and in the interest of judicial economy, Defendant asked that the Court strike language from the Complaint inconsistent with the terms of the Service Agreements.

Plaintiff's Opposition to the Motion to Strike ("Opposition" or "Opp.") fails to address Mullis, Twombly, or Clegg. Instead, relying largely upon Plaintiff's declaration ("Doe Decl."), the Opposition argues that the Service Agreement is "unenforceable" and "inadmissible." Opp. at 3:23. Both contentions are invalid. The Court may properly take judicial notice of the Service Agreement, and it may properly strike allegations of the Complaint that are inconsistent with the agreed-upon Service Agreement's express and unambiguous provisions.

II.  **THE COURT MAY TAKE JUDICIAL NOTICE OF THE SERVICE AGREEMENTS**

As separately established by defendant Network Solutions, LLC ("Defendant" or "Network Solutions") in its Request for Judicial Notice ("RFJN") and reply brief in further support of the Request for Judicial Notice ("RFJN Reply"), the Court may take judicial notice of the Service Agreement between Plaintiff and Network Solutions. Defendant incorporates by reference the discussion of judicial notice set forth in the RFJN and RFJN Reply, as if they were set forth in their entirety herein. These pleadings fully address Plaintiff's arguments in the Opposition regarding whether or not the Court may consider and construe the binding provisions in the Service Agreements.

1  III.   **THE COURT SHOULD STRIKE ALLEGATIONS OF THE COMPLAINT**
2         **INCONSISTENT WITH THE TERMS OF THE SERVICE AGREEMENT**

3  Two provisions of the Service Agreement directly contradict and render invalid various allegations in the Complaint. First, there is a "Governing Law" provision, which contains a waiver of the right to trial by jury. Second, there is an "Exclusive Remedy; Time Limitation on Filing Any Claim" provision, which (i) limits a customer's damages with respect to services provided under the agreement to the recovery of service fees, (ii) expressly disclaims various warranties and guarantees, and (iii) requires that all claims under the agreement be filed within one year after they arise. These provisions are set forth, respectively, in Sections 7 and 21 of each version of the Service Agreement, attached as Exhibits 1-5 of the RFJN. See RFJN at 3:12-26 (table cross-referencing applicable provisions), and Exhs. 1-5. They are unambiguous and written in plain English. The "Exclusive Remedy" provision is set out from the rest of the agreement by capital letters. Insofar as the Complaint contains allegations that contradict these express provisions of the Service Agreement, they should be stricken.

Plaintiff spends three full pages of his Opposition arguing that California law is applicable to this case. Opp. at 5:3-7:3. The Motion, however, does not seek to have anything stricken from the Complaint because it is inconsistent with the forum selection clause in the Service Agreement. Accordingly, Plaintiff's discussion in this regard is irrelevant to the Motion, and should be disregarded.[1]

21  A.   **The Jury Demand Should Be Stricken**

Plaintiff claims that he should not be bound by the provision in the Service Agreement that expressly states: "The parties hereby waive any right to jury trial with respect to any action brought in connection with this Agreement." RFJN Exhs. 1-5 at RFJN

---

[1] As separately established in Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the Alternative to Transfer Pursuant to 28 U.S.C. §1406(a) for Improper Venue and in the Defendant's reply brief in further support of the 12(b)(3) Motion, the forum selection clause of the Service Agreement is valid and enforceable.

1  007, 0055-56, 0091, 0133 and 0225.  He asserts that the clause is unenforceable under a
2  four-part test that evaluates (i) the relative bargaining power of the parties; (ii) the extent to
3  which the party opposing the waiver understood the provision; (iii) the extent to which the
4  provision was negotiated; and (iv) the conspicuousness of the provision.  Opp. at 7:14-17.
5  Defendant does not presume to offer outside evidence about these factors, as Plaintiff does
6  by citing to his own declaration (see Opp. at 20-25).  Nevertheless, considering only the
7  evidence proffered by Plaintiff and the allegations of the Complaint, the unambiguous jury
8  trial waiver should still be upheld.  Plaintiff admits in his declaration that Network
9  Solutions is not the only email service provider available, and that he recently "opened
10 another email account that was not operated by Network Solutions."  Doe Decl. at ¶ 5.
11 Moreover, the jury trial waiver is written in clear, unambiguous language, set forth
12 separately from the other text in the Governing Law provision.  It would be understood by
13 any reasonable consumer who read it, and there is nothing deceptive or misleading about
14 language in which it is expressed.  For each of these reasons, Plaintiff should be bound by
15 this express provision of his contract, and the jury demand should be stricken from his
16 Complaint.

17         B.     Plaintiff's Damages Claims Should Be Stricken

18         The Exclusive Remedy provision directly contradicts Plaintiff's damages claims and
19 his assertion that Defendant can be held liable for conduct that occurred more than one year
20 prior to the filing of this case.  Defendant asks that the Court strike from the Complaint
21 allegations inconsistent with the express terms of the Exclusive Remedy provision.  Motion
22 at 6:1-9:19.  Plaintiff asserts that the Exclusive Remedy provision is "unconscionable."
23 Opp. at 8:11-10:14.  The Opposition fails, however, to demonstrate the "procedural" and
24 "substantive" aspects of unconscionability that are required to render the terms of a contract
25 unenforceable.

26         Plaintiff is incorrect that the clause is "procedurally unconscionable," because it was
27 "buried in 50+ pages of legalese" and not "presented to a customer unless they click a
28 hypertext link, which Plaintiff did not do."  Opp. at 9:1-14.  Neither assertion demonstrates

1  that the Exclusive Remedy provision resulted from "oppression" or "surprise" as required
2  to demonstrate procedural unconscionability.  "Oppression arises from an inequality of
3  bargaining power which results in no real negotiation and an absence of meaningful
4  choice."  A&M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 488 (1982) (quotations
5  and citations omitted).  "Surprise involves the extent to which the supposedly agreed-upon
6  terms of the bargain are hidden in a prolix printed form drafted by the party seeking to
7  enforce the disputed terms."  Id.  Here, neither factor is present.
8       There was no "oppression" in this case.  It cannot reasonably be asserted that there
9  is a lack of options for consumers seeking to obtain commonplace online services such as
10 email accounts.  Plaintiff even admits in his declaration that he had other meaningful
11 choices, and recently opened an alternate email account through another provider.  Doe
12 Decl. at ¶ 5.  Similarly, there was no "surprise."  Plaintiff admits in the Opposition that the
13 Service Agreement is readily available online.  See Opp. at  fn. 2 (identifying the Service
14 Agreement "that existed, as of December 14, 2007, on Defendant's website," and
15 referencing http://www.networksolutions.com/legal/static-service-agreement.jsp).  Plaintiff
16 was presented with the Service Agreements with these provisions five separate times.
17 Moreover, he could not have been "surprised" by the Exclusive Remedy provision, because
18 he simply chose not to read it.  Doe Decl. at ¶ 6.  Such neglect does not constitute
19 "surprise," and does not establish procedural unconscionability.  Plaintiff admits "all
20 Defendant's customers enter into a written agreement with Defendant."  CAC ¶ 9.  And the
21 Exclusive Remedy provision was not "hidden" in this contact; it was clearly set out in
22 mostly capital letters, in the first pages of the agreement, intentionally highlighted to draw
23 the customer's attention.  Moreover, the Service Agreement and Exclusive Remedy
24 provision were presented to Plaintiff by means of a hyper-link in a "click-wrap"
25 arrangement.  This is commonplace in online transactions, and both enforceable and valid.
26 DeJohn v. The TV Corp. Int'l, 245 F. Supp. 2d 913, 915-916 (N.D. Ill. 2003); Hotmail
27 Corp. v. Van$ Money Pie Inc., 1998 U.S. Dist. LEXIS 10729 (N.D. Cal. April 16, 1998);
28

Net2Phone, Inc. v. Super. Ct., 109 Cal. App. 4th 583, 588 (2003) (finding no unfairness in a contract that must be accessed by hyperlink, a common internet practice).

As the court stated in A&M Produce:

> [T]he mere fact that a contract term is not read or understood by the nondrafting party or that the drafting party occupies a superior bargaining position will not authorize a court to refuse to enforce the contract. Although an argument can be made that contract terms not actively negotiated between the parties fall outside the "circle of assent" which constitutes the actual agreement, commercial practicalities dictate that unbargained-for terms only be denied enforcement where they are also substantively unreasonable.

A&M Produce Co. v. FMC Corp., 135 Cal. App. 3d at 486-87 (quotations and citations omitted).

Nor can Plaintiff show that the Exclusive Remedy provision is substantively unconscionable. "[A] contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner." Id. at 487. In this case, the term in question arises in the context of Internet-based email services, under a contract offered to all of Network Solutions' customers, who pay just $35.00 per year for domain name registration and $20.00 per year for a single email account. CAC at ¶¶ 6-7, 9. The Exclusive Remedy provision is reasonable under these circumstances. It reduces Network Solutions' cost of offering its services, and, accordingly, reduces the fees that customers must pay. It does so by limiting a customer's damages to the recovery of service fees, (ii) expressly disclaims various warranties and guarantees, and (iii) requires that all claims under the agreement be filed within one year after they arise. Such provisions are common throughout the internet industry in service agreements, and do not shock the conscience in any way. Accordingly, Plaintiff cannot demonstrate that the Exclusive Remedy provision was substantively unconscionable.

Further, insofar as it relates to Plaintiff's claims under California's Unfair Competition Law ("UCL") and the California Legal Remedies Act ("CLRA") the Exclusive Remedies provision provides disclosure to customers about the services that Network

1  Solutions provides. In this regard, it is not necessary for the Court to determine that the
2  provision is enforceable, in order to find that it put "reasonable consumers" on notice that
3  their emails accounts would not be "SECURE OR ERROR-FREE." Moreover, the UCL
4  and CLRA claims are based upon misrepresentations allegedly contained in the Service
5  Agreement (CAC ¶9), so they should be considered in the context of the entire contract.
6  Thus, even if the Exclusive Remedy does not operate as a contractual waiver of Plaintiff's
7  claims, it still unambiguously disclosed to customers what they would, and would not,
8  receive if they purchased webmail services from Network Solutions. Accordingly, it does
9  not violate public policy for the Court to strike Plaintiff's conclusory CLRA and UCL
10 allegations, because they are directly contradicted by the unambiguous description of
11 Defendant's services that the Exclusive Remedy provision provides.

### IV. CONCLUSION

For each of the foregoing reasons, Defendant's Motion to Strike should be granted in its entirety.

Date:  December 21, 2007

> PILLSBURY WINTHROP SHAW PITTMAN LLP
> SHERI FLAME EISNER
> JOHN M. GRENFELL
> DAVID L. STANTON
>
> By   /s/
>          Sheri Flame Eisner
>       Attorneys for Defendant
>       NETWORK SOLUTIONS, LLC

- 6 -   DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STRIKE UNDER FRCP 12(f)
Case No. C 07-5115 JSW

600461287v1